# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB-PGL |
| This Document Relates To: | |
| TATIANA BAQUERO DEVIS, KAREN BOGINSKI, DORIS CADET, DUSTIN CARTER, JOAN DANELLA, MARVIN DOVBERG, DEANNA DUARTE, SARAH GEILER, MICHELLE GONSALVES, DONALD HELLER, WENDY HERBERT, MARGARET KAVANAGH, CONRAD LEWIS, TERRILL MENDLER, MANUEL MENDOZA, RICARDO MORALEZ, HANNAH POLIKOWSKY, MARISOL RHODES, MAIA SULLIVAN, YVETTE TILLMAN, *individually and on behalf of all others similarly situated*, | DIRECT FILED COMPLAINT & JURY DEMAND PURSUANT TO ORDER REGARDING DIRECT FILING CIVIL ACTION NO. |
| Plaintiffs, | |
| v. | |
| PROGRESS SOFTWARE CORPORATION; DELTA DENTAL OF CALIFORNIA; DELTA DENTAL INSURANCE COMPANY; DELTA DENTAL OF NEW YORK; DELTA DENTAL OF PENNSYLVANIA; DELTA DENTAL OF NEW JERSEY; DELTA DENTAL OF MISSOURI; DELTA DENTAL OF TENNESSEE; DELTA DENTAL OF WASHINGTON; DELTA DENTAL PLANS ASSOCIATION. | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Tatiana Baquero Devis, Karen Boginski, Doris Cadet, Dustin Carter, Joan Danella, Marvin Dovberg, Deanna Duarte, Sarah Geiler, Michelle Gonsalves, Donald Heller, Wendy Herbert, Margaret Kavanagh, Conrad Lewis, Terrill Mendler, Manuel Mendoza, Ricardo Moralez, Hannah Polikowsky, Marisol Rhodes, Maia Sullivan, and Yvette Tillman ("Plaintiffs"), individually and on behalf of all others similarly situated defined below, upon personal knowledge of facts pertaining to themselves and on information and belief as to all other matters, bring this Class Action Complaint against Delta Dental of California ("DDCA"), Delta Dental Insurance Company ("DDIC"), Delta Dental of New York ("DDNY"), Delta Dental of Pennsylvania ("DDPenn"), Delta Dental of New Jersey ("DDNJ"), Delta Dental of Missouri ("DDMI"), Delta Dental of Tennessee ("DDTN"), Delta Dental of Washington ("DDWA") (collectively, "Delta Dental Defendants"), Delta Dental Plans Association ("DDPA"), and Progress Software Corporation ("Progress" or "Defendant Progress") (and collectively, "Defendants") and in support thereof allege as follows:

## NATURE OF ACTION

1.      This Complaint is being directly filed into this MDL proceeding pursuant to the Court's MDL Order No. 12.

2.      Plaintiffs incorporate the allegations contained in the Plaintiffs' Omnibus Set of Additional Pleading Facts (ECF No. 908) in its entirety.

3.      Accordingly, Plaintiffs bring this action against Defendants, seeking redress for their unlawful conduct and asserting claims for (i) negligence, (ii) negligence *per se*, (iii) breach of implied contract, (iv) breach of implied covenant of good faith and fair dealing, (v) breach of confidence, (vi) unjust enrichment, (vii) invasion of privacy (public disclosure of private facts), (viii) bailment, (ix) breach of third-party beneficiary contract, (x) breach of fiduciary duty, (xi)

2

declaratory judgment, as well as for violating (xii) the California Consumer Privacy Act, (xiii) California Customer Records Act, (xiv) California Confidentiality of Medical Information Act, (xv) California Unfair Competition Law, (xvi) California Constitution's Right to Privacy, (xvii) Connecticut Unfair Trade Practices Act, (xviii) Connecticut Breach of Security Regarding Computerized Data Law, (xix) Georgia Uniform Deceptive Trade Practices Act, (xx) Massachusetts General Laws, (xxi) New York Deceptive Trade Practices Act, (xxii) Pennsylvania Unfair Trade Practices and Consumer Protection Law, (xxiii) South Carolina Unfair Trade Practices Act, (xxiv) South Carolina Data Breach Security Act, (xxv) Tennessee Consumer Protection Act, (xxvi) Texas Deceptive Trade Practices-Consumer Protection Act, (xxvii) Washington Consumer Protection Act, and (xxviii) Washington Data Breach Notification Law.

4.      Plaintiffs seek remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including but not limited to improvements to Defendants' data security systems, future audits and penetration testers, as well as long-term and adequate credit monitoring services funded by Defendants.

## PARTIES

### Plaintiffs

5.      Plaintiff Tatiana Baquero Devis is, and at all times mentioned herein was, an individual citizen of the State of California, residing in San Francisco, California.

6.      Plaintiff Karen Boginski is, and at all times mentioned herein was, an individual citizen of the State of Connecticut residing in Stamford, Connecticut.

7.      Plaintiff Doris Cadet is, and at all times mentioned herein was, an individual citizen of the State of Georgia residing in Riverdale, Georgia.

8.      Plaintiff Dustin Carter is, and at all times mentioned herein was, an individual citizen of the State of New York, residing in the Bronx, New York.

9.      Plaintiff Joan Danella is, and at all times mentioned herein was, an individual citizen of the State of New York, residing in Brooklyn, New York.

10.     Plaintiff Marvin Dovberg is, and at all times mentioned herein was, an individual citizen of the State of Pennsylvania, residing in Huntingdon Valley, Pennsylvania.

11.     Plaintiff Deanna Duarte is, and at all times mentioned herein was, an individual citizen of the State of California, residing in Sacramento, California.

12.     Plaintiff Sarah Geiler is, and at all times mentioned herein was, an individual citizen of the State of Florida, residing in Tampa, Florida.

13.     Plaintiff Michelle Gonsalves is, and at all times mentioned herein was, an individual citizen of the State of New York, residing in New York, New York.

14.     Plaintiff Donald Heller is, and at all times mentioned herein was, an individual citizen of the State of California, residing in San Francisco, California.

15.     Plaintiff Wendy Herbert is, and at all times mentioned herein was, an individual citizen of the State of California, residing in Pleasanton, California.

16.     Plaintiff Margaret Kavanagh is, and at all times mentioned herein was, an individual citizen of the State of New York, residing in Pittsford, New York.

17.     Plaintiff Conrad Lewis is, and at all times mentioned herein was, an individual citizen of the State of Washington, residing in Seattle, Washington

18.     Plaintiff Terrill Mendler is, and at all times mentioned herein was, an individual citizen of the State of Florida, residing in Jacksonville, Florida.

19.     Plaintiff Manuel Mendoza is, and at all times mentioned herein was, an individual citizen of the State of Texas, residing in LaPorte, Texas.

20.     Plaintiff Ricardo Moralez is, and at all times mentioned herein was, an individual citizen of the State of California, residing in Montclair, California.

21.     Plaintiff Hannah Polikowsky is, and at all times mentioned herein was, an individual citizen of the State of Tennessee.

22.     Plaintiff Marisol Rhodes is, and at all times mentioned herein was, an individual citizen of the State of California, residing in Burbank, California.

23.     Plaintiff Maia Sullivan is, and at all times mentioned herein was, an individual citizen of the State of Texas, residing in Houston, Texas.

24.     Plaintiff Yvette Tillman is, and at all times mentioned herein was, an individual citizen of the State of South Carolina, residing in Ladson, South Carolina.

**Defendants**

25.     Defendant Delta Dental of California is a nonprofit 501(c)(4) corporation, incorporated in California, that operates as a dental insurance provider in California. Its principal place of business is located at 560 Mission Street, #1300, San Francisco, California, 94105. The Delta Dental of California enterprise includes various affiliates, including Delta Dental Insurance Company, Delta Dental of Pennsylvania, Delta Dental of New York, Inc., and their affiliated companies, as well as the national DeltaCare USA network. Collectively, these affiliates are referred to as "Delta Dental of California and Affiliates."

26.     Delta Dental Insurance Company, an affiliate of "Delta Dental of California and Affiliates," operates and administers insurance plans in Alabama, Florida, Georgia, Louisiana, Mississippi, Montana, Nevada, Utah, and Texas. It is headquartered in California at 560 Mission Street, #1300, San Francisco, CA, 94105.

27.     Defendant Delta Dental of New York, an affiliate of "Delta Dental of California and Affiliates," is a nonprofit 501(c)(4) corporation that operates and administers dental insurance

plans in New York. It is headquartered in California at 560 Mission Street, #1300, San Francisco, CA, 94105.

28.     Delta Dental of Pennsylvania, an affiliate of "Delta Dental of California and Affiliates," is a nonprofit 501(c)(4) corporation that operates and administers dental insurance plans in Pennsylvania and Maryland. It is headquartered in California at 560 Mission Street, #1300, San Francisco, CA, 94105.

29.     Delta Dental of New Jersey, a nonprofit 501(c)(4) corporation, is a dental insurance provider that operates in New Jersey and Connecticut. It is a member of the Delta Dental Plans Association's national network of Delta Dental insurance companies. Its principal place of business is located at 1639 Route 10 PO Box 222, Parsippany, New Jersey 07054.

30.     Delta Dental of Missouri, a nonprofit 501(c)(4) organization, is a dental insurance provider that operates and administers plans in Missouri and South Carolina. It is a member of the Delta Dental Plans Association's national network of Delta Dental insurance companies. Its principal place of business is 12399 Gravois Road St. Louis, Missouri 63127-1702.

31.     Delta Dental of Tennessee, a nonprofit 501(c)(4) corporation, is a dental insurance provider that operates and administers plans in Tennessee. It is a member of the Delta Dental Plans Association's national network of Delta Dental insurance companies. Its principal place of business is located at 240 Venture Circle, Nashville, Tennessee 37228.

32.     Delta Dental of Washington, a nonprofit 501(c)(4) corporation, is a dental insurance provider that operates and administers plans in Washington. It is a member of the Delta Dental Plans Association's national network of Delta Dental insurance companies. Its principal place of business is located at 400 Fairview Ave N. Suite 800, Seattle, Washington 98109.

33.     Defendant Delta Dental Plans Association is an Illinois 501(c)(6) not-for-profit national network of Delta Dental Companies, headquartered at 1515 W 22nd St # 450, Oak Brook, Illinois 60523.

34.     Defendant Progress Software Corporation is a corporation organized under the laws of the State of Delaware with its principal place of business located at 15 Wayside Road, Suite 4, Burlington, Massachusetts 01803. Progress offers file transfer solutions through its MOVEit Transfer software, which experienced the Data Breach underlying Plaintiffs' claims.

## JURISDICTION

35.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000) and is a class action in which one or more class members are citizens of states different from Defendants.

36.     Absent the Court's MDL Order No. 12 (Direct Filing Order), Plaintiffs would have otherwise filed the case in each district court noted below, with the following bases:

37.     Plaintiff Tatiana Baquero Devis would have filed this action in the Northern District of California District Court. The Northern District of California District Court ("N.D. Cal.") has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their

principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

38.     Plaintiff Karen Boginski would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

39.     Plaintiff Doris Cadet would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

40.     Plaintiff Dustin Carter would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

41.     Plaintiff Joan Danella would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

42.     Plaintiff Marvin Dovberg would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts

substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

43.    Plaintiff Deanna Duarte would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

44.    Plaintiff Sarah Geiler would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2),

1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

45.    Plaintiff Michelle Gonsalves would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

46.    Plaintiff Donald Heller would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their

principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

47.     Plaintiff Wendy Herbert would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

48.     Plaintiff Margaret Kavanagh would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

49.     Plaintiff Conrad Lewis would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

50.     Terrill Mendler would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

51.     Plaintiff Manuel Mendoza would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts

substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

52.     Plaintiff Ricardo Moralez would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

53.     Plaintiff Hannah Polikowsky would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2),

1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

54.     Plaintiff Marisol Rhodes would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

55.     Plaintiff Maia Sullivan would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their

principal places of business in the jurisdiction, and DDPA and Progress conduct substantial business in this District.

56.     Plaintiff Yvette Tillman would have filed this action in the Northern District of California District Court. The Northern District of California District Court has personal jurisdiction over Delta Dental Defendants, DDPA, and Progress because each Defendant conducts substantial business in this District. Further, this District has personal jurisdiction over DDCA, DDNY, DDPenn., and DDIC because they maintain their principal places of business in this jurisdiction. N.D. Cal. is the proper venue for this case pursuant to 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District; DDCA, DDNY, DDPenn., and DDIC maintain their principal places of business in the jurisdiction; and DDPA and Progress conduct substantial business in this District.

## FACTUAL ALLEGATIONS

**Defendants' Businesses Require the Collection and Maintenance of Plaintiffs' and Class Members' Private Information**

57.     Plaintiffs and Class Members reallege and incorporate by reference all paragraphs from Plaintiffs' Omnibus Set of Additional Pleading Facts (ECF No. 908) as if fully set forth herein.

58.     "Delta Dental of California and Affiliates" is comprised of various companies,[1] and touts itself as the "nation's largest, most experienced dental benefits carrier," that offers individual and group dental insurance plans, providing dental insurance to tens of million individuals.[2]

---

[1] "The Delta Dental of California enterprise includes its affiliates Delta Dental Insurance Company; Delta Dental of the District of Columbia, Delta Dental of Delaware, Inc., Delta Dental of Pennsylvania, Delta Dental of New York, Inc., Delta Dental of West Virginia, and their affiliated companies, as well as the national DeltaCare USA network." *See infra*, n. 18.

[2] https://perma.cc/W434-ZPCK (last visited June 4, 2024).

"Collectively, [Delta Dental of California and Affiliates] offer benefits to more Americans than any other dental insurance company."[3]

59.     Delta Dental Insurance Company ("DDIC") is an affiliate of Delta Dental of California and Affiliates. DDIC offers and administers Delta Dental PPO and other fee-for-service dental programs to groups headquartered or located in Alabama, Florida, Georgia, Louisiana, Mississippi, Montana, Nevada, and Utah, and vision programs to groups headquartered in West Virginia. In Texas, Delta Dental Insurance Company offers and administers fee-for-service dental programs and provides a dental provider organization (DPO) plan.

60.     Delta Dental of New York ("DDNY") is an affiliate of Delta Dental of California and Affiliates. DDNY offers and administers Delta Dental PPO and other fee-for-service programs in New York.

61.     Delta Dental of Pennsylvania ("DDPenn.") is an affiliate of Delta Dental of California and Affiliates. DDPenn. and its own affiliates offer and administer Delta Dental PPO and other fee for-service dental programs in Delaware (Delta Dental of Delaware), Maryland, Pennsylvania, West Virginia (Delta Dental of West Virginia) and the District of Columbia (Delta Dental of the District of Columbia).

62.     "The companies in [Delta Dental's] enterprise are members, or affiliates of members, of the Delta Dental Plans Association, a network of 39 Delta Dental companies that together provide dental coverage to 80 million people around the country."[4]

63.     Delta Dental of New Jersey ("DDNJ") (which serves customers in New Jersey and Connecticut), Delta Dental of Missouri (which serves customers in Missouri and South Carolina),

---

[3] https://perma.cc/63Q4-38XM (last visited June 4, 2024).
[4] Delta Dental, *2019 Social Impact Report*, available https://perma.cc/TNZ2-CMAX (last accessed June 4, 2024).

Delta Dental of Tennessee, and Delta Dental of Washington are also all Delta Dental Companies within DDPA's network.

64.     DDPA was created in order to coordinate dental insurance for companies with employees in multiple states, and allows customers to see a provider in any state regardless of the member company through which they receive dental insurance.

65.     DDPA's website, © Copyright 2024 Delta Dental Plans Association, represents the network of 39 Delta Dental Companies and is branded as "Delta Dental."

66.     The other related website, © Copyright 2024 Delta Dental, "is the home of" the Delta Dental Defendants, collectively. This website also brands itself as "Delta Dental." Each of these Defendants is a member of DDPA's network of 39 Delta Dental insurance companies.

67.     As described on both DDPA's website and the website for Delta Dental of California and Affiliates, "Through our national network of Delta Dental companies, we offer dental coverage across all 50 states, Puerto Rico and other U.S. territories . . . offering dental insurance across all 50 states, D.C., and Puerto Rico."[5]

68.     Upon information and belief, DDPA, the national network of Delta Dental Companies, oversees the operations of Delta Dental Companies, including Delta Dental Defendants.

69.     DDPA holds itself out as having interconnected business operations with Delta Dental Defendants.

70.     DDPA refers to itself as one and the same as Delta Dental Defendants with respect to its value of data security and prioritizing practices to protect customers' data, *i.e.*, that its security

---

[5] Delta Dental, *About Delta Dental*, https://perma.cc/4R33-GGCQ (last accessed June 4, 2024).

policies and practices are consistent through its network of Delta Dental Companies, including Delta Dental Defendants.

71.     Specifically, "Because security is important to both Delta Dental and you, we employ reasonable safeguards designed to promote the security of our systems and protect your personal information from unauthorized destruction, use, modification, or disclosure. Personal information is protected using various physical, administrative and/or technical safeguards in transit and at rest."[6]

72.     Upon information and belief, all the Delta Dental Companies within DDPA's network, including Delta Dental Defendants, utilize the MOVEit software and follow the same safety and security policies, practices, and procedures.

73.     Customers, *i.e.*, policy holders through a Delta Dental Company, can sign up for an Account with Delta Dental Plans Association, for example, to access a Member Dashboard. To complete account registration, DDPA requires policy holders to provide PHI, including the following information: first name, last name, Member ID and health insurance information, Social Security number, date of birth, ZIP code, and email address.[7]

74.     Through their DDPA accounts, members may "request information about [their] coverage or claims through the Services (which request will go to the Delta Dental Company that administers or underwrites [their] dental benefits coverage)," and DDPA requires that they provide certain sensitive personal and medical related information as part of the request. [8] Additionally,

---

[6] "Privacy Statement for the Delta Dental Plans Association Website and Mobile App – Consumers," available here: https://perma.cc/A2HD-6PW3 (last accessed June 4, 2024).
[7] *Id.*
[8] *Id.*

members use DDPA's platform to track their dental activity, *i.e.*, protected health information as defined under HIPAA.[9]

75.     Customers can use DDPA's landing page to locate more information about their Delta Dental insurance provider and download the Delta Dental mobile application, through which their Private Information flows. In other words, customers, including Plaintiffs and Class Members, interact directly with DDPA and provide their Private Information to DDPA, in addition to the Delta Dental Company, including Delta Dental Defendants, that provides their insurance plan.

76.     Branding on DDPA's website, the "Delta Dental of California and Affiliates" (comprised of Delta Dental Defendants) website, and the respective websites for DDNJ, DDMI, DDTN, and DDWA is identical.

77.     Additionally, DDPA's diversity, equity, and inclusion "guiding principles" apply to all Delta Dental Defendants, according to DDPA's website.

78.     As part of their business operations, Delta Dental Defendants acquire, collect, store, and utilize consumers' sensitive personal data, including personal identifying information ("PII")[10] and protected health information ("PHI")[11] (collectively, "Private Information"). As a condition

---

[9] *Infra*, n. 11.

[10] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

[11] Under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.*, and its implementing regulations ("HIPAA"), "protected health information" is defined as individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. 42 U.S.C. § 1320d(6); 45 C.F.R. § 160.103 *Protected health information*. "Business Health information such as diagnoses, treatment information, medical test results, and prescription information are

of receiving dental insurance through Delta Dental Defendants or any of the Delta Dental Companies within DDPA's national network, Plaintiffs and Class Members were required to provide and entrust their highly sensitive Private Information with Delta Dental Defendants. Delta Dental Defendants relied on and derived monetary benefits and profit from Plaintiffs' and Class Members' providing their Private Information.

79.     DDPA also collects, transmits, and uses this data as part of its business operations, and informs users in its Privacy Policy that it "shar[es] collected personal information with third parties, including service providers, business associates, and the Delta Dental Companies."[12] DDPA entered into a "Business Associate Agreement" with each of the Delta Dental Companies, which identifies that both entities are regulated under the U.S. Health Insurance Portability and Accountability Act (HIPAA), wherein both parties must agree that they "understand the privacy and security safeguards established by HIPAA, HITECH, and the Omnibus Rule and agree to protect member Personal Health Information (PHI)"[13] and set out the terms in which Plaintiffs' and Class Members' Private Information can be transferred and disclosed.[14] In other words, Delta Dental Defendants and DDPA share data. Similarly, DDPA derives financial benefit from

_____

considered protected health information under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information. "Summary of the HIPAA Privacy Rule," DEP'T FOR HEALTH & HUM. SERVS., https://perma.cc/9U8X-5L7E (last accessed June 4, 2024).

[12] *Supra*, n. 6.

[13] *Id.*; *see also* https://perma.cc/8TUV-ED9Y (last accessed June 4, 2024).

[14] *See also supra*, n. 6 ("Applicable HIPAA business associate agreements generally permit Delta Dental to use and disclose your individually identifiable health information (1) to perform functions or activities on behalf of, or provide services to, the Delta Dental Companies, in connection with their role in underwriting  dental benefit coverage and administering dental benefit programs and claims, or as otherwise permitted or required by law including HIPAA; (2) for Delta Dental's proper management and administration or to fulfill its legal responsibilities; (3) to perform data aggregation services in order to provide analysis relevant to the health care operations of the Delta Dental Companies . . . ."); *see also* 45 CFR 164.504(e) (requirements for contract).

Plaintiffs' and Class Members' providing their Private Information to its Delta Dental Companies with which it contracts.

80.     Defendant Progress represents itself as "a global supplier of products and services for business applications" that "develops, markets and distributes application development, deployment, integration and management software to business, industry and governments worldwide."[15]

81.     As alleged and incorporated herein, Progress knew its software, MOVEit, was being used to transfer sensitive information.

82.     As part of its business operation with respect to its healthcare clients, Progress acquires, collects, stores, and utilizes consumers' sensitive personal data, including Private Information of its clients' customers, such as Plaintiffs and Class Members.

83.     Delta Dental Defendants contract with the third-party service provider, Progress, to utilize its MOVEit software to store and transfer the Private Information of Plaintiffs and Class Members.

84.     Similar to DDPA, Progress also entered into Business Associate Agreements (hereafter "BAA"), which set out the terms in which Plaintiffs' and Class Members' Private Information can be transferred and disclosed.[16]

85.     As business associates of healthcare providers, both DDPA and Progress knowingly obtain sensitive patient Private Information and have a resulting duty to securely maintain such information in confidence.

---

[15] Progress, SEC Form 10-K (2003), https://perma.cc/4UMV-5C2R (last accessed June 4, 2024).
[16] *See* https://perma.cc/PAG9-PYHZ (last accessed June 4, 2024).

86.     This Private Information was compromised as a result of a security vulnerability in the MOVEit software, as alleged in Plaintiffs' Omnibus Set of Additional Pleading Facts and incorporated and realleged herein. *See* ECF No. 908 (section I(D)).

87.     The MOVEit Transfer servers that were targeted in the Data Breach were located within the Delta Dental of California network environment. Ex. A. of Affidavit S. Achenbaugh (DDPA), ¶ 9. As discussed, *infra*, these servers contained the Private Information of Delta Dental Defendants' customers, including Plaintiffs and Delta Dental Nationwide Class Members.

88.     Although thousands of companies were affected by the Data Breach, Delta Dental "stands out [because it] is the third largest healthcare MOVEit-related breach to have been reported" – affecting 6,928,932 customers.[17]

89.     The Private Information compromised in the Data Breach included "names with some combination of the following: addresses, Social Security numbers, driver's license numbers or other state identification numbers, passport numbers, financial account information, tax identification numbers, individual health insurance policy numbers, and/or health information."[18]

90.     Some or all of the healthcare and/or medical information that was compromised and stolen by the unauthorized actors constitutes "protected health information" within the meaning of HIPAA.[19]

---

[17] "Delta Dental of California Data Breach: 7 Million Individuals Affected." THE HIPAA JOURNAL, published Dec. 17, 2023, available here: https://perma.cc/WZE9-R483 (last accessed June 4, 2024).

[18] Data Breach Notifications, Office of the Maine Attorney General, "AG Notice – ME – Delta Dental + Affiliates," PDF available for download: https://perma.cc/VV48-LETD (last accessed June 4, 2024).

[19] *Supra*, n. 11.

**Defendants Misrepresented Their Security Practices**

91.     Delta Dental Defendants and DDPA made numerous representations and promises that customers' Private Health Information was "private and confidential[,]" and about their commitment to maintaining its safety, including on their various webpages.[20]

92.     For examples, DDPA's "Compliance Center" discusses "Delta Dental's compliance" with the various mandates under HIPAA.[21] Under its Privacy Policy, DDPA states that it "collects, uses, and discloses your individually identifiable health information consistent with the terms of applicable HIPAA business associate agreements with the Delta Dental Companies."[22]

93.     DDPA also states in one of its privacy statements that, "Because security is important to both Delta Dental and you, we employ reasonable safeguards designed to promote the security of our systems and protect your personal information from unauthorized destruction, use, modification, or disclosure. Personal information is protected using various physical, administrative and/or technical safeguards in transit and at rest."[23]

94.     Delta Dental Defendants' website assures existing and prospective customers that it "has updated and implemented system changes to accommodate the applicable 5010 standards and the associated transaction sets" and that HIPAA covered transactions include enrollment information in health plans and health care claims, which include costs of treatments – precisely the type of data that was compromised in the Data Breach.[24]

---

[20] *Supra*, n. 3.
[21] *See* https://perma.cc/Q3JG-ZK6Z (last accessed June 4, 2024).
[22] *Supra*, n. 6.
[23] *Id*.
[24] https://perma.cc/U37F-DBBK (last accessed June 4, 2024).

95.     Similarly, Defendant Progress claims to be HIPAA compliant, and that it has, among other protocols, "implemented technical and organizational measures to ensure HIPAA compliance and operates in secure computing environments in its corporate offices, development environments, and production cloud products. Progress audits its security solutions and processes annually to maintain SOC2 and HIPAA validation."[25]

### Defendants Owed Legal Obligations to Plaintiffs and Class Members

96.     DDPA's national network of 39 Delta Dental Companies (including Delta Dental Defendants) provides dental insurance to 80 million individuals. Plaintiffs and Class Members are currently or were formerly customers of Delta Dental Defendants.

97.     As a condition of using Delta Dental Defendants' services, *i.e.*, entering into a direct business relationship with a Delta Dental member company, Plaintiffs and Class Members were required to provide their highly sensitive Private Information.

98.     Because Delta Dental Defendants required Plaintiffs' and Class Members' Private Information in exchange for the provision of dental insurance, by accepting their Private Information, Delta Dental Defendants owed and otherwise assumed statutory, regulatory, contractual, and common law duties and obligations, and knew or should have known that they were responsible for protecting Plaintiffs' and Class Members' Private Information and keeping it confidential, safe, and secure from the type of unauthorized access, disclosure, and theft that occurred in the Data Breach, including by ensuring that their third-party service providers implemented adequate, secure, and compliant safeguards to protect their own platforms.

99.     Because of the highly sensitive and personal nature of the information that Delta Dental Defendants acquire, maintain on their shared network, and input into Progress's MOVEit

---

[25] https://perma.cc/G6HN-ZWJ9 (last accessed June 4, 2024).

file transfer server and/or software, Delta Dental Defendants have a non-delegable duty to Plaintiffs and Class Members to implement reasonable and adequate security measures to protect their Private Information, including to ensure their third-party vendors had implemented adequately safe and secure policies and practices. Delta Dental Defendants promise, among other things, to: keep customers' files private; comply with regulation and industry standards related to data security and maintenance of their customers' files and the Private Information contained therein; only use and release Private Information for reasons that relate to the products and services Plaintiffs and Class Members obtain from Defendants and provide adequate notice to individuals if their Private Information is disclosed without authorization.

100.    Similarly, DDPA owed duties analogous to Delta Dental Defendants by representing itself to customers as one and the same, such that a reasonable person would rely on these representations in understanding the nature of their relationship. DDPA also benefitted monetarily from its collection, storage, receipt, transfer, and use of Plaintiffs' and Class Members' Private Information as laid out in its BAAs.

101.    Similarly, due to Defendant Progress's role as a third-party beneficiary of the business relationships between Delta Dental Defendants and Plaintiffs and Class Members, and its own contractual relationship with Delta Dental Defendants for use of its MOVEit file transfer software, Defendant Progress's business relied on and benefitted from Plaintiffs' and Class Members' entrusting their Private Information to Delta Dental Defendants and thus owed Plaintiffs the same duties to protect their Private Information.

102.    As alleged and incorporated, Progress owed a non-delegable duty to Plaintiffs and Class Members to identify and remediate vulnerabilities in its MOVEit software and to implement

reasonable and adequate security measures to secure and protect Plaintiffs' and Class Members' Private Information.[26]

103.    As incorporated and realleged herein, Delta Dental Defendants and DDPA knew of these requirements and of industry cybersecurity standards and their obligations to protect Plaintiffs' and Class Members' highly sensitive Private Information. *See* ECF No. 908 (section V).

104.    In addition to the aforementioned and incorporated industry standards, the Center for Internet Security (CIS) has also published clear guidance on the steps businesses that share information with third parties, *e.g.*, "rely on vendors and partners to help manage their data or rely on third-party infrastructure for core applications or functions," should take to ensure those vendors have appropriate cybersecurity systems and protocols in place, and that their customers' Private Information is adequately safeguarded. Since its formation in 2000, CIS has established applicable industry standards to help people, businesses, and governments protect themselves against pervasive cyber threats that are "globally recognized best practices for security IT systems and data."[27]

105.    As incorporated and realleged herein, Progress knew of its obligations to protect Plaintiffs' and Class Members' Private Information, including of industry cybersecurity standards, and could have prevented the Data Breach by following industry standards for secure software development and maintenance. *See* ECF No. 908 (sections III-IV).

---

[26] *See* ECF No. 908 (section IV(C)) (describing Progress's legal and equitable duties of which it knew or should have known); these obligations also arise because it is regulated under the terms of a "Business Associate" under HIPAA. 45 C.F.R. § 160.103(1); *infra*, n. 30.

[27] Center for Internet Security, *Critical Security Controls*, at pp. 12, 42-44 (May 2021), https://perma.cc/R3M4-4KAU (last visited June 4, 2024).

106.    Moreover, Delta Dental Defendants owed legal obligations to Plaintiffs and Class Members as "covered entities" under the Health Insurance Portability and Accountability Act ("HIPAA") and subject to its regulations.[28]

107.    Due to the nature of the business relationship between Progress and Delta Dental Defendants, *i.e.*, contracting for use of Progress's MOVEit software to store and transfer the "protected health information"[29] of Plaintiffs and Class Members, Defendant Progress is regulated by HIPAA as a "business associate."[30]

108.    Progress knew of these legal obligations, and represents on its website that it "provides [its clients] with a Business Associate Agreement to protect [their] data and help conform to [their] business's HIPAA compliance program."[31] Under its BAAs with Delta Dental Defendants, Progress acknowledges that it is subject to requirements under HIPAA, HITECH, and the Final Rule (Omnibus Rule) and agrees to protect member Personal Health Information (PHI) as required under said laws.[32]

---

[28] A "covered entity" is defined as, *inter alia*, "[a] health care provider who transmits any health information in electronic form in connection with a transaction covered by [HIPAA]." 45 C.F.R. § 160.102(a)(3). "Health Plans, including health insurance companies" are covered entities under HIPAA. *Your Rights Under HIPAA*, DEP'T FOR HEALTH & HUM. SERVS., https://perma.cc/ER6M-X3KL (last accessed June 4, 2024). As a provider of dental insurance, Delta Dental is clearly a "covered entity," subject to HIPAA.

[29] *Supra*, n. 11.

[30] Under HIPAA, a "business associate" is defined as, with respect to a covered entity, a person who: "creates, receives, maintains, or transmits protected health information for a function or activity regulated by [HIPAA], including claims processing or administration, data analysis, processing or administration, utilization review, quality assurance, patient safety activities listed at 42 CFR 3.20, billing, benefit management, practice management and repricing. . . . ." 45 C.F.R. § 160.103(1). *Business Associate*. A business associate includes an entity "that provides data transmission services with respect to protected health information to a covered entity and that requires access on a routine basis to such protected health information." 45 C.F.R. § 160.103(3). As a software that transfers HIPAA protected data contracted with a HIPAA covered entity, Progress is clearly a "business associate," subject to HIPAA, with respect to its relationship and data acquired and stored through its contract with Delta Dental Defendants.

[31] *Supra*, n. 16.

[32] *See* "Business Associate Contracts," DEP'T FOR HEALTH & HUM. SERVS., https://perma.cc/7828-

109.     As previously alleged, DDPA also entered into BAAs with each of the Delta Dental Companies of its national network which governed the transfer, use, and disclosure of Plaintiffs' and Class Members' PHI.[33] DDPA is governed by HIPAA's regulations of business associates.

110.     As business associates, DDPA and Progress are also required to follow regulations for safeguarding electronic medical information pursuant to the Health Information Technology for Economic and Clinical Health Act of 2009 ("HITECH"). *See* HITECH Act, Sec. 13400, *et seq.*; 42 U.S. Code § 17931; 42 U.S.C. § 17921, 45 C.F.R. § 160.103.

111.     Both HIPAA and HITECH obligate Progress and DDPA to follow reasonable security standards, respond to, contain, and mitigate security violations, and to protect against disclosure of sensitive patient Private Information. These standards and rules require of business associates comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of Private Information is properly maintained and protected. 42 U.S. Code § 17931 (applying security requirements to business associates and incorporating security requirements into BAAs between business associates and covered entities); *see* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards); 45 C.F.R. § 164.316 (policies and procedures and documentation requirements).

112.     As "business associates" under HIPAA, "the standards, requirements, and implementation specifications adopted under [HIPAA] apply" to both Progress and DDPA. 45 C.F.R. § 160.102(b). For example, "[a] written contract between a covered entity and business associate must . . . [among numerous other requirements] require the business associate to implement appropriate safeguards to prevent unauthorized use or disclosure of the information,

---

L5RG (last accessed June 4, 2024); *see id.* for a Sample Business Associate Agreement.
[33] *Supra*, n. 6.

including implementing requirements of the HIPAA Security Rule with regard to electronic protected health information . . . ."[34] *See* the HIPAA Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C ("Security Standards for the Protection of Electronic Protected Health Information"). Business Associates are also required to comply with the Health Information Technology Economic and Clinical Health Act ("HITECH").[35] In other words, DDPA and Progress's non-delegable duties also arise under HIPAA and the HITECH Act.

113.   Further, the U.S. Department of Health and Human Services recommends the following data security measures that business associates such as Progress and DDPA should implement to protect against some of the more common, and often successful, cyber-attack techniques. According to those guidelines, business associates should:

A.   implement security awareness and training for all workforce members and that the training programs should be ongoing, and evolving to be flexible to educate the workforce on new and current cybersecurity threats and how to respond;

B.   implement technologies that examine and verify that received emails do not originate from known malicious sites, scan web links or attachments included in emails for potential threats, and impede or deny the introduction of malware that may attempt to access PHI;

C.   mitigate known data security vulnerabilities by patching or upgrading vulnerable technology infrastructure, by upgrading or replacing obsolete and/or unsupported applications and devices, or by implementing

---

[34] *Supra*, n. 30; *see also supra,* n. 28 (defining Delta Dental Defendants as covered entities).
[35] *See* 42 U.S.C. § 17921(2) (incorporating "business associate" as defined in 45 C.F.R. § 160.103).

safeguards to mitigate known vulnerabilities until an upgrade or replacement can occur;

D.     implement security management processes to prevent, detect, contain, and correct security violations, including conducting risk assessments to identify potential risks and vulnerabilities to the confidentiality, integrity, and availability of PHI; and

E.     implement strong cyber security practices by requiring strong passwords rules and multifactor identification.[36]

114.    As "covered entities" under HIPAA, respectively, Delta Dental Defendants are required to comply with both the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and the HIPAA Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C ("Security Standards for the Protection of Electronic Protected Health Information"), as well as the HITECH Act, as alleged in Plaintiffs' Omnibus Set of Additional Pleading Facts and incorporated as if fully set forth herein. *See* ECF No. 908 (section V(C)(II)).[37]

115.    As "covered entities" under HIPAA, Delta Dental Defendants were additionally legally obligated to comply with the Breach Notification Rule, 45 C.F.R. Part 164, Subpart D ("Notification in the Case of Breach of Unsecured Protected Health Information"), which required them to provide notice of the breach to affected individuals "without unreasonable delay and in no case later than 60 days following discovery of the breach."[38] Additionally, covered entities are

---

[36] OCR Quarter 1 2022 Cybersecurity Newsletter, U.S. DEP'T HEALTH HUM.SERVS., (Mar. 17, 2022), https://perma.cc/5L25-V4Z4 (last accessed June 4, 2024).

[37] *See also* "Summary of the HIPAA Security Rule," DEP'T FOR HEALTH & HUM. SERVS., https://perma.cc/J2XB-5TLA (last accessed June 4, 2024).

[38] § 164.404 Notification to individuals. *Breach Notification Rule*, https://perma.cc/KM4C-F3FR (last accessed June 4, 2024). "With respect to a breach at or by a business associate, . . . the

required to "mitigate . . . any harmful effect . . . . of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of this subpart by the covered entity or its business associate." 45 C.F.R. § 164.530(f).

116.    As previously alleged and incorporated, Progress's customers, including Delta Dental Defendants, were required to comply with the FTC guidelines. *Inter alia*, the FTC recommends that companies verify that third-party service providers have implemented reasonable security measures.[39] *See* ECF No. 908 (section V(C)(I)).

117.    Similarly, Progress's business conduct is also governed by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by businesses of failing to use reasonable measures to protect sensitive consumer data, including Private Information. Various FTC publications and orders promulgated pursuant to the FTC Act also form the basis of Progress's duty. *See* ECF No. 908 (section V(C)(I) applicable to Progress as well). Progress also knew or should have been aware of guidelines and publications by the FTC and other resources regarding cybersecurity risks and best practices.

### Defendants Failed to Protect and Satisfy Their Legal Obligations

118.    Despite Delta Dental Defendants' and DDPA's duty to safeguard Plaintiffs' and Class Members' Private Information, Delta Dental Defendants and DDPA nevertheless employed inadequate data security measures to protect and secure the data with which they were entrusted, resulting in the Data Breach and the subsequent compromise and theft of Plaintiffs' and Class Members' Private Information. As described in Plaintiffs' Omnibus Set of Additional Pleading

---

covered entity is ultimately responsible for ensuring individuals are notified[.]" *Id.*
[39]  *Start With Security*, Fed. Trade Comm'n ("FTC"), https://perma.cc/W829-XP9N (last visited June 4, 2024).

Facts, had Delta Dental Defendants and DDPA taken their obligations seriously, they would have determined that the MOVEit software was not safe and would put Plaintiffs' and Class Members' Private Information at risk. See ECF No. 908 (section V(D)).

119.    Similarly, Progress failed to identify and remediate vulnerabilities in its MOVEit software and secure Plaintiffs' and Class Members' Private Information despite its duties to do so, although it knew or should have known of the vulnerabilities in its software and that it was obligated to patch them. *See* ECF No. 908 (section IV).

120.    Although Delta Dental Defendants owed a non-delegable duty to Plaintiffs and Class Members to implement reasonable and adequate security measures to protect their Private Information, they maintained, stored, disclosed, shared, and/or transferred their Private Information in a negligent and/or reckless manner. In particular, Plaintiffs' and Class Members' Private Information was maintained on computer systems in a condition vulnerable to cyberattacks.

121.    Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' and Class Members' Private Information was a known risk to Delta Dental Defendants, and thus they were on notice that failing to take steps necessary to ensure their vendors, including Defendant Progress, properly safeguarded Plaintiffs' and Class Members' Private Information from those risks left the Private Information in a vulnerable condition.

122.    As alleged in this Complaint, as well as more generally in the Plaintiffs' Omnibus Set of Additional Pleading Facts, ECF No. 908 (section V(C)(II)), Delta Dental Defendants failed to comply with HIPAA and HITECH, including in the following ways:

> A.    Failing to maintain adequate security practices, systems, and protocols to prevent data loss and theft;

B.    Failing to mitigate risks of data breach and implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

C.    Failing to ensure the confidentiality, integrity, and protection of electronic PHI that Delta Dental Defendants create, receive, maintain, and transmit in violation of 45 CFR 164.306(a)(1).

D.    Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

E.    Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

F.    Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR 164.308(a)(6)(ii);

G.    Failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2);

H.    Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3);

I.      Failing to ensure compliance with HIPAA security standard rules by Defendants' workforce in violation of 45 CFR 164.306(a)(4);

J.      Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502, *et seq*.; and

K.      Retaining information past a recognized purpose and not deleting it.

L.      Failing to ensure that their third-party vendor, Progress, had implemented adequately safe and secure policies and practices.

123.    Delta Dental Defendants failed to comply with FTC guidelines and industry standards as well. *See* ECF No. 908 (sections V(C)).

124.    Similarly, DDPA and Progress failed to comply with HIPAA and HITECH, including in the following ways:

A.      Failing to maintain adequate security practices, systems, and protocols to prevent data loss and theft;

B.      Failing to mitigate risks of data breach and implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

C.      Failing to ensure the confidentiality, integrity, and protection of electronic PHI that they create, receive, maintain, and/or transmits in violation of 45 CFR 164.306(a)(1);

D.      Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information

35

to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

E.   Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

F.   Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR 164.308(a)(6)(ii);

G.   Failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2);

H.   Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3);

I.   Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502, *et seq*.; and

J.   Retaining information past a recognized purpose and not deleting it.

125.   Delta Dental Companies in DDPA's network have historically been subject to numerous data breaches[40] during which unauthorized agents gained access to their or their vendors' network systems, compromising the Private Information of their customers. As described

---

[40] *See, e.g.*, "Important Security Event Notice" (breach of Delta Dental of Washington's own network systems) (2022), notice available here: https://perma.cc/DH99-EUEF (last visited June 4, 2024); "Notice of EyeMed Vision Care LLC Data Breach" (vendor of Delta Dental affiliate) (2020), notice available here: https://perma.cc/QT25-3A9N (last visited June 4, 2024).

herein, Delta Dental Defendants and DDPA knew based on breaches of Delta Dental Companies' networks and the prevalence of cyberattacks across the industry that the data they collected and stored was highly valuable and vulnerable. *See* ECF No. 908 (section II(G)).

126.    Similarly, as alleged, Progress knew of these same risks and should have known of the vulnerabilities in its software, and by failing to patch them, failed to uphold its obligations to protect Plaintiffs and Class Members' Private Information. Moreover, Progress's failure to act as quickly as possible after the breach led to additional losses for Plaintiffs and Class Members. *See* ECF No. 908 (sections IV(D)-(E)).

127.    Progress's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as well as its failure to verify whether it had implemented such measures also constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45 as well as FTC and industry standards and guidelines discussed throughout this Complaint. *See* ECF No. 908 (sections V(C)).

128.    Although DDPA disclosed that the MOVEit Transfer servers that were the target of the Data Breach were located within the Delta Dental of California network environment, Ex. A.,¶ 9, the details otherwise of the Data Breach remain in the exclusive control of Defendants, for example, Delta Dental Defendants and DDPA did not disclose the ways in which they failed to comply with data security regulations and industry standards that made them vulnerable to the Data Breach, by way of their third-party service provider, MOVEit, or otherwise. Moreover, although it admitted to Plaintiffs that their "health insurance information" and "treatment cost information" had been compromised, Delta Dental failed to indicate, for example, whether the data included the treatment itself, *i.e.*, the medical condition, which is of utmost sensitivity – and public disclosure of which could lead to humiliation or other serious harms.

129.    However, upon information and belief, Defendants Delta Dental and Progress breached their duties and obligations in one or more of the following ways, by: (i) failing to design, test, implement, monitor, and maintain reasonable software and/or network safeguards against foreseeable threats; (ii) failing to design, implement, and maintain reasonable data retention policies; (iii) failing to adequately train staff on data security; (iv) failing to comply with industry-standard data security practices; (v) failing to warn Plaintiffs and Class Members of inadequate data security practices; (vi) failing to encrypt or adequately encrypt the Private Information; and (vii) otherwise failing to secure the software and hardware using reasonable and effective data security procedures free of foreseeable vulnerabilities and data security incidents.

130.    Additionally, after confirming on July 6, 2023 that the Data Breach affected Delta Dental Defendants' data, Delta Dental Defendants failed to comply with the Breach Notification Rule by waiting an unreasonable amount of time, far longer than the permissible 60-day limit, to disclose the Data Breach to their customers through "individual notifications,"[41] in violation of their duties as covered entities. 45 CFR §§ 164.400-414.

**Delta Dental Defendants Waited Over Five Months to Notify Plaintiffs and Class Members After Discovering the Data Breach**

131.    As described in Plaintiffs' Omnibus Set of Additional Pleading Facts (ECF No. 908) and realleged herein, Defendant Progress's MOVEit software was the target of a catastrophic and devastating successful cyberattack that affected thousands of its clients and compromised the Private Information of millions of their and their clients' customers, including almost seven million customers of the Delta Dental insurance member companies within DDPA's network whose

---

[41] *Supra*, n. 18; *supra*, n. 38 "These individual notifications must be provided without unreasonable delay and in no case later than 60 days following the discovery of a breach."

Private Information was stored or otherwise in use on the MOVEit Transfer servers located within the Delta Dental of California network environment. Ex. A., ¶ 9.

132.     The victims of the Data Breach were subject to the highly offensive disclosure of their sensitive, personal medical information and personal identifying information ("Private Information"). Specifically, the Private Information included "names with some combination of the following: addresses, Social Security numbers, driver's license numbers or other state identification numbers, passport numbers, financial account information, tax identification numbers, individual health insurance policy numbers, and/or health information."[42]

133.     The "Notice of Data Security Incident" (hereafter "Notice Letter") was sent and signed by "Delta Dental of California and Affiliates" with the address listed as 560 Mission Street, Suite 1300, San Francisco, CA 94105. The Notice Letter refers to "Delta Dental of California and affiliates" as "Company," which it defines as follows therein:

> "The Delta Dental of California enterprise includes its affiliates Delta Dental Insurance Company; Delta Dental of the District of Columbia, Delta Dental of Delaware, Inc., Delta Dental of Pennsylvania, Delta Dental of New York, Inc., Delta Dental of West Virginia, and their affiliated companies, as well as the national DeltaCare USA network."

134.     "Delta Dental of California and affiliates" sent the exact same letter to Plaintiffs and Class Members who, upon information and belief, are and were at all relevant times, residents of states in which *other* Delta Dental Companies operate, *e.g.*, residents of Tennessee received a Notice Letter from "Delta Dental of California and affiliates," not from the Delta Dental Company that operates in their state through which they purchased insurance. In other words, Plaintiffs and Class Members whose dental insurance program was offered and administered by DDPA member companies other than those in California, New York, Pennsylvania, D.C., West Virginia, or

---

[42] *Supra*, n. 18.

Alabama, Florida, Georgia, Louisiana, Mississippi, Montana, Nevada, Utah, Texas (where DDIC offers and administers Delta Dental PPO and other dental programs), still received the Notice Letter from "Delta Dental of California and its affiliates."

135.    Delta Dental Defendants waited over five months after discovering the breach to begin to send their customers Notice Letters that their data had been compromised. In the Notice Letter, Delta Dental of California and affiliates (hereafter referred to as "Company" for the purposes of describing the notification) admits to Plaintiffs' and Class Members' that they were victims of a data breach, finally revealing to them that their highly sensitive, personal data was accessed by an unauthorized third party and compromised. They disclosed as follows:[43]

A.    "Delta Dental of California and affiliates ('Company') experienced a data security incident involving the MOVEit Transfer ('MOVEit') software, an application used by our company and many organizations worldwide."

B.    "On June 1, 2023, the Company learned unauthorized actors exploited a vulnerability affecting the MOVEit file transfer software application."

C.    "On July 6, 2023, our investigation confirmed that Company information on the MOVEit platform had been accessed and acquired without authorization between May 27, 2023 and May 30, 2023. At that time, we promptly engaged independent third-party experts in computer forensics, analytics, and data mining to determine what information was impacted and with whom it is associated."

136.    Delta Dental admitted to each recipient that "[on] November 27, 2023, [it] determined [their] personal information was affected."

---

[43] *Id.*

137.    Upon information and belief, the Company sent its first batch of notifications to its customers who were victims of the Data Breach that their data had been compromised on December 14, 2024 – the date that the Notice of Security Incident was sent to the Maine Office of Attorney's General.[44]

138.    In other words, the Company waited, at minimum, six and a half months after learning about the unauthorized activity on the MOVEit Platform (June 1, 2023) before it revealed this crucial information to its customers and suggested that they start taking precautions to protect their identities, *e.g.*, merely review their credit reports, or to offer them identity monitoring services due to the risks they now faced as a result of the Data Breach.

139.    Even after concluding its own investigation and confirming that its customers' personal identifying and personal health information had been compromised on July 6, 2024, the Company still waited at minimum, nearly five and a half months before it started notifying its customers directly of the breach and potential risks they faced as a result.[45]

140.    However, most of the Plaintiffs' Notice Letters, *see* Ex. B-U, are dated after January 23, 2024 and up to as late as February 9, 2024—in other words, almost eight months after the Company learned about the breach, and almost two and a half months after identifying on November 27, 2023 that the Plaintiffs' own Private Information was compromised.

141.    When the Company finally sent notice to its customers about the Data Breach, it deliberately underplayed the Data Breach's severity and obscured the nature of the Data Breach. For example, the Notice Letter fails to explain how the breach occurred (what security weakness was exploited), what exact data elements of each affected individual were compromised, who the Data Breach was perpetrated by, and the extent to which those data elements were compromised.

---

[44] *Id.*
[45] *Supra*, n. 17.

The Company claims that after learning about the breach on June 1, 2023 it "enhanced unauthorized access monitoring related to MOVEit Transfer file access, malicious activity, and ransomware activity[]" but does not specify how its steps actually mitigate the harms caused by the Data Breach or describe how these measures will prevent further breaches, nor its ability to protect Plaintiffs' and Class Members' Private Information from future unauthorized disclosure, as required by HIPAA, 45 CFR § 164.404.

142.    In the Notice Letter, the Company also claims that "[d]ata security is a priority []. We apply security patches for known vulnerabilities provided by third-party software vendors, regularly update our capabilities to monitor potential security threats and consistently manage access to our systems and data."[46] Notably, this statement appears after informing the recipient what of their data was compromised, in the "What Are We Doing" section, along with its offer of a free 24 months of identity monitoring services. Thus, it is ambiguous as to whether these are new measures in place, *i.e.*, what the Company is now doing as a result of the breach, or whether these were security measures already in place. The Company does not offer any assurances or indication that these measures are reasonable or adequate to safeguard and protect Plaintiffs' and Class Members' Private Information in the future or whether Plaintiffs and Class Members remain vulnerable to new attacks.

143.    The Company's offer of 24 months of identity monitoring services is woefully inadequate given the lifetime – not merely two years – of risks Plaintiffs and Class Members now face as a result of the Data Breach.

144.    The Company's offer itself indicates that it recognizes that Plaintiffs and Class Members are at a present and continuing risk of identity theft and fraud as a result of the Data

---

[46] *See* Delta Dental, *Notice of Data Breach*, https://perma.cc/ESW4-SFHX (last accessed June 4, 2024).

Breach, and that these risks arose once the Company confirmed the breach, back in July 2023—when the Company first confirmed that the Company's data had been impacted. Yet the Company has offered no measures to protect Plaintiffs and Class Members from these lifetime risks they now face, and upon information and belief, have failed to offer relief for the damages they suffered due to its own negligence that left Plaintiffs' and Class Members' Private Information vulnerable to attack and theft.

145.    The Company merely "encourage[d] individuals to remain vigilant by reviewing bank accounts, credit reports and other financial statements closely and immediately reporting any suspicious activity to the company that maintains the account for the individual."[47] In the Notice Letter, it suggested Plaintiffs and Class Members run credit reports, place a security freeze on their accounts, set up fraud alerts, and report any suspicious activity. In other words, the Company shifted the burden to Plaintiffs and Class Members to remediate their own harms and be responsible for preventing future harms.

146.    As alleged, Delta Dental Defendants' unreasonable delay in notifying their customers of the Data Breach was in violation of their obligations as "covered entities" under the HIPAA Breach Notification Rule, 45 CFR § 164.404. Moreover, by failing to notify Plaintiffs and Class Members that their Private Information may have been compromised as early as July, Delta Dental Defendants prevented Plaintiffs and Class Members from taking reasonable precautions to try to mitigate the harms of the Data Breach, in violation of 45 C.F.R. § 164.530(f), which required Delta Dental, as covered entities, to mitigate the harmful effects of the Data Breach. To the contrary, by waiting over five months to notify affected individuals, Delta Dental Defendants

---

[47] *Supra*, n. 18.

exacerbated the harmful effects and risks to Plaintiffs and Class Members caused by the Data Breach.

**Plaintiffs and Class Members Suffered Serious Harms**

147.    As alleged and incorporated herein, as victims of a cybercriminal data breach, Plaintiffs and Class Members face immediate and significant harm. *See* ECF No. 908 (sections II(E)-(I)).

148.    As alleged and incorporated herein, Plaintiffs and Class Members suffered injuries in numerous ways and are at risk of future injuries for the rest of their lives. *See* ECF No. 908 (section II(I)).

149.    As a direct and proximate result of Defendants' collective wrongful actions and inaction and the resulting Data Breach, Plaintiffs and Class Members have already been harmed by the fraudulent misuse of their Private Information, and have been placed at an imminent, immediate, and continuing increased risk of additional harm from identity theft and identity fraud, requiring them to put time which they otherwise would have dedicated to other life demands such as work and family into an effort to mitigate both the actual and potential impact of the Data Breach on their lives. Such mitigatory actions include, *inter alia*, closely reviewing and monitoring their credit reports and accounts for unauthorized activity; investigating suspicious, unauthorized activity in their financial accounts or credit; placing "freezes" and "alerts" with credit reporting agencies; contacting their financial institutions, reversing charges, closing or modifying financial accounts; sorting through dozens of phishing and spam email, text, and phone communications. This time has been lost forever and cannot be recaptured.

150.    Defendants' wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class Members' Private

Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

A.   theft and misuse of their personal and financial information;

B.   the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals and misused via the sale of Plaintiffs' and Class Members' information on the Internet's black market;

C.   the untimely and inadequate notification of the Data Breach;

D.   the improper disclosure of their Private Information;

E.   loss of privacy;

F.   ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

G.   ascertainable losses in the form of deprivation of the value of their Private Information, for which there is a well-established national and international market;

H.   the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the inconvenience, nuisance and annoyance of dealing with all such issues resulting from the Data Breach; and

I.      nominal damages

151.    While Plaintiffs' and Class Members' Private Information has been stolen, Defendants continue to hold Plaintiffs' and Class Members' Private Information. Particularly because Defendants have demonstrated an inability to prevent a breach or stop it from continuing even after being detected, Plaintiffs and Class Members have an undeniable interest in ensuring that their Private Information is secure, remains secure, is properly and promptly destroyed, and is not subject to further theft.

152.    Plaintiffs and Class Members have suffered from the unauthorized disclosure of their Private Information. The disclosure of their Social Security numbers and their protected health information in particular is highly offensive due to the sensitivity of the private and personal data and severely consequential, accompanied by various harmful uses of their Private Information that identity thieves capitalize on. *See* ECF No. 908 (section II(F)).

**California Plaintiffs**

<u>Tatiana Baquero Devis</u>

153.    Plaintiff Tatiana Baquero Devis is, and at all times mentioned herein was, an individual citizen of the State of California, residing in San Francisco, California.

154.    Plaintiff Baquero Devis is a current customer of Delta Dental Defendants, and was a customer of Delta Dental Defendants at the time of the Data Breach. Historically, she received Delta Dental insurance through her employer, and presently receives Delta Dental insurance as a student benefit.

155.    Plaintiff Baquero Devis provided her Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

156.    Plaintiff Baquero Devis had the reasonable expectation and understanding that Delta Dental Defendants would take—at minimum—industry standard precautions to protect,

maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify her of any data security incidents. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known that Delta Dental Defendants would not take reasonable steps to safeguard her Private Information.

157.    Plaintiff Baquero Devis received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated January 10, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

158.    The Notice Letter informed Plaintiff that her data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[48]

159.    Since the Data Breach, including prior to being notified by the Company that her Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails she receives.

160.    Plaintiff has received alerts that her Private Information was found on the dark web since the Data Breach occurred.

161.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the fact that Plaintiff received notifications that her information was listed on the dark web and that she has experienced an uptick in phishing emails since the Data Breach.

---

[48] Ex. B.

162.     The disclosure of her "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused her to experience anxiety and increased concerns for the loss of her privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using her Private Information because it is now in unknown hands, putting her at grave risk of identity theft presently and in the future, including fraud affecting her credit.

163.     Plaintiff Baquero Devis values her privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known of their inadequate and lax data security policies and practices.

164.     Plaintiff Baquero Devis has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

165.     As a direct and proximate result of the Data Breach, Plaintiff Baquero Devis has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring her financial accounts and credit to reduce the risk of future identity theft and fraud.

166.     To date, as a result of the Data Breach, Plaintiff Baquero Devis has spent several hours researching the details and checking her credit and financial accounts for any unauthorized and suspicious activity, a practice that Plaintiff Baquero Devis will need to continue indefinitely to protect against and/or remedy fraud and identity theft.

167.    Had the Company not delayed in notifying her about the Data Breach, she could have taken precautions earlier on to protect her identity and mitigate the harms of the Data Breach.

168.    As a result of the Data Breach, Plaintiff Baquero Devis anticipates spending considerable money and additional time on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. She has faced and continues to face a risk of fraud and identity theft presently that will last for her lifetime.

169.    Plaintiff Baquero Devis suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

170.    Had Plaintiff Baquero Devis been informed that Delta Dental Defendants had insufficient data security measures to protect her Private Information, she would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

171.    Plaintiff Baquero Devis relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect her Private Information and privacy rights.

172.    Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff Baquero Devis has already suffered injury in the form of damages and diminution in the value of her Private Information— a form of intangible property that she entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

Deanna Duarte

173.    Plaintiff Deanna Duarte is, and at all times mentioned herein was, an individual citizen of the State of California, residing in Sacramento, California.

174.    Plaintiff is a current customer of Delta Dental Defendants, and was a customer at the time of the Data Breach. Plaintiff receives Delta Dental insurance through her employer.

175.    Plaintiff Duarte provided her Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

176.    Plaintiff Duarte had the reasonable expectation and understanding that Delta Dental Defendants would take—at minimum—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify her of any data security incidents. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known that Delta Dental Defendants would not take reasonable steps to safeguard her information.

177.    Plaintiff Duarte received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated January 10, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

178.    The Notice Letter informed Plaintiff that her data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[49]

179.    Since the Data Breach, including prior to being notified by the Company that her Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails she receives. On

---

[49] Ex. C.

or about February 2024, two unknown PO boxes were added to her Amazon account that she did not authorize.

180.     Plaintiff also has received alerts that her Private Information was found on the dark web since the Data Breach occurred.

181.     Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the notifications she received, increased spam, and additional harms she experienced since the Data Breach.

182.     The disclosure of her "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused her to experience anxiety and increased concerns for the loss of her privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using her Private Information because it is now in unknown hands, putting her at grave risk of identity theft presently and in the future, including fraud affecting her credit.

183.     Plaintiff Duarte values her privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known of their inadequate and lax data security policies and practices.

184.     Plaintiff Duarte has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

185.     As a direct and proximate result of the Data Breach, Plaintiff Duarte has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely

monitoring her financial accounts for suspicious activity to reduce the risk of future identity theft and fraud.

186.    To date, as a result of the Data Breach, Plaintiff Duarte has spent several hours researching the details of the Data Breach, and has even contacted Delta Dental directly to inquire about the breach, given the inadequate information provided to her.

187.    Had the Company not delayed in notifying Plaintiff about the Data Breach, she could have taken additional precautions earlier on to protect her identity and mitigate the harms of the Data Breach.

188.    Plaintiff has also spent several hours monitoring and investigating fraudulent and suspicious activity, as well as contacting banks, credit card companies, or other vendors about suspicious, fraudulent activity, all of which are practices that Plaintiff Duarte will need to continue indefinitely to protect against and/or remedy fraud and identity theft.

189.    As a result of the Data Breach, Plaintiff Duarte anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. She has faced and continues to face a risk of fraud and identity theft that will last for her lifetime.

190.    Plaintiff Duarte suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

191.    Had Plaintiff Duarte been informed that Delta Dental Defendants had insufficient data security measures to protect her Private Information, she would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

192.    Plaintiff Duarte relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect her Private Information and privacy rights.

193.    Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of her Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

<u>Donald Heller</u>

194.    Plaintiff Donald Heller is, and at all times mentioned herein was, an individual citizen of the State of California, residing in San Francisco, California.

195.    Plaintiff Heller is a current customer of Delta Dental Defendants, and was a customer of Delta Dental Defendants at the time of the Data Breach. At the time of the Data Breach, he received Delta Dental insurance through his employer as a benefit.

196.    Plaintiff Heller provided his Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

197.    Plaintiff Heller had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify him of any data security incidents. Plaintiff would not have entrusted his Private Information to Delta Dental Defendants had he known that Delta Dental Defendants would not take reasonable steps to safeguard his information.

198.    Plaintiff Heller received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated February 6, 2024 concerning the Data

Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

199.    The Notice Letter informed Plaintiff that his data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, provider name, health insurance information, and treatment cost information."[50]

200.    Since the Data Breach, including prior to being notified by the Company that his Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails he receives.

201.    As a result of the Data Breach, Plaintiff has obtained the credit monitoring service, Kroll, offered for a two-year period by the Company.

202.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the fact that Plaintiff has experienced an uptick in phishing emails since the Data Breach.

203.    The disclosure of his "health insurance information" and "treatment cost information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused him to experience anxiety and increased concerns for the loss of his privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using his Private Information because it is now in unknown hands, putting him at grave risk of identity theft presently and in the future, including fraud affecting his credit.

---

[50] Ex. D.

204.    Plaintiff Heller values his privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted his Private Information to Delta Dental Defendants had he known of their inadequate and lax data security policies and practices.

205.    Plaintiff Heller has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

206.    As a direct and proximate result of the Data Breach, Plaintiff Heller has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring his financial accounts to reduce the risk of future identity theft and fraud and engaging counsel.

207.    To date, as a result of the Data Breach, Plaintiff Heller has spent numerous hours monitoring his credit and financial accounts for any unauthorized, suspicious activity, a practice that Plaintiff Heller will need to continue indefinitely to protect against and/or remedy fraud and identity theft.

208.    Had the Company not delayed in notifying Plaintiff about the Data Breach, he could have taken additional precautions earlier on to protect his identity and mitigate the harms of the Data Breach.

209.    As a result of the Data Breach, Plaintiff Heller anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. He has faced and continues to face a risk of fraud and identity theft that will last for his lifetime.

210.    Plaintiff Heller suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

211.    Had Plaintiff Heller been informed that Delta Dental Defendants had insufficient data security measures to protect his Private Information, he would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

212.    Plaintiff Heller relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect his Private Information and privacy rights.

213.    Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of his Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

<u>Wendy Herbert</u>

214.    Plaintiff Wendy Herbert is, and at all times mentioned herein was, an individual citizen of the State of California, residing in Pleasanton, California.

215.    Plaintiff is a current customer of Delta Dental Defendants, and was a customer of Delta Dental Defendants at the time of the Data Breach. Plaintiff receives Delta Dental insurance through her employer.

216.    Plaintiff Herbert provided her Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

217.    Plaintiff Herbert had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain,

and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify her of any data security incidents. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known that Delta Dental Defendants would not take reasonable steps to safeguard her information.

218.    Plaintiff Herbert received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated December 15, 2023 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

219.    The Notice Letter informed Plaintiff that her data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, provider name, health insurance information, and treatment cost information."[51]

220.    Since the Data Breach, including prior to being notified by the Company that her Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails she receives.

221.    Plaintiff has also received alerts that her Private Information was found on the dark web since the Data Breach occurred.

222.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the notifications she received that her information was listed on the dark web and the fact that Plaintiff has experienced an uptick in phishing emails since the Data Breach, among other harms described.

---

[51] Ex. E.

223.     The disclosure of her "health insurance information" and "treatment cost information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused her to experience anxiety and increased concerns for the loss of her privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using her Private Information because it is now in unknown hands, putting her at grave risk of identity theft presently and in the future, including fraud affecting her credit.

224.     Plaintiff Herbert values her privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known of their inadequate and lax data security policies and practices.

225.     Plaintiff Herbert has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

226.     As a direct and proximate result of the Data Breach, Plaintiff Herbert has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring and reviewing her financial accounts and investigating fraudulent and suspicious activity to reduce the risk of future identity theft and fraud.

227.     To date, as a result of the Data Breach, Plaintiff Herbert has spent over fifteen hours researching the details of the Data Breach and has even contacted Delta Dental directly to inquire about the breach, given the inadequate information provided to her.

228.    Had the Company not delayed in notifying Plaintiff about the Data Breach, she could have taken additional precautions earlier on to protect her identity and mitigate the harms of the Data Breach.

229.    Plaintiff has also spent several hours monitoring her credit and financial accounts and investigating fraudulent and suspicious activity, a practice that Plaintiff Herbert will need to continue indefinitely to protect against and/or remedy fraud and identity theft.

230.    As a result of the Data Breach, Plaintiff Herbert anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. She has faced and continues to face a risk of fraud and identity theft that will last for her lifetime.

231.    Plaintiff Herbert suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

232.    Had Plaintiff Herbert been informed that Delta Dental Defendants had insufficient data security measures to protect her Private Information, she would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

233.    Plaintiff Herbert relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect her Private Information and privacy rights.

234.    Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of her Private Information— a form of intangible property that Plaintiff

entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

Ricardo Moralez

235.    Plaintiff Ricardo Moralez is, and at all times mentioned herein was, an individual citizen of the State of California, residing in Montclair, California.

236.    Plaintiff is a current customer of Delta Dental Defendants and was a customer of Delta Dental Defendants at the time of the Data Breach. Plaintiff receives Delta Dental insurance through the state of California's health insurance marketplace.

237.    Plaintiff Moralez provided his Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

238.    Plaintiff Moralez had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify him of any data security incidents. Plaintiff would not have entrusted his Private Information to Delta Dental Defendants had he known that Delta Dental Defendants would not take reasonable steps to safeguard his information.

239.    Plaintiff Moralez received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated January 12, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

240.    The Notice Letter informed Plaintiff that his data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[52]

241.    Since the Data Breach, including prior to being notified by the Company that his Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails he receives.

242.    Since the Data Breach, new accounts, loans, or lines of credit were opened in Plaintiff Moralez's name. He received emails alleging that he took loans from Speedy Cash and American Advance, however, Plaintiff Moralez never took out said loans.

243.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the received the fact that Plaintiff has experienced an uptick in phishing emails since the Data Breach and that loans were taken out in his name, among other harms described.

244.    The disclosure of his "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused him to experience anxiety and increased concerns for the loss of his privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using his Private Information because it is now in unknown hands, putting him at grave risk of identity theft presently and in the future, including fraud affecting his credit.

245.    Plaintiff Moralez values his privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted his Private Information to Delta Dental Defendants had he known of their inadequate and lax data security policies and practices.

---

[52] Ex. F.

246.    Plaintiff Moralez has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

247.    As a direct and proximate result of the Data Breach, Plaintiff Moralez has made reasonable efforts to mitigate the impact of the Data Breach, including by contacting banks, credit card companies, or other vendors about suspicious, fraudulent activity he experienced, as well as by regularly and closely monitoring his financial accounts for any unauthorized, suspicious activity, to reduce the risk of future identity theft and fraud.

248.    To date, as a result of the Data Breach, Plaintiff Moralez has expended several hours researching the details of the Data Breach as well as great time and effort trying to mitigate the harms of the Data Breach, as described, which are practices that Plaintiff Moralez will need to continue indefinitely to protect against and/or remedy fraud and identity theft.

249.    Had the Company not delayed in notifying Plaintiff about the Data Breach, he could have taken additional precautions earlier on to protect his identity and mitigate the harms of the Data Breach.

250.    As a result of the Data Breach, Plaintiff Moralez anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. He has faced and continues to face a risk of fraud and identity theft that will last for his lifetime.

251.    Plaintiff Moralez suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

252.     Had Plaintiff Moralez been informed that Delta Dental Defendants had insufficient data security measures to protect his Private Information, he would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

253.     Plaintiff Moralez relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect his Private Information and privacy rights.

254.     Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of his Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

Marisol Rhodes

255.     Plaintiff Marisol Rhodes is, and at all times mentioned herein was, an individual citizen of the State of California, residing in Burbank, California.

256.     Plaintiff is a current customer of Delta Dental Defendants, and was a customer of Delta Dental Defendants at the time of the Data Breach. Plaintiff receives Delta Dental insurance through her employer.

257.     Plaintiff Rhodes provided her Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

258.     Plaintiff Rhodes had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify her of any data security incidents. Plaintiff would not have entrusted her Private

Information to Delta Dental Defendants had she known that Delta Dental Defendants would not take reasonable steps to safeguard her information.

259.    Plaintiff Rhodes received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated January 23, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

260.    The Notice Letter informed Plaintiff that her data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, provider name, health insurance information, and treatment cost information."[53]

261.    Since the Data Breach, including prior to being notified by the Company that her Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails she receives.

262.    Plaintiff has also received alerts that her Private Information was found on the dark web since the Data Breach occurred.

263.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the notifications she received that her information was listed on the dark web, and the fact that Plaintiff has experienced an uptick in phishing emails since the Data Breach, among other harms described.

264.    The disclosure of her "health insurance information" and "treatment cost information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused her to experience anxiety and increased concerns

---

[53] Ex. G.

for the loss of her privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using her Private Information because it is now in unknown hands, putting her at grave risk of identity theft presently and ongoing, including fraud affecting her credit.

265.    Plaintiff Rhodes values her privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known of their inadequate and lax data security policies and practices.

266.    Plaintiff Rhodes has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

267.    As a direct and proximate result of the Data Breach, Plaintiff Rhodes has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring and reviewing her financial accounts and investigating fraudulent and suspicious activity to reduce the risk of future identity theft and fraud.

268.    To date, as a result of the Data Breach, Plaintiff Rhodes has expended over thirteen hours between researching the details of the Data Breach and her efforts trying to mitigate the harms of the Data Breach, as described, which are practices that Plaintiff Rhodes will need to continue indefinitely to protect against and/or remedy fraud and identity theft.

269.    Had the Company not delayed in notifying Plaintiff about the Data Breach, she could have taken additional precautions earlier on to protect her identity and mitigate the harms of the Data Breach.

270.     As a result of the Data Breach, Plaintiff Rhodes anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. She has faced and continues to face a risk of fraud and identity theft that will last for her lifetime.

271.     Plaintiff Rhodes suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

272.     Had Plaintiff Rhodes been informed that Delta Dental Defendants had insufficient data security measures to protect her Private Information, she would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

273.     Plaintiff Rhodes relied on Delta Dental's policies and promises to implement sufficient regulatory and industry compliant measures to protect her Private Information and privacy rights.

274.     Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of her Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

**Connecticut Plaintiff**

<u>Karen Boginski</u>

275.     Plaintiff Karen Boginski is, and at all times mentioned herein was, an individual citizen of the State of Connecticut, residing in Stamford, Connecticut.

276.    Plaintiff is a current customer of Delta Dental Defendants, and was a customer of Delta Dental Defendants at the time of the Data Breach. Plaintiff receives Delta Dental insurance through her spouse's employer.

277.    Plaintiff Boginski provided her Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

278.    Plaintiff Boginski had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify her of any data security incidents. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known that Delta Dental Defendants would not take reasonable steps to safeguard her information.

279.    Plaintiff Boginski received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated January 19, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of their third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

280.    The Notice Letter informed Plaintiff that her data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[54]

281.    Since the Data Breach, including prior to being notified by the Company that her Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails she receives. She

---

[54] Ex. H.

has also received alerts that her Private Information was found on the dark web since the Data Breach occurred.

282.    As a result of the Data Breach, Plaintiff Boginski purchased the credit monitoring service, BitDefender, for an annual fee of $99.

283.    As a result of the Data Breach, she will have to maintain a subscription to Deleteme.com to control the proliferation of her personal data to data brokers, for an annual fee of $129.

284.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the fact that Plaintiff has experienced an uptick in phishing emails since the Data Breach and the notifications she received that her information was listed on the dark web, among other harms described.

285.    The disclosure of her "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused her to experience anxiety and increased concerns for the loss of her privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using her Private Information because it is now in unknown hands, putting her at grave risk of identity theft presently and in the future, including fraud affecting her credit.

286.    Plaintiff Boginski values her privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known of their inadequate and lax data security policies and practices.

287.    Plaintiff Boginski has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in the Company's possession, which

includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

288.    As a direct and proximate result of the Data Breach, Plaintiff Boginski has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring her financial accounts, investigating fraudulent and suspicious activity to reduce the risk of future identity theft and fraud, as well as purchasing credit monitoring services, actively monitoring her credit, and contacting major credit bureaus to freeze her credit.

289.    To date, as a result of the Data Breach, Plaintiff Boginski has expended over fifteen hours between researching the details of the Data Breach and her efforts trying to mitigate the harms of the Data Breach, as described, which are practices that she will need to continue indefinitely to protect against and/or remedy fraud and identity theft.

290.    Had the Company not delayed in notifying Plaintiff about the Data Breach, she could have taken additional precautions earlier on to protect her identity and mitigate the harms of the Data Breach.

291.    As a result of the Data Breach, Plaintiff Boginski anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. She has faced and continues to face a risk of fraud and identity theft that will last for her lifetime.

292.    Plaintiff Boginski suffered lost time, annoyance, interference, and inconvenience, as well as money from purchasing credit monitoring services, as a result of the Data Breach.

293.    Had Plaintiff Boginski been informed that Delta Dental Defendants had insufficient data security measures to protect her Private Information, she would have taken this into account

in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

294.    Plaintiff Boginski relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect her Private Information and privacy rights.

295.    Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of her Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

<strong>Florida Plaintiffs</strong>

<u>Sarah Geiler</u>

296.    Plaintiff Sarah Geiler is, and at all times mentioned herein was, an individual citizen of the State of Florida, residing in Tampa, Florida.

297.    Plaintiff is a current customer of Delta Dental Defendants, and was a customer of Delta Dental Defendants at the time of the Data Breach.

298.    Plaintiff Geiler provided her Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

299.    Plaintiff Geiler had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify her of any data security incidents. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known that Delta Dental Defendants would not take reasonable steps to safeguard her information.

300.    Plaintiff Geiler received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated January 12, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

301.    The Notice Letter informed Plaintiff that her data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[55]

302.    Since the Data Breach, including prior to being notified by the Company that her Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails she receives.

303.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the fact that Plaintiff has experienced an uptick in phishing emails since the Data Breach, among other harms.

304.    The disclosure of her "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused her to experience anxiety and increased concerns for the loss of her privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using her Private Information because it is now in unknown hands, putting her at grave risk of identity theft presently and in the future, including fraud affecting her credit.

---

[55] Ex. I.

305.    Plaintiff Geiler values her privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known of their inadequate and lax data security policies and practices.

306.    Plaintiff Geiler has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

307.    As a direct and proximate result of the Data Breach, Plaintiff Geiler has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring her financial accounts for unauthorized, suspicious activity to reduce the risk of future identity theft and fraud.

308.    To date, as a result of the Data Breach, Plaintiff Geiler has spent several hours researching the details of the Data Breach. Plaintiff Geiler has also expended time and effort checking her credit and financial accounts for any unauthorized, suspicious activity, a practice that she will need to continue indefinitely to protect against and/or remedy fraud and identity theft.

309.    Had the Company not delayed in notifying Plaintiff about the Data Breach, she could have taken additional precautions earlier on to protect her identity and mitigate the harms of the Data Breach.

310.    As a result of the Data Breach, Plaintiff Geiler anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. She has faced and continues to face a risk of fraud and identity theft that will last for her lifetime.

311.    Plaintiff Geiler suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

312.    Had Plaintiff Geiler been informed that Delta Dental Defendants had insufficient data security measures to protect her Private Information, she would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

313.    Plaintiff Geiler relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect her Private Information and privacy rights.

314.    Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of her Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

Terrill Mendler

315.    Plaintiff Terrill Mendler is, and at all times mentioned herein was, an individual citizen of the State of Florida, residing in Jacksonville, Florida.

316.    Plaintiff was a customer of Delta Dental Defendants at the time of the Data Breach and received dental insurance through her employer. Plaintiff is now retired and is now a customer of Delta Dental Defendants through an independent plan.

317.    Plaintiff Mendler provided her Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

318.    Plaintiff Mendler had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain,

and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify her of any data security incidents. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known that Delta Dental Defendants would not take reasonable steps to safeguard her information.

319. Plaintiff Mendler received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated January 12, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

320. The Notice Letter informed Plaintiff that her data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[56]

321. Since the Data Breach, including prior to being notified by the Company that her Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails she receives.

322. Since the Data Breach, Plaintiff discovered fraudulent charges on her bank cards. For example, an unauthorized user purchased a ticket for a cruise ship, which her credit card provider denied, as well as at least one smaller purchase, which was approved. As a consequence of the fraudulent activity, her bank needed to issue her a new account number.

323. Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the fact that Plaintiff has experienced an uptick in phishing emails since the Data Breach, among other harms.

---

[56] Ex. J.

324.     The disclosure of her "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused her to experience anxiety and increased concerns for the loss of her privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using her Private Information because it is now in unknown hands, putting her at grave risk of identity theft presently and in the future, including fraud affecting her credit.

325.     Plaintiff Mendler values her privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known of their inadequate and lax data security policies and practices.

326.     Plaintiff Mendler has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

327.     As a direct and proximate result of the Data Breach, Plaintiff Mendler has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring her financial accounts for unauthorized, suspicious activity to reduce the risk of future identity theft and fraud, as well as contacting her bank to reverse the fraudulent charges.

328.     As a result of the Data Breach, Plaintiff has obtained the credit monitoring service, Kroll, offered for a two-year period by the Company.

329.     To date, as a result of the Data Breach, Plaintiff Mendler has spent several hours researching the details of the Data Breach. Plaintiff has also expended time and effort reversing the fraudulent charges and checking her credit and financial accounts for any unauthorized,

suspicious activity, a practice that Plaintiff Mendler will need to continue indefinitely to protect against and/or remedy fraud and identity theft.

330.   Had the Company not delayed in notifying Plaintiff about the Data Breach, she could have taken additional precautions earlier on to protect her identity and mitigate the harms of the Data Breach.

331.   As a result of the Data Breach, Plaintiff Mendler anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. She has faced and continues to face a risk of fraud and identity theft that will last for her lifetime.

332.   Plaintiff Mendler suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

333.   Had Plaintiff Mendler been informed that Delta Dental Defendants had insufficient data security measures to protect her Private Information, she would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

334.   Plaintiff Mendler relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect her Private Information and privacy rights.

335.   Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of her Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

**Georgia Plaintiff**

<u>Doris Cadet</u>

336.     Plaintiff Doris Cadet is, and at all times mentioned herein was, an individual citizen of the State of Georgia, residing in Riverdale, Georgia.

337.     Plaintiff is a current customer of Delta Dental Defendants, and was a customer of Delta Dental Defendants at the time of the Data Breach. Plaintiff receives Delta Dental insurance through her employer.

338.     Plaintiff Cadet provided her Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

339.     Plaintiff Cadet had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify her of any data security incidents. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known that Delta Dental Defendants would not take reasonable steps to safeguard her information.

340.     Plaintiff Cadet received a letter from "Delta Dental of California and affiliates" dated on or after December 15, 2023 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

341.    The Notice Letter informed Plaintiff that her data had been compromised. Upon information and belief, Plaintiff's affected information included, date of birth, Social Security number, health insurance information.[57]

342.    Since the Data Breach, including prior to being notified by the Company that her Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails she receives.

343.    Since the Data Breach, Plaintiff Cadet received a notice that a loan she applied to was denied, but neither she nor anyone in her family had applied for a car loan. She also experienced hard inquiries into her credit history.

344.    As a consequence of the fraudulent activity subsequent to the Breach, Plaintiff incurred $300 in costs to have her credit repaired.

345.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the fraudulent activity to her credit, the suspicious application for a car loan in her name, and the fact that Plaintiff experienced an uptick in phishing emails since the Data Breach, among other harms described.

346.    The disclosure of her "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused her to experience anxiety and increased concerns for the loss of her privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using her Private Information because it is now in unknown hands, putting her at grave risk of identity theft presently and in the future, including fraud affecting her credit.

---

[57] Ex. K.

347.    Plaintiff Cadet values her privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known of their inadequate and lax data security policies and practices.

348.    Plaintiff Cadet has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

349.    As a direct and proximate result of the Data Breach, Plaintiff Cadet has made reasonable efforts to mitigate the impact of the Data Breach, including by investigating fraudulent and suspicious activity she experienced, contacting banks, credit card companies, or other vendors about the suspicious, fraudulent activity she experienced, and by regularly and closely monitoring her financial accounts to reduce the risk of future identity theft and fraud.

350.    To date, as a result of the Data Breach, Plaintiff Cadet has spent several hours researching the details of the Data Breach and performing those mitigation tasks.

351.    Had the Company not delayed in notifying Plaintiff about the Data Breach, she could have taken additional precautions earlier on to protect her identity and mitigate the harms of the Data Breach.

352.    As a result of the Data Breach, Plaintiff Cadet anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. For example, she will need to continue indefinitely to expend time and effort checking her credit and financial accounts for any unauthorized, suspicious activity to protect against and/or remedy fraud and identity theft.

353.    She has faced and continues to face a risk of fraud and identity theft that will last for her lifetime.

354.    Plaintiff Cadet suffered lost time, annoyance, interference, and inconvenience, as well as money from needing to purchase credit repair services as a result of the Data Breach.

355.    Had Plaintiff Cadet been informed that Delta Dental Defendants had insufficient data security measures to protect her Private Information, she would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

356.    Plaintiff Cadet relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect her Private Information and privacy rights.

357.    Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of her Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

**New York Plaintiffs**

<u>Dustin Carter</u>

358.    Plaintiff Dustin Carter is, and at all times mentioned herein was, an individual citizen of the State of New York, residing in the Bronx, New York.

359.    Plaintiff is a current customer of Delta Dental Defendants, and was a customer of Delta Dental Defendants at the time of the Data Breach. Plaintiff receives Delta Dental insurance through his employer.

360.    Plaintiff Carter provided his Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

361.    Plaintiff Carter had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify him of any data security incidents. Plaintiff would not have entrusted his Private Information to Delta Dental Defendants had he known that Defendants would not take reasonable steps to safeguard his information.

362.    Plaintiff Carter received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated February 9, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

363.    The Notice Letter informed Plaintiff that his data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[58]

364.    Since the Data Breach, including prior to being notified by the Company that his Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails he receives.

365.    Since the Data Breach, on or about May 31, 2024, Plaintiff Carter discovered fraudulent charges on his credit card.

---

[58] Ex. L.

366.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the fact that Plaintiff has experienced an uptick in phishing emails since the Data Breach, among other harms described.

367.    The disclosure of his "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused him to experience anxiety and increased concerns for the loss of his privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using his Private Information because it is now in unknown hands, putting him at grave risk of identity theft presently and in the future, including fraud affecting his credit.

368.    Plaintiff Carter values his privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted his Private Information to Delta Dental Defendants had he known of their inadequate and lax data security policies and practices.

369.    Plaintiff Carter has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

370.    As a direct and proximate result of the Data Breach, Plaintiff Carter has made reasonable efforts to mitigate the impact of the Data Breach, including by investigating fraudulent and suspicious activity he experienced, contacting his bank about the unauthorized charges to get the unauthorized charges reversed, and by regularly and closely monitoring his financial accounts to reduce the risk of future identity theft and fraud.

371.    As a result of the Data Breach, Plaintiff has obtained the credit monitoring service, Kroll, offered for a two-year period by the Company.

372.    To date, as a result of the Data Breach, Plaintiff Carter has spent several hours researching the details of the Data Breach. Plaintiff has also expended time and effort checking his credit and financial accounts for any unauthorized, suspicious activity and resolving the fraudulent activity, practices that Plaintiff Carter will need to continue indefinitely to protect against and/or remedy fraud and identity theft. He also anticipates needing to spend several hours setting up his monthly payments with his new account information.

373.    Had the Company not delayed in notifying Plaintiff about the Data Breach, he could have taken additional precautions earlier on to protect his identity and mitigate the harms of the Data Breach.

374.    As a result of the Data Breach, Plaintiff Carter anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. He has faced and continues to face a risk of fraud and identity theft that will last for his lifetime.

375.    Plaintiff Carter suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

376.    Had Plaintiff Carter been informed that Delta Dental Defendants had insufficient data security measures to protect his Private Information, he would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

377.    Plaintiff Carter relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect his Private Information and privacy rights.

378.     Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of his Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

Joan Danella

379.     Plaintiff Joan Danella is, and at all times mentioned herein was, an individual citizen of the State of New York, residing in Brooklyn, New York.

380.     Plaintiff is a current customer of Delta Dental Defendants, and was a customer of Delta Dental Defendants at the time of the Data Breach. Plaintiff receives Delta Dental insurance through her employer.

381.     Plaintiff Danella provided her Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

382.     Plaintiff Danella had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify her of any data security incidents. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known that Delta Dental Defendants would not take reasonable steps to safeguard her information.

383.     Plaintiff Danella received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated February 9, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

384.    The Notice Letter informed Plaintiff that her data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[59]

385.    Since the Data Breach, including prior to being notified by the Company that her Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails she receives.

386.    Since the Data Breach, Plaintiff Danella discovered fraudulent charges on her Macy's credit card. As a consequence of the fraudulent activity, she needed to contact Macy's, file a report, and have Macy's issue her a new credit card.

387.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the fact that Plaintiff has experienced fraudulent activity on her credit card and an uptick in phishing emails since the Data Breach, among other harms described.

388.    The disclosure of her "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused her to experience anxiety and increased concerns for the loss of her privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using her Private Information because it is now in unknown hands, putting her at grave risk of identity theft presently and in the future, including fraud affecting her credit.

389.    Plaintiff Danella values her privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known of their inadequate and lax data security policies and practices.

---

[59] Ex. M.

390.    Plaintiff Danella has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

391.    As a direct and proximate result of the Data Breach, Plaintiff Danella has made reasonable efforts to mitigate the impact of the Data Breach, including by investigating fraudulent and suspicious activity she experienced, contacting banks, credit card companies, or other vendors about the suspicious, fraudulent activity she experienced, expending time to get fraudulent charges reversed, contacting major credit bureaus to freeze her credit, and by regularly and closely monitoring her financial accounts to reduce the risk of future identity theft and fraud.

392.    As a result of the Data Breach, Plaintiff has enrolled in a free monitoring service, Equifax.

393.    To date, as a result of the Data Breach, Plaintiff Danella has spent over thirteen hours researching the details of the Data Breach. Plaintiff has also expended time and effort checking her credit and financial accounts for any unauthorized, suspicious activity, a practice that Plaintiff Danella will need to continue indefinitely to protect against and/or remedy fraud and identity theft.

394.    Had the Company not delayed in notifying Plaintiff about the Data Breach, she could have taken additional precautions earlier on to protect her identity and mitigate the harms of the Data Breach.

395.    As a result of the Data Breach, Plaintiff Danella anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data

Breach. She has faced and continues to face a risk of fraud and identity theft that will last for her lifetime.

396.    Plaintiff Danella suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

397.    Had Plaintiff Danella been informed that Delta Dental Defendants had insufficient data security measures to protect her Private Information, she would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

398.    Plaintiff Danella relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect her Private Information and privacy rights.

399.    Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of her Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

<u>Michelle Gonsalves</u>

400.    Plaintiff Michelle Gonsalves is, and at all times mentioned herein was, an individual citizen of the State of New York, residing in New York, New York.

401.    Plaintiff is a current customer of Delta Dental Defendants, and was a customer of Delta Dental Defendants at the time of the Data Breach. Plaintiff receives Delta Dental insurance through her employer.

402.    Plaintiff Gonsalves provided her Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

403.    Plaintiff Gonsalves had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify her of any data security incidents. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known that Delta Dental Defendants would not take reasonable steps to safeguard her information.

404.    Plaintiff Gonsalves received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated February 9, 2024, concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

405.    The Notice Letter informed Plaintiff that her data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[60]

406.    Since the Data Breach, including prior to being notified by the Company that her Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails she receives.

407.    Plaintiff has also received alerts that her Private Information was found on the dark web since the Data Breach occurred.

408.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the notifications that her information was listed

---

[60] Ex. N.

on the dark web, and the fact that Plaintiff has experienced an uptick in phishing emails since the Data Breach, among other harms described.

409.    The disclosure of her "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused her to experience anxiety and increased concerns for the loss of her privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using her Private Information because it is now in unknown hands, putting her at grave risk of identity theft presently and in the future, including fraud affecting her credit.

410.    Plaintiff Gonsalves values her privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known of their inadequate and lax data security policies and practices.

411.    Plaintiff Gonsalves has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

412.    As a direct and proximate result of the Data Breach, Plaintiff Gonsalves has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring her financial accounts to reduce the risk of future identity theft and fraud.

413.    To date, as a result of the Data Breach, Plaintiff Gonsalves has spent over fifteen hours researching the details of the Data Breach. Plaintiff has also expended time and effort checking her credit and financial accounts for any unauthorized, suspicious activity, a practice that Plaintiff Gonsalves will need to continue indefinitely to protect against and/or remedy fraud and identity theft.

414.    Had the Company not delayed in notifying Plaintiff about the Data Breach, she could have taken additional precautions earlier on to protect her identity and mitigate the harms of the Data Breach.

415.    As a result of the Data Breach, Plaintiff Gonsalves anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. She has faced and continues to face a risk of fraud and identity theft that will last for her lifetime.

416.    Plaintiff Gonsalves suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

417.    Had Plaintiff Gonsalves been informed that Delta Dental Defendants had insufficient data security measures to protect her Private Information, she would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

418.    Plaintiff Gonsalves relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect her Private Information and privacy rights.

419.    Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of her Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

Margaret Kavanagh

420.    Plaintiff Margaret Kavanagh is, and at all times mentioned herein was, an individual citizen of the State of New York, residing in Pittsford, New York.

421.    Plaintiff is a customer of Delta Dental Defendants, and was a customer of Delta Dental Defendants at the time of the Data Breach. Plaintiff is independently enrolled in her Delta Dental insurance policy.

422.    Plaintiff Kavanagh provided her Private Information to Delta Dental Defendants as a condition of receiving dental insurance from Delta Dental Defendants.

423.    Plaintiff Kavanagh had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify her of any data security incidents. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known that Delta Dental Defendants would not take reasonable steps to safeguard her information.

424.    Plaintiff Kavanagh received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated February 8, 2024, concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

425.    The Notice Letter informed Plaintiff that her data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[61]

426.    Since the Data Breach, Plaintiff Kavanagh discovered fraudulent charges on her debit cards.

---

[61] Ex. O.

427.    Plaintiff has also received alerts that her Private Information was found on the dark web since the Data Breach occurred.

428.    As a consequence of the fraudulent activity, her bank needed to issue her a new debit card.

429.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the notifications she received that her information was listed on the dark web since the Data Breach, among other harms described.

430.    The disclosure of her "health insurance information is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused her to experience anxiety and increased concerns for the loss of her privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using her Private Information because it is now in unknown hands, putting her at grave risk of identity theft presently and in the future, including fraud affecting her credit.

431.    Plaintiff Kavanagh values her privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known of their inadequate and lax data security policies and practices.

432.    Plaintiff Kavanagh has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

433.    As a direct and proximate result of the Data Breach, Plaintiff Kavanagh has made reasonable efforts to mitigate the impact of the Data Breach, including by investigating fraudulent and suspicious activity she experienced, contacting her bank about the fraudulent activity she

experienced, expending time to get fraudulent charges reversed, and by regularly and closely monitoring her financial accounts to reduce the risk of future identity theft and fraud.

434.    To date, as a result of the Data Breach, Plaintiff has spent several hours researching the details of the Data Breach and performing those tasks to mitigate the harms. Plaintiff has also expended time and effort checking her financial accounts for any unauthorized, suspicious activity, a practice that she will need to continue indefinitely to protect against and/or remedy fraud and identity theft.

435.    Had the Company not delayed in notifying Plaintiff about the Data Breach, she could have taken additional precautions earlier on to protect her identity and mitigate the harms of the Data Breach.

436.    As a result of the Data Breach, Plaintiff Kavanagh anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. She has faced and continues to face a risk of fraud and identity theft that will last for her lifetime.

437.    Plaintiff Kavanagh suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

438.    Had Plaintiff Kavanagh been informed that Delta Dental had insufficient data security measures to protect her Private Information, she would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

439.    Plaintiff Kavanagh relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect her Private Information and privacy rights.

440.    Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of her Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants and cannot recover. Plaintiff remains at a substantial and imminent risk of future harm.

### Pennsylvania Plaintiff

<u>Marvin Dovberg</u>

441.    Plaintiff Marvin Dovberg is, and at all times mentioned herein was, an individual citizen of the State of Pennsylvania, residing in Huntingdon Valley, Pennsylvania.

442.    Plaintiff was a customer of Delta Dental Defendants at the time of the Data Breach. Plaintiff received Delta Dental insurance through his employer.

443.    Plaintiff Dovberg provided his Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

444.    Plaintiff Dovberg had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify him of any data security incidents. Plaintiff would not have entrusted his Private Information to Delta Dental Defendants had he known that Delta Dental Defendants would not take reasonable steps to safeguard his information.

445.    Plaintiff Dovberg received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated February 9, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

446.    The Notice Letter informed Plaintiff that his data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[62]

447.    Since the Data Breach, including prior to being notified by the Company that his Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails he receives.

448.    Since the Data Breach, Plaintiff Dovberg discovered fraudulent attempted and/or successful charges on his credit cards, debit cards, or bank accounts.

449.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the fraudulent charges and the fact he has experienced an uptick in phishing emails since the Data Breach, among other harms described.

450.    The disclosure of his "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused him to experience anxiety and increased concerns for the loss of his privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using his Private Information because it is now in unknown hands, putting him at grave risk of identity theft presently and in the future, including fraud affecting his credit.

451.    Plaintiff Dovberg values his privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted his Private Information to Delta Dental Defendants had he known of their inadequate and lax data security policies and practices.

452.    Plaintiff Dovberg has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in the Company's possession, which

---

[62] Ex. P.

includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

453.    As a direct and proximate result of the Data Breach, Plaintiff Dovberg has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring his financial accounts for fraudulent, suspicious, unauthorized activity to reduce the risk of future identity theft and fraud.

454.    To date, as a result of the Data Breach, Plaintiff Dovberg has spent several hours researching the details of the Data Breach. Plaintiff has also expended time and effort checking his credit and financial accounts for any unauthorized, suspicious activity, a practice that Plaintiff Dovberg will need to continue indefinitely to protect against and/or remedy fraud and identity theft.

455.    Had the Company not delayed in notifying Plaintiff about the Data Breach, he could have taken additional precautions earlier on to protect his identity and mitigate the harms of the Data Breach.

456.    As a result of the Data Breach, Plaintiff Dovberg anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. He has faced and continues to face a risk of fraud and identity theft that will last for his lifetime.

457.    Plaintiff Dovberg suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

458.    Had Plaintiff Dovberg been informed that Delta Dental Defendants had insufficient data security measures to protect his Private Information, he would have taken this into account in

deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

459.     Plaintiff Dovberg relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect his Private Information and privacy rights.

460.     Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of his Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

**South Carolina Plaintiff**

<u>Yvette Tillman</u>

461.     Plaintiff Yvette Tillman is, and at all times mentioned herein was, an individual citizen of the State of South Carolina, residing in Ladson, South Carolina.

462.     Plaintiff is a current customer of Delta Dental Defendants, and was a customer of Delta Dental Defendants at the time of the Data Breach. Plaintiff receives Delta Dental insurance through her employer.

463.     Plaintiff Tillman provided her Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

464.     Plaintiff Tillman had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify her of any data security incidents. Plaintiff would not have entrusted her Private

97

Information to Delta Dental Defendants had she known that Delta Dental Defendants would not take reasonable steps to safeguard her information.

465.    Plaintiff Tillman received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated February 9, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

466.    The Notice Letter informed Plaintiff that her data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[63]

467.    Since the Data Breach, including prior to being notified by the Company that her Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails she receives.

468.    Since the Data Breach, Plaintiff Tillman discovered several fraudulent charges on her debit cards which amounted to $1,000. Plaintiff was also alerted that someone applied for a credit card in her name and that there had been multiple hard inquiries into her credit due to fraudulent activity.

469.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the fraudulent activity and other suspicious charges to her accounts and that Plaintiff has experienced an uptick in phishing emails since the Data Breach, among other harms described.

---

[63] Ex. Q.

470.    The disclosure of her "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused her to experience anxiety and increased concerns for the loss of her privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using her Private Information because it is now in unknown hands, putting her at grave risk of identity theft presently and in the future, including fraud affecting her credit.

471.    Plaintiff Tillman values her privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known of their inadequate and lax data security policies and practices.

472.    Plaintiff Tillman has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

473.    As a direct and proximate result of the Data Breach, Plaintiff Tillman has made reasonable efforts to mitigate the impact of the Data Breach, including by investigating fraudulent and suspicious activity she experienced, contacting banks, credit card companies, or other vendors about the suspicious, fraudulent activity she experienced, expending time to get fraudulent charges reversed, and by regularly and closely monitoring her financial accounts to reduce the risk of future identity theft and fraud.

474.    To date, as a result of the Data Breach, Plaintiff Tillman has spent about 90 hours researching the details of the Data Breach and performing the aforementioned tasks to mitigate the impact of the Data Breach. Plaintiff Tillman will need to continue the practice of checking her

credit and financial accounts for any unauthorized, suspicious activity to protect against and/or remedy fraud and identity theft for the rest of her life.

475.     Had the Company not delayed in notifying Plaintiff about the Data Breach, she could have taken additional precautions earlier on to protect her identity and mitigate the harms of the Data Breach.

476.     As a result of the Data Breach, Plaintiff Tillman anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. She has faced and continues to face a risk of fraud and identity theft that will last for her lifetime.

477.     Plaintiff Tillman suffered lost time, annoyance, interference, inconvenience as well as money as a result of the Data Breach.

478.     Had Plaintiff Tillman been informed that Delta Dental Defendants had insufficient data security measures to protect her Private Information, she would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

479.     Plaintiff Tillman relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect her Private Information and privacy rights.

480.     Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of her Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

**Tennessee Plaintiff**

Hannah Polikowsky

481.    Plaintiff Hannah Polikowsky is, and at all times mentioned herein was, an individual citizen of the State of Tennessee.

482.    Plaintiff is a current customer of Delta Dental Defendants, and was a customer of Delta Dental Defendants at the time of the Data Breach. Plaintiff receives Delta Dental insurance through her employer.

483.    Plaintiff Polikowsky provided her Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

484.    Plaintiff Polikowsky had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify her of any data security incidents. Plaintiff would not have entrusted her Private Information to Delta Dental had she known that Delta Dental would not take reasonable steps to safeguard her information.

485.    Plaintiff Polikowsky received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated February 9, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

486.   The Notice Letter informed Plaintiff that her data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[64]

487.   Since the Data Breach, including prior to being notified by the Company that her Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails she receives.

488.   Since the Data Breach, Plaintiff Polikowsky discovered fraudulent charges on her bank card. Specifically, in or around January 2024, she discovered an unauthorized purchase for approximately $1,100. She and her husband investigated the fraudulent activity and confirmed the unauthorized purchaser had obtained her credit card information and sent the products to an unknown address in Georgia. Plaintiff was required to dispute the charge with her bank to get the charges reversed and obtain a new credit card.

489.   Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the received the fact that Plaintiff has experienced fraudulent activity on her credit card since and an uptick in phishing emails since the Data Breach, among other harms.

490.   The disclosure of her "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused her to experience anxiety and increased concerns for the loss of her privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using her Private Information because it is now in unknown hands, putting her at grave risk of identity theft presently and in the future, including fraud affecting her credit.

---

[64] Ex. R.

491.   Plaintiff Polikowsky values her privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known of their inadequate and lax data security policies and practices.

492.   Plaintiff Polikowsky has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

493.   As a direct and proximate result of the Data Breach, Plaintiff Polikowsky has made reasonable efforts to mitigate the impact of the Data Breach, including by investigating fraudulent and suspicious activity she experienced, contacting banks, credit card companies, or other vendors about the suspicious, fraudulent activity she experienced, expending time to get fraudulent charges reversed, and by regularly and closely monitoring her financial accounts to reduce the risk of future identity theft and fraud.

494.   As a result of the Data Breach, Plaintiff has obtained the credit monitoring service, Kroll, offered for a two-year period by the Company. Plaintiff also froze her credit at the beginning of May 2024 at all three credit bureaus (Equifax, Experian, and TransUnion). Plaintiff could not freeze her credit until her home sale closure on April 5, 2024, a purchase necessitating credit review. After said purchase, Plaintiff also signed up for Fraud Alert with the Shelby County Register of Deeds to mitigate the risk of anyone filing a fraudulent deed on her home.

495.   To date, as a result of the Data Breach, Plaintiff Polikowsky has expended over twenty-five hours between researching the details of the Data Breach and her efforts trying to mitigate the harms of the Data Breach, as described. Plaintiff will need to indefinitely continue to

monitor her credit and financial accounts for any unauthorized, suspicious activity and expend time, energy, and effort to protect against and/or remedy fraud and identity theft.

496.    Had the Company not delayed in notifying Plaintiff about the Data Breach, she could have taken additional precautions earlier on to protect her identity and mitigate the harms of the Data Breach.

497.    As a result of the Data Breach, Plaintiff Polikowsky anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. She has faced and continues to face a risk of fraud and identity theft that will last for her lifetime.

498.    Plaintiff Polikowsky suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

499.    Had Plaintiff Polikowsky been informed that Delta Dental Defendants had insufficient data security measures to protect her Private Information, she would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

500.    Plaintiff Polikowsky relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect her Private Information and privacy rights.

501.    Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of her Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

**Texas Plaintiffs**

<u>Manuel Mendoza</u>

502.    Plaintiff Manuel Mendoza is, and at all times mentioned herein was, an individual citizen of the State of Texas, residing in LaPorte, Texas.

503.    Plaintiff is the spouse of policyholder and customer of Delta Dental Defendants, Emma Mendoza. Plaintiff was a customer of Delta Dental Defendants at the time of the Data Breach. They both receive Delta Dental insurance through Ms. Mendoza's employer.

504.    Plaintiff Mendoza's Texas Dental Choice PPO Plan is provided by Delta Dental Insurance Company.

505.    Plaintiff Mendoza provided his Private Information to Delta Dental Defendants as a condition of receiving dental insurance through his wife's Delta Dental insurance plan.

506.    Plaintiff Mendoza had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify him of any data security incidents. Plaintiff would not have entrusted his Private Information to Delta Dental Defendants had he known that Delta Dental Defendants would not take reasonable steps to safeguard his information.

507.    Plaintiff Mendoza received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated January 29, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

508.    The Notice Letter informed Plaintiff that his data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[65]

509.    Since the Data Breach, including prior to being notified by the Company that his Private Information had been compromised and in the hands of cybercriminals, Plaintiff has discovered fraudulent charges on his credit cards, debit cards, or bank accounts.

510.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the fact that Plaintiff has discovered fraudulent charges on his bank cards.

511.    The disclosure of his "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused him to experience anxiety and increased concerns for the loss of his privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using his Private Information because it is now in unknown hands, putting him at grave risk of identity theft presently and in the future, including fraud affecting his credit.

512.    Plaintiff Mendoza values his privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted his Private Information to Delta Dental Defendants had he known of their inadequate and lax data security policies and practices.

513.    Plaintiff Mendoza has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

---

[65] Ex. S.

514.     As a direct and proximate result of the Data Breach, Plaintiff Mendoza has made reasonable efforts to mitigate the impact of the Data Breach, including by investigating fraudulent and suspicious activity he experienced, contacting banks, credit card companies, or other vendors about the suspicious, fraudulent activity he experienced, expending time to get fraudulent charges reversed, and by regularly and closely monitoring his financial accounts to reduce the risk of future identity theft and fraud.

515.     To date, as a result of the Data Breach, Plaintiff Mendoza has spent several hours researching the details of the Data Breach and performing those mitigation tasks. Plaintiff has also expended time and effort checking his credit and financial accounts for any unauthorized, suspicious activity, a practice that Plaintiff Mendoza will need to continue indefinitely to protect against and/or remedy fraud and identity theft.

516.     Had the Company not delayed in notifying Plaintiff about the Data Breach, he could have taken additional precautions earlier on to protect his identity and mitigate the harms of the Data Breach.

517.     As a result of the Data Breach, Plaintiff Mendoza anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. He has faced and continues to face a risk of fraud and identity theft that will last for his lifetime.

518.     Plaintiff Mendoza suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

519.     Had Plaintiff Mendoza been informed that Delta Dental Defendants had insufficient data security measures to protect his Private Information, he would have taken this into account in

deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

520.    Plaintiff Mendoza relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect his Private Information and privacy rights.

521.    Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of his Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

<u>Maia Sullivan</u>

522.    Plaintiff Maia Sullivan is, and at all times mentioned herein was, an individual citizen of the State of Texas, residing in Houston, Texas.

523.    Plaintiff was a customer of Delta Dental Defendants at the time of the Data Breach. Plaintiff received Delta Dental insurance through her employer.

524.    Plaintiff Sullivan provided her Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

525.    Plaintiff Sullivan had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify her of any data security incidents. Plaintiff would not have entrusted her Private Information to Delta Dental had she known that Delta Dental would not take reasonable steps to safeguard her information.

526.     Plaintiff Sullivan received a letter from "Delta Dental of California and its affiliates" (referred to in the Notice Letter as "Company") dated January 10, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

527.     The Notice Letter informed Plaintiff that her data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, and health insurance information."[66]

528.     Plaintiff has also received alerts that her Private Information was found on the dark web since the Data Breach occurred.

529.     Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the notifications she received that her information was listed on the dark web.

530.     The disclosure of her "health insurance information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused her to experience anxiety and increased concerns for the loss of her privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using her Private Information because it is now in unknown hands, putting her at grave risk of identity theft presently and in the future, including fraud affecting her credit.

531.     Plaintiff Sullivan values her privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted her Private Information to Delta Dental Defendants had she known of their inadequate and lax data security policies and practices.

---

[66] Ex. T

532.    Plaintiff Sullivan has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

533.    As a direct and proximate result of the Data Breach, Plaintiff Sullivan has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring her financial accounts to reduce the risk of future identity theft and fraud.

534.    As a result of the Data Breach, Plaintiff has obtained the credit monitoring service, Kroll, offered for a two-year period by the Company.

535.    Had the Company not delayed in notifying Plaintiff about the Data Breach, she could have taken additional precautions earlier on to protect her identity and mitigate the harms of the Data Breach.

536.    As a result of the Data Breach, Plaintiff Sullivan anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach, including by needing to expend great time and effort checking her credit and financial accounts for any unauthorized, suspicious activity. She has faced and continues to face a risk of fraud and identity thef that will last for her lifetime, and she will need to protect against and/or remedy harms indefinitely.

537.    Plaintiff Sullivan suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

538.    Had Plaintiff Sullivan been informed that Delta Dental Defendants had insufficient data security measures to protect her Private Information, she would have taken this into account

in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

539.   Plaintiff Sullivan relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect her Private Information and privacy rights.

540.   Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of her Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

### Washington Plaintiff

<u>Conrad Lewis</u>

541.   Plaintiff Conrad Lewis is, and at all times mentioned herein was, an individual citizen of the State of Washington, residing in Seattle, Washington.

542.   Plaintiff is a former customer of Delta Dental Defendants, and was a customer of Delta Dental Defendants at the time of the Data Breach. Plaintiff previously received Delta Dental insurance through his employer.

543.   Plaintiff Lewis provided his Private Information to Delta Dental Defendants as a condition of receiving dental insurance.

544.   Plaintiff Lewis had the reasonable expectation and understanding that Delta Dental Defendants would take—*at minimum*—industry standard precautions to protect, maintain, and safeguard that highly sensitive information from unauthorized users or disclosure, and would timely notify him of any data security incidents. Plaintiff would not have entrusted his Private

Information to Delta Dental Defendants had he known that Delta Dental Defendants would not take reasonable steps to safeguard his information.

545.    Plaintiff Lewis received a letter from "Delta Dental of California and affiliates" (referred to in the Notice Letter as "Company") dated January 23, 2024 concerning the Data Breach. The letter stated that cybercriminals exploited a security vulnerability within the systems of one of the Company's third-party vendors, Progress, and that unauthorized actors accessed or acquired the data that the Company stored on its platform, including that of Plaintiff.

546.    The Notice Letter informed Plaintiff that his data had been compromised, specifically that Plaintiff's "affected information included, date of birth, Social Security number, provider name, health insurance information, and treatment cost information."[67]

547.    Since the Data Breach, including prior to being notified by the Company that his Private Information had been compromised and in the hands of cybercriminals, Plaintiff has experienced an increase in the amount of intrusive spam calls, texts, and emails he receives.

548.    Since the Data Breach, in September 2023, Plaintiff discovered fraudulent activity on his debit card with Navy Federal Credit Union. This triggered Navy Federal's fraud detection. Navy Federal Credit Union needed to issue him a new card due to the fraudulent activity.

549.    Plaintiff has also received alerts that his Private Information was found on the dark web since the Data Breach occurred.

550.    Upon information and belief, Plaintiff's unencrypted Private Information was viewed by unauthorized persons, as evidenced by the notifications that his information was listed on the dark web, and the fact that Plaintiff has experienced an uptick in phishing emails since the Data Breach, among other harms described.

---

[67] Ex. U.

551.    The disclosure of his "health insurance information" and "treatment cost information" is highly offensive because of the intensely personal nature of one's personal health and medical related information and has caused him to experience anxiety and increased concerns for the loss of his privacy and highly sensitive Private Information, as well as anxiety over the impact of cybercriminals accessing and using his Private Information because it is now in unknown hands, putting him at grave risk of identity theft presently and in the future, including fraud affecting his credit.

552.    Plaintiff Lewis values his privacy and is very careful about storing and sharing sensitive Private Information. Plaintiff would not have entrusted his Private Information to Delta Dental Defendants had he known of their inadequate and lax data security policies and practices.

553.    Plaintiff Lewis has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in the Company's possession, which includes Delta Dental Defendants' possession, as well as Progress's possession, is protected and safeguarded from future breaches.

554.    As a direct and proximate result of the Data Breach, Plaintiff Lewis has made reasonable efforts to mitigate the impact of the Data Breach, including by contacting banks, credit card companies, or other vendors about suspicious, fraudulent activity he experienced, by regularly and closely monitoring his financial accounts, investigating fraudulent and suspicious activity to reduce the risk of future identity theft and fraud, as well as, actively monitoring his credit and contacting major credit bureaus to freeze his credit.

555.    To date, as a result of the Data Breach, Plaintiff Lewis has spent an exorbitant 180 hours performing these tasks, including the time he spent researching the details of the Data Breach. Plaintiff will need to indefinitely continue to monitor his credit and financial accounts for

any unauthorized, suspicious activity and expend time, energy, and effort to protect against and/or remedy fraud and identity theft.

556.    Had the Company not delayed in notifying Plaintiff about the Data Breach, he could have taken additional precautions earlier on to protect his identity and mitigate the harms of the Data Breach.

557.    As a result of the Data Breach, Plaintiff Lewis anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. He has faced and continues to face a risk of fraud and identity theft that will last for his lifetime.

558.    Plaintiff Lewis suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach.

559.    Had Plaintiff Lewis been informed that Delta Dental Defendants had insufficient data security measures to protect his Private Information, he would have taken this into account in deciding whether to enroll in Delta Dental insurance, and, at a minimum, Plaintiff would not have paid as much for dental insurance.

560.    Plaintiff Lewis relied on Delta Dental Defendants' policies and promises to implement sufficient regulatory and industry compliant measures to protect his Private Information and privacy rights.

561.    Given the highly sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Plaintiff has already suffered injury in the form of damages and diminution in the value of his Private Information— a form of intangible property that Plaintiff entrusted to Delta Dental Defendants. Plaintiff remains at a substantial and imminent risk of future harm.

## CLASS ALLEGATIONS

562.     Plaintiffs bring this class action behalf of themselves and on behalf of the Delta Dental Nationwide Class and Progress Nationwide Class, defined below. Plaintiffs seek certification under Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and, as appropriate, (c)(4) of the following Classes:

**Delta Dental Nationwide Class**

All persons in the United States who provided their Private Information to Delta Dental Defendants and/or DDPA whose Private Information was compromised in the MOVEit Data Breach where such Private Information was obtained from or hosted by Delta Dental Defendants and/or DDPA.

**Progress Nationwide Class**
All persons in the United States whose Private Information was compromised in the MOVEit Data Breach.

563.     These definitions may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

564.     The Delta Dental Nationwide Class asserts claims against Delta Dental Defendants for: negligence (Count I); negligence *per se* (Count II); breach of implied contract (Count III); breach of implied covenant of good faith and fair dealing (Count IV); breach of confidence (Count V); unjust enrichment, in the alternative (Count VI); invasion of privacy (public disclosure of private facts) (Count VII); bailment (Count VIII); breach of third-party beneficiary contract (Count IX); breach of fiduciary duty (Count X); and for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* (Count XI).

565.     The Delta Dental Nationwide Class asserts claims against Delta Dental Plans Association ("DDPA") for: negligence (Count I); negligence *per se* (Count II); breach of implied contract (Count III); breach of implied covenant of good faith and fair dealing (Count IV); breach of confidence (Count V); unjust enrichment, in the alternative (Count VI); invasion of privacy

(public disclosure of private facts) (Count VII); bailment (Count VIII); breach of fiduciary duty (Count X); for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* (Count XI);

566.    The Progress Nationwide Class asserts claims against Progress for: negligence (Count I); negligence *per se* (Count II); breach of implied contract (Count III); unjust enrichment, in the alternative (Count VI); invasion of privacy (public disclosure of private facts) (Count VII); bailment (Count VIII); for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* (Count XI); violations of Massachusetts General Laws (Count XX).

567.    Pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (c)(4), Plaintiffs bring this action on behalf of themselves and on behalf of Delta Dental subclasses and Progress subclasses for residents of California, Connecticut, Florida, Georgia, New York, Pennsylvania, South Carolina, Tennessee, Texas, and Washington (collectively, "Delta Dental State Subclasses" and "Progress State Subclasses," or individually "Delta Dental State Subclass" or "Progress State Subclass"), defined below, and seek certification of state common law claims in the alternative to the nationwide claims, as well as statutory claims under state data breach statutes and consumer protection statutes (Counts XII-XV; XVII-XXVIII) and constitutional claims under state Constitutions (Count XVI).

### Delta Dental California Subclass

All persons residing in the state of California who provided Private Information to Delta Dental Defendants and/or DDPA whose Private Information was compromised in the MOVEit Data Breach where such Private Information was obtained from or hosted by Delta Dental Defendants and/or DDPA.

### Delta Dental Connecticut Subclass

All persons residing in the state of Connecticut who provided Private Information to Delta Dental Defendants and/or DDPA whose Private Information was compromised in the MOVEit Data Breach where such Private Information was obtained from or hosted by Delta Dental Defendants and/or DDPA.

**Delta Dental Florida Subclass**

All persons residing in the state of Florida who provided Private Information to Delta Dental Defendants and/or DDPA whose Private Information was compromised in the MOVEit Data Breach where such Private Information was obtained from or hosted by Delta Dental Defendants and/or DDPA.

**Delta Dental Georgia Subclass**

All persons residing in the state of Georgia who provided Private Information to Delta Dental Defendants and/or DDPA whose Private Information was compromised in the MOVEit Data Breach where such Private Information was obtained from or hosted by Delta Dental Defendants and/or DDPA.

**Delta Dental New York Subclass**

All persons residing in the state of New York who provided Private Information to Delta Dental Defendants and/or DDPA whose Private Information was compromised in the MOVEit Data Breach where such Private Information was obtained from or hosted by Delta Dental Defendants and/or DDPA.

**Delta Dental Pennsylvania Subclass**

All persons residing in the state of Pennsylvania who provided Private Information to Delta Dental Defendants and/or DDPA whose Private Information was compromised in the MOVEit Data Breach where such Private Information was obtained from or hosted by Delta Dental Defendants and/or DDPA.

**Delta Dental South Carolina Subclass**

All persons residing in the state of South Carolina who provided Private Information to Delta Dental Defendants and/or DDPA whose Private Information was compromised in the MOVEit Data Breach where such Private Information was obtained from or hosted by Delta Dental Defendants and/or DDPA.

**Delta Dental Tennessee Subclass**

All persons residing in the state of Tennessee who provided Private Information to Delta Dental Defendants and/or DDPA whose Private Information was compromised in the MOVEit Data Breach where such Private Information was obtained from or hosted by Delta Dental Defendants and/or DDPA.

**Delta Dental Texas Subclass**

All persons residing in the state of Texas who provided Private Information to Delta Dental Defendants and/or DDPA whose Private Information was compromised in the

MOVEit Data Breach where such Private Information was obtained from or hosted by Delta Dental Defendants and/or DDPA.

### Delta Dental Washington Subclass

All persons residing in the state of Washington who provided Private Information to Delta Dental Defendants and/or DDPA whose Private Information was compromised in the MOVEit Data Breach where such Private Information was obtained from or hosted by Delta Dental Defendants and/or DDPA.

### Progress California Subclass

All persons residing in the state of California whose Private Information was compromised in the MOVEit Data Breach.

### Progress Connecticut Subclass

All persons residing in the state of Connecticut whose Private Information was compromised in the MOVEit Data Breach.

### Progress Florida Subclass

All persons residing in the state of Florida whose Private Information was compromised in the MOVEit Data Breach.

### Progress Georgia Subclass

All persons residing in the state of Georgia whose Private Information was compromised in the MOVEit Data Breach.

### Progress New York Subclass

All persons residing in the state of New York whose Private Information was compromised in the MOVEit Data Breach.

### Progress Pennsylvania Subclass

All persons residing in the state of Pennsylvania whose Private Information was compromised in the MOVEit Data Breach.

### Progress South Carolina Subclass

All persons residing in the state of South Carolina whose Private Information was compromised in the MOVEit Data Breach.

### Progress Tennessee Subclass

All persons residing in the state of Tennessee whose Private Information was compromised in the MOVEit Data Breach.

### Progress Texas Subclass

All persons residing in the state of Texas whose Private Information was compromised in the MOVEit Data Breach.

### Progress Washington Subclass

All persons residing in the state of Washington whose Private Information was compromised in the MOVEit Data Breach.

568.    Excluded from the foregoing classes are: (1) the judges presiding over the action; (2) the Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and their current or former officers and directors; (3) persons who properly opt out; and (4) the successors or assigns of any such excluded persons.

569.    **Numerosity**: Class Members are so numerous that their individual joinder is impracticable, as the proposed Progress Nationwide Class includes at least 60 million members, and the proposed Delta Dental Nationwide Class includes at least 6,928,932 members— all of whom are geographically dispersed. State Subclasses are also so numerous that their individual joinder is impracticable, each containing hundreds of thousands of members.

570.    **Typicality**: Plaintiffs' claims are typical of Class Members' claims. Plaintiffs and all Class Members were injured through Defendants' uniform misconduct, and Plaintiffs' claims are identical to the claims of the Class Members they seek to represent.

571.    **Adequacy**: Plaintiffs' interests are aligned with those of the Class Members they seek to represent, and Plaintiffs have retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations.

Plaintiffs and their counsel intend to prosecute this action vigorously. All Class Members' interests are well-represented by Plaintiffs and undersigned counsel.

572.    **Superiority**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiffs' and other Class Members' claims. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class Members individually to effectively redress Defendants' wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

573.    **Commonality and Predominance:** The following questions common to all Class Members predominate over any potential questions affecting individual Class Members:

> A.    Whether Defendants had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiffs' and Class Members' Private Information from unauthorized access and disclosure;

> B.    Whether Defendants failed to exercise reasonable care to secure and safeguard Plaintiffs' and Class Members' Private Information;

> C.    Whether Defendants breached their duties to protect Plaintiffs' and Class Members' Private Information;

> D.    Whether Defendants violated the statutes alleged herein;

E.     Whether Plaintiffs and all other Class Members are entitled to damages and

the measure of such damages and relief.

574.    Given that Defendants engaged in a common course of conduct as to Plaintiffs and

all other Class Members, similar or identical injuries and common law violations are involved, and

common questions outweigh any potential individual questions.

**CAUSES OF ACTION**

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiffs and the Progress Nationwide Class, or, in the alternative, Progress**
**State Subclasses, against Progress; as well as on behalf of Plaintiffs and the Delta Dental**
**Nationwide Class, or, in the alternative, Delta Dental State Subclasses, against Delta Dental**
**Defendants and DDPA (herein, Delta Dental Defendants, DDPA, and Progress referred to**
**collectively as "Defendants"))**

575.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully

set forth herein, including the Plaintiffs' Omnibus Set of Additional Pleading Facts. ECF No. 908.

576.    Delta Dental Defendants require their customers to submit non-public personal

identifying information (PII) and protected health information (PHI) ("Private Information") as a

condition of becoming a customer and receiving dental insurance.

577.    Delta Dental Defendants gathered and stored the Private Information of Plaintiffs

and Class Members as part of their businesses, which affects commerce.

578.    As customers of Delta Dental Defendants, Plaintiffs and Class Members, or their

dentalcare providers, continue to send Delta Dental Defendants new PHI as they receive care, *e.g.*,

related to treatments and costs.

579.    Plaintiffs and Class Members entrusted Delta Dental Defendants with their Private

Information with the reasonable understanding that their highly personal Private Information

would be safeguarded and protected against unauthorized disclosure.

580.    As part of their business operations, Delta Dental Defendants, as governed by HIPAA agreements, shared that information with Defendants DDPA and Progress, respectively.

581.    Plaintiffs and Class Members reasonably believed they were entrusting DDPA with their Private Information as well, given that Plaintiffs could access their Private Information related to their Delta Dental insurance through their DDPA account, on the DDPA website— branded identically to the Delta Dental Defendants' respective websites. Moreover, to sign up for an account on DDPA's webpage or request information about insurance claims or coverage, Plaintiffs and Class Members were required to input their Private Information.

582.    Defendants had full knowledge of the high monetary value and sensitivity of Plaintiffs' and Class Members' Private Information and the types of harm that Plaintiffs and Class Members could and would suffer if their Private Information was wrongfully disclosed.

583.    By assuming the responsibility to collect and store this data, as well as sharing it and utilizing it to derive business value and commercial profits, Delta Dental Defendants owed a duty under common law to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Private Information and keep it from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

584.    These duties extended to Defendant DDPA, which holds itself out to the public, including to Plaintiffs and Class Members, through its website, as being responsible for "employ[ing] reasonable safeguards designed to promote the security of our systems and protect your personal information from unauthorized destruction, use, modification, or disclosure" across its 39 dental insurance membership companies, which include the Delta Dental Defendants. DDPA also utilizes their Private Information for commercial profits.

585.    Delta Dental Defendants and DDPA owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the Private Information.

586.    Delta Dental Defendants' and DDPA's duty to use reasonable care arose from several sources, including but not limited to those described below.

587.    Delta Dental holds itself out as a trusted provider of dental insurance. Delta Dental Defendants' and DDPA's duty to use reasonable security measures arose as a result of the special relationship that existed between Delta Dental Defendants, on the one hand, and Plaintiffs and Class Members, on the other hand. That special relationship arose because of Delta Dental Defendants' businesses as providers of dental insurance, which required Plaintiffs and Class Members to provide and entrust Delta Dental Defendants with their confidential Private Information to receive dental insurance.

588.    Thus, Delta Dental Defendants were in a unique and superior position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

589.    Delta Dental Defendants and DDPA owed a duty to Plaintiffs and Class Members to select a software file transfer service that employed reasonable data security measures to protect their customers' Private Information.

590.    The risk that unauthorized persons would attempt to gain access to Plaintiffs' and Class Members' Private Information and misuse it was foreseeable to all Defendants. They had a common law duty to prevent foreseeable harm to others because Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices on the part of Defendants. By collecting, receiving, storing, and using Private Information that is routinely

targeted by criminals for unauthorized access, they were obligated to act with reasonable care to protect against these foreseeable threats.

591.    Given that Progress collects, stores, and uses vast amounts of Private Information and the high market value of this data, it was inevitable that unauthorized cybercriminals would at some point try to access Progress's computer networks. Defendants knew, or should have known, the importance of exercising reasonable care in handling the Private Information entrusted to them.

592.    Delta Dental Defendants and DDPA's Privacy Policies acknowledge their duties to adequately protect the personal and medical information of Plaintiffs and Class Members in accordance with the law. Progress's Privacy Policies, as their business pertains to protected health information, acknowledge their legal obligations under HIPAA as well as their duty to protect and prevent from disclosure all other data they collect and store.

593.    Delta Dental Defendants had a duty to promptly and adequately notify Plaintiffs and Class Members about the Data Breach, but failed to do so, and breached this duty.

594.    Delta Dental Defendants had and continue to have duties to adequately disclose that Plaintiffs' and Class Members' Private Information within Delta Dental Defendants' possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was and continues to be necessary to allow Plaintiffs and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

595.    Defendants breached their duties owed to Plaintiffs and Class Members and thus were negligent. Defendant breached these duties by, among other things: (a) mismanaging their systems and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and

compromise of Private Information; (b) mishandling their data security by failing to assess the sufficiency of their safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to detect the breach at the time it began or within a reasonable time thereafter; and (f) failing to follow its own policies and practices published to its clients.

596.   Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach and harms suffered.

597.   Defendants' respective negligent conduct is ongoing, in that Plaintiffs' and Class Members' Private Information remains in Defendants' possession in an unsafe and insecure manner.

598.   Plaintiffs and Class Members are entitled to injunctive relief requiring Defendants to: (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

### COUNT II
### NEGLIGENCE *PER SE*
**(On Behalf of Plaintiffs and the Progress Nationwide Class, or, in the alternative, Progress State Subclasses, against Progress; as well as on behalf of Plaintiffs and the Delta Dental Nationwide Class, or, in the alternative, Delta Dental State Subclasses, against Delta Dental Defendants and DDPA (herein, Delta Dental Defendants, DDPA, and Progress referred to collectively as "Defendants"))**

599.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

600.   Defendants had duties arising under HIPAA, the HIPAA Privacy Rule and Security Rule, HITECH, and the FTC Act to protect Plaintiffs' and Class Members' Private Information.

601.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect sensitive consumer data, including Private Information.

602.     Various FTC publications and orders promulgated pursuant to the FTC Act also form the basis of Defendants' duty.

603.     Defendants breached their duties, pursuant to the FTC Act and other applicable standards, and thus were negligent, by failing to implement fair, reasonable, or appropriate computer systems and data security practices that complied with applicable industry standards to safeguard Plaintiffs' and Class Members' Private Information as part of its business practices.

604.     Delta Dental Defendants are "covered entities" under HIPAA, and Defendants DDPA and Progress, respectively, are "business associates."

605.     Delta Dental Defendants' duty to use reasonable security measures under HIPAA required Defendants to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l).

606.     Delta Dental Defendants owed a duty to "reasonably safeguard protected health information from any intentional or unintentional use or disclosure." 45 C.F.R. § 164.530(c)(2). Some or all of the healthcare and/or medical information that was compromised and stolen constitutes "protected health information" within the meaning of HIPAA. 42 U.S.C. § 1320d(6); 45 C.F.R. § 160.103.

607.     As business associates, DDPA and Progress also owed these legal obligations to implement administrative, technical, and physical safeguards. 42 U.S. Code § 17931 (applying security requirements to business associates and incorporating security requirements into BAAs

between business associates and covered entities); *see also* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards); 42 U.S.C. § 17902.[68]

608.   By waiting over five months to notify affected individuals, Delta Dental Defendants exacerbated the harmful effects and risks to Plaintiffs and Class Members caused by the Data Breach, in violation of 45 C.F.R. § 164.530(f).

609.   Defendants' specific negligent acts and omissions, resulting in failure to comply with HIPAA and HITECH regulations include, but are not limited to, the following: (i) failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information; (ii) failing to adequately monitor the security of their networks and systems; (iii) allowing unauthorized access to Class Members' Private Information; (iv) failing to detect in a timely manner that Class Members' Private Information had been compromised; (v) failing to remove former employees' Private Information they were no longer required to retain pursuant to regulations; and (vi) failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

610.   Defendants' violations of HIPAA, the HIPAA Privacy Rule and Security Rule, HITECH, and Section 5 of the FTC Act (and similar state statutes) independently constitute negligence *per se*.

611.   Plaintiffs and Class Members are consumers within the class of persons that HIPAA, HITECH, and Section 5 of the FTC Act were intended to protect.

---

[68] "The HITECH Act Summary;" https://perma.cc/HSQ6-4942 (last accessed June 4, 2024).

612.   The harms that have occurred are the types of harm HIPAA, HITECH, and the FTC Act were intended to guard against.

613.   The FTC has pursued enforcement actions against businesses and healthcare entities that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harms as those suffered by Plaintiffs and the Class.

614.   In addition, under various state data security and consumer protection statutes such as those outlined herein, Defendants had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' Private Information.

615.   Defendants' conduct was particularly unreasonable given the nature and amount of Private Information they obtained and stored, the high frequency of cyber-attacks that target the exact type of Private Information targeted here, and the foreseeable consequences of a data breach of that nature.

616.   Plaintiffs and Class Members were foreseeable victims of Defendants' violations of HIPAA, HITECH, and the FTC Act, and state data security and consumer protection statutes. Defendants knew or should have known that their failure to implement reasonable data security measures to protect and safeguard Plaintiffs' and Class Members' Private Information would cause damage to Plaintiffs and the Class.

617.   Plaintiffs and Class Members were foreseeable victims of Defendants' negligent acts and omissions. Defendants knew or should have known that their failure to implement reasonable data security measures to protect and safeguard Plaintiffs' and Class Members' Private Information would cause damage to Plaintiffs and the Class.

618.   Defendants violated their own policies by failing to maintain the confidentiality of Plaintiffs' and Class Members' records; by failing to provide fair, reasonable, or adequate

computer systems and data security practices to safeguard Plaintiffs' and Class Members' PHI, and ultimately disclosing Plaintiffs' and Class Members' PHI.

619.    Defendant Progress violated its Business Associate Agreements ("BAA") with each of the Delta Dental Defendants under which it agreed to protect customers, including Plaintiffs' and Class Members' PHI, and were subject to privacy and security safeguard requirements and standards established by HIPAA, HITECH, and the Omnibus Rule.

620.    Defendant DDPA violated its BAAs with each of the Delta Dental Defendants under which it agreed to protect customers, including Plaintiffs' and Class Members' PHI, and were subject to privacy and security safeguard requirements and standards established by HIPAA, HITECH, and the Omnibus Rule.

621.    But for Defendants' violations of the applicable laws and regulations, Plaintiffs' and Class Members' Private Information would not have been accessed by unauthorized parties.

622.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and Class Members have suffered and will continue to suffer injuries, including, but not limited to: (i) theft of their Private Information; (ii) costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts; (iii) costs associated with purchasing credit monitoring and identity theft protection services; (iv) lowered credit scores resulting from credit inquiries following fraudulent activities; (v) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Defendant Progress's Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts; (vi) the imminent and certainly impending injury flowing from

the increased risk of potential fraud and identity theft posed by their PII and/or PHI being placed in the hands of criminals; (vii) damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Defendants with the mutual understanding that they would safeguard Plaintiffs' and Class Members' data against theft and not allow access and misuse of their data by others; (viii) continued and certainly increased risk of exposure to hackers and thieves of their Private Information, and additional unauthorized viewing of their Private Information that was already hacked in the Data Breach; (ix) loss of their privacy and confidentiality in their Private Information; (x) the erosion of the essential and confidential relationship with their dental insurance providers, Delta Dental Defendants, which used Progress's software and exposed them to these privacy risks; (xi) loss of personal time and opportunity costs to monitor and/or remedy harms caused by theft of their Private Information; (xii); an increase in spam calls, texts, and/or emails; and (xiii) the continued and certainly increased risk to their Private Information.

623.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

624.    Finally, as a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in their continued possession.

## COUNT III
## BREACH OF IMPLIED CONTRACT

**(On Behalf of Plaintiffs and the Progress Nationwide Class, or, in the alternative, Progress State Subclasses, against Progress; as well as on behalf of Plaintiffs and the Delta Dental Nationwide Class, or, in the alternative, Delta Dental State Subclasses, against Delta Dental Defendants and DDPA (herein, Delta Dental Defendants, DDPA, and Progress referred to collectively as "Defendants"))**

625.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

626.    Delta Dental Defendants and DDPA solicited, offered, and invited Plaintiffs and Class Members to provide their Private Information as part of their regular business practices in exchange for dental insurance.

627.    Plaintiffs and the Class were required to, and did, provide their Private Information to Delta Dental Defendants in exchange for the provision of dental insurance. As alleged herein, Plaintiffs also provided their Private Information to DDPA.

628.    The mutual understanding and intent of Plaintiffs and Class Members on the one hand, and Delta Dental Defendants on the other, is demonstrated by their conduct and course of dealing. Delta Dental Defendants required Plaintiffs and Class Members to provide their Private Information as a condition of dental insurance services. Plaintiffs and Class Members accepted the offers for services and complied.

629.    All Defendants accepted Plaintiffs' and Class Members' Private Information, whether directly from them, or through their contracts with Delta Dental Defendants.

630.    Defendants relied on for their businesses, and conferred direct and indirect monetary benefits from, the Private Information provided by Plaintiffs and Class Members and thus from Plaintiffs and Class Members themselves, and had full knowledge of the benefits they conferred.

131

631.     In providing their Private Information to Delta Dental Defendants and paying Delta Dental Defendants for dental insurance and all Defendants accepting that Private Information, directly or indirectly, Plaintiffs and Class Members conferred a direct benefit on them, and an indirect benefit on Progress, and entered into implied contracts with Delta Dental Defendants by which they agreed to keep such information secure and confidential, ensure protection of the Private Information from unauthorized access or disclosure, and to timely and adequately notify Plaintiffs and the Class if their data had been breached and compromised or stolen.

632.     Upon accepting Plaintiffs' and Class Members' Private Information, Delta Dental Defendants provided Plaintiffs' and Class Members' Private Information to Progress in the course of using Progress's MOVEit software and to DDPA in their ordinary course of business as member companies of DDPA's dental insurance network.

633.     Privacy Policies and Practices of Delta Dental Defendants and DDPA assure Plaintiffs and Class Members of their shared practices to safeguard Plaintiffs' and Class Members' Private Information and of their legal obligations to do so.

634.     Plaintiffs and Class Members entered these same implied contracts with Defendant DDPA whose web platform targets new or existing customers, such as Plaintiffs and Class Members, holding itself out as part of the same brand of dental insurance providers, and inviting them to learn more about and sign up for dental insurance through one of its 39 Delta Dental Companies, which include Delta Dental Defendants, or to create an account, input Private Information, and request information about their personal insurance claims. Based on their interactions alone with DDPA, and/or their special and business relationship with Delta Dental Defendants, Plaintiffs and Class Members could reasonably (and correctly) believe that the Delta Dental Company from which they purchased dental insurance exchanged data with DDPA, and

they could also reasonably believe that DDPA and their Delta Dental insurance provider were one and the same. For these reasons, Plaintiffs and Class Members would have reasonable expectations around privacy and security of their Private Information, just as they had of Delta Dental Defendants.

635.     Defendants accepted and maintained the Private Information of Plaintiffs and the Class that they acquired either from Delta Dental Defendants or direct receipt from Plaintiffs and Class Members, and thus monetarily benefitted from Plaintiffs and Class Members providing their Private Information, and thus Plaintiffs and Class Members entered into implied contracts with Delta Dental Defendants' business associates, revenue service providers, and file transfer software providers, including Defendants DDPA and Progress.

636.     Alternatively, Plaintiffs and Class Members were the intended beneficiaries of Business Associate Agreements entered into between Delta Dental Defendants and their business associates, DDPA and Progress, which governed Progress's use, disclosure, and transfer terms.

637.     In entering into these implied contracts, Plaintiffs and Class Members reasonably believed and expected that Delta Dental Defendants' and DDPA's, and their associates', including Progress's, data security practices complied with relevant laws and regulations and were consistent with industry standards, and that they would thoroughly vet and select vendors that adequately protected Private Information.

638.     Plaintiffs and Class Members would not have entrusted their Private Information to Delta Dental Defendants or DDPA in the absence of implied contracts between them that they would keep, and require the third-party vendors they select to store, transfer, and use their Private Information in fair, secure, reasonable, and legally compliant ways.

639.    Implicit in these agreements between Plaintiffs and Class Members and Defendants were Defendants' obligations to: (a) take reasonable steps to safeguard that Private Information, including through proper vetting of third party vendors to whom Private Information is provided; (b) prevent unauthorized disclosure of the Private Information; (c) provide Plaintiffs and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information; (d) reasonably safeguard and protect the Private Information of Plaintiffs and Class Members from unauthorized disclosure or uses; and (e) retain or allow third parties to retain Private Information only under conditions that kept such information secure and confidential.

640.    Defendants breached the implied contracts they entered into with Plaintiffs and Class Members by failing to safeguard and protect their Private Information. These failures include entrusting their Private Information to a vendor that fails to safeguard Private Information; failing to delete the Private Information of Plaintiffs and Class Members from their own databases or requiring vendors to delete Plaintiffs' and Class Members' Private Information once they are no longer customers of Delta Dental Defendants and users of DDPA's platform; and failing to provide accurate notice to Plaintiffs and Class Members that their Private Information was compromised as a result of the Data Breach so that they could take prompt and adequate precautions to mitigate the risks caused by the Data Breach.

641.    Moreover, implied in these exchanges was a promise by Delta Dental Defendants and DDPA to ensure that the Private Information of Plaintiffs and Class Members was only used in connection with the agreed-upon healthcare services.

642.    Plaintiffs and Class Members therefore did not receive the benefit of their bargains, because they provided their Private Information in exchange for an implied agreement by Delta Dental Defendants to keep it safe and secure within its computer systems and network

environment; in addition to Delta Dental Defendants' and DDPA's implied agreement to keep it safe and secure in connection with sharing Plaintiffs' and Class Members' Private Information under their BAAs and providing it to third-party vendors, under distinct BAAs.

643.    Similarly, Progress also breached its implied contracts with Plaintiffs and Class Members by failing to keep their data secure, meanwhile conferring an indirect benefit from Plaintiff's and Class Members' Private Information.

644.    Defendants' conduct and lax security unfairly interfered with Plaintiffs' and Class Members' rights to receive the full benefit of their contracts.

645.    Had Delta Dental Defendants or DDPA disclosed to Plaintiffs and Class Members that they did not have security practices to secure sensitive data, including adequate policies to verify the security of their third-party vendors or business associates, Plaintiffs and Class Members would not have provided their Private Information to Delta Dental Defendants, and thus would not have entered into implied contracts with Delta Dental Defendants, DDPA, or Progress.

646.    As a direct and proximate result of Defendants' breaches, Plaintiffs and Class Members sustained damages, as alleged herein, including the loss of the benefit of the bargain and overpaying for dental insurance.

647.    Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

648.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Delta Dental Defendants to, *e.g.*, (i) strengthen their data monitoring procedures; (ii) evaluate, audit, and improve their processes for vetting third party vendors and the selection processes for vendors to which Delta Dental Defendants provide sensitive Private Information; (iii) submit to future annual

audits of those systems and monitoring procedures; and (iv) immediately provide or continue providing adequate credit monitoring to all Class Members.

**COUNT IV**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On Behalf of Plaintiffs and the Delta Dental Nationwide Class, or, in the alternative, Delta Dental State Subclasses, against Delta Dental Defendants and DDPA)**

649.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

650.    As alleged, Plaintiffs and Class Members entered into implied contracts with Delta Dental Defendants and DDPA when they provided and entrusted them with their Private Information in exchange for the provision of dental insurance. In doing so, Plaintiffs and the Class entered into implied contracts with Delta Dental Defendants and DDPA by which they agreed to safeguard and protect such information to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been breached and compromised or stolen.

651.    Privacy Policies and Practices of Delta Dental Defendants and DDPA assure Plaintiffs and Class Members of their shared practices to safeguard Plaintiffs' and Class Members' Private Information and of their legal obligations to do so under HIPAA. Defendant Progress's Privacy Policies also discuss Progress's legal obligations to protect Plaintiffs' and Class Members' personal data, including specific legal obligations with respect to HIPAA.

652.    While Delta Dental Defendants and DDPA had discretion in the specifics of how they met applicable laws and industry standards, this discretion was governed by an implied covenant of good faith and fair dealing that is inherent in every contract.

653.    Delta Dental Defendants and DDPA breached this implied covenant of good faith and fair dealing when they engaged in acts and/or omissions that are declared unfair trade practices

by the FTC, HIPAA, HITECH, and state statutes and regulations. These acts and omissions included: omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for Plaintiffs' and Class Members' Private Information; selection of and providing Private Information to a vendor that does not adequately safeguard Private Information; and failing to disclose to Plaintiffs and Class Members at the time they provided their Private Information to Delta Dental Defendants and DDPA that their security systems and those of their vendors, *e.g.*, Defendant Progress, failed to meet applicable legal and industry standards.

654.    Plaintiffs and Class Members did all or substantially all of the significant things that the contract required them to do. Likewise, all conditions required for Delta Dental Defendants' and DDPA's performance were met.

655.    Delta Dental Defendants' and DPPA's acts and omissions unfairly interfered with Plaintiffs' and Class Members' rights to receive the full benefit of their contracts.

656.    As a direct and proximate result of Delta Dental Defendants' and DDPA's above-alleged breach of implied contract, Plaintiffs and Class Members have suffered and/or will suffer harms including but not limited to: (a) actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (b) the loss of the value of their privacy and the confidentiality of the stolen Private Information; (c) the illegal sale of the compromised Private Information on the black market; (d) the ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (e) the mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; (f) the time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; (g) the expenses incurred and time spent initiating fraud alerts; (h) the resulting decrease in credit scores; (i) their lost work time;

(j) the lost value of their Private Information; (k) the lost value of access to their Private Information permitted by Delta Dental Defendants and DDPA; (l) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach; (m) the lost benefit of their bargains (price premium damages in the form of overpayment for dental insurance); and (n) nominal and general damages; and other economic and non-economic harms.

657.     Accordingly, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial, including actual, consequential, and nominal damages, along with costs and attorneys' fees incurred in this action.

**COUNT V**
**BREACH OF CONFIDENCE**
**(On Behalf of Plaintiffs and the Delta Dental Nationwide Class, or, in the alternative, Delta Dental State Subclasses, against Delta Dental Defendants and DDPA)**

658.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

659.     Plaintiffs' and Class Members' Private Information constitutes confidential and unique information. Indeed, Plaintiffs' and Class Members' Social Security numbers can be changed only with great difficulty and time spent, which still enables a threat actor or cybercriminal to exploit that information during the interim. Private medical information, once disclosed and in the hands of identity thieves, can cause irreparable harm and humiliation, and even lead to blackmail.

660.     Delta Dental Defendants and DDPA were fully aware of the confidential and sensitive nature of Plaintiffs' and Class Members' Private Information at all points in which they interacted with Plaintiffs and Class Members thus made an implied promise of confidentiality to Plaintiffs and Class Members by accepting their Private Information.

661.    The implied promise of confidentiality includes consideration beyond those pre-existing general duties owed under HIPAA or other state or federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

662.    By collecting and storing Plaintiffs' and Class Members' Private Information and using it for commercial gain, Delta Dental Defendants and DDPA undertook a duty of care to use reasonable means to secure and safeguard this Private Information to prevent disclosure and guard against its theft.

663.    As alleged herein, Delta Dental Defendants' and DDPAs' relationships with Plaintiffs and Class Members were governed by terms and expectations that Plaintiffs' and Class Members' Private Information would be collected, stored, and protected in confidence— by Delta Dental Defendants, as well as by DDPA and their vendors to which Delta Dental Defendants provide that Private Information—and would not be disclosed to unauthorized third parties.

664.    Plaintiffs and Class Members provided their respective Private Information to Delta Dental Defendants, which are all companies within the DDPA national network. DDPA entered into Business Associate Agreements with each of the Delta Dental Defendants which governs the transfer and disclosure of protected health information between the parties, including requiring DDPA to abide by the HIPAA Security Rule.

665.    Plaintiffs and Class Members may sign up for an account directly with DDPA, upon which they are required to provide their Private Information, and use its platform, for example, to request information about their insurance claims, which requires them to provide DDPA with additional personal and medical related information. DDPA then works with Plaintiffs' and Class

Members' individual Delta Dental Company, their respective Delta Dental Defendant(s), to respond.

666.    Plaintiffs and Class Members provided DDPA and Delta Dental Defendants with their Private Information with the explicit and implicit understandings that Delta Dental Defendants and DDPA would protect and not permit the Private Information to be disseminated to any unauthorized parties.

667.    Due to Delta Dental Defendants' and DDPA's failure to protect Plaintiffs' and Class Members' Private Information, or retain vendors that protect the Private Information, Plaintiffs' and Class Members' Private Information was disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and Class Members' confidence, and without their express permission.

668.    As a direct and proximate cause of Delta Dental Defendants' and DDPA's actions and/or omissions, Plaintiffs and Class Members have suffered damages as alleged herein.

669.    But for the disclosure of Plaintiffs' and Class Members' Private Information, in violation of the parties' mutual understanding of confidence including that Delta Dental Defendants and DDPA would only provide Private Information to trusted vendors that adequately safeguard the information, Plaintiffs' and Class Members' Private Information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. The Data Breach was the direct and legal cause of the theft of Plaintiffs' and Class Members' Private Information, as well as the resulting damages.

670.    The disclosure of Plaintiffs' and Class Members' Private Information, and provision of Private Information to a vendor that does not adequately secure Private Information, constitute violations of Plaintiffs' and Class Members' implicit agreements and understandings

that Delta Dental Defendants and DDPA would safeguard and protect their confidential and unique Private Information.

671.    The concrete injury and harm that Plaintiffs and Class Members suffered was the reasonably foreseeable result of Delta Dental Defendants' and DDPA's failure to ensure protection of their Private Information.

672.    As a direct and proximate result of Delta Dental Defendants' and DDPA's conduct, Plaintiffs and Class Members have suffered or will suffer concrete injury, including, but not limited to: (a) actual identity theft; (b) the loss of the opportunity to determine how and when their Private Information is used; (c) the unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing of their Private Information; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their Private Information, which remains in both Delta Dental Defendants' and DDPA's possession and is subject to further unauthorized disclosures; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, and repair the impact of the Private Information compromised as a direct and traceable result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; and (h) nominal damages.

673.    Plaintiffs and the Class seek actual and nominal damages for these harms.

## COUNT VI
## UNJUST ENRICHMENT

**(On Behalf of Plaintiffs and the Progress Nationwide Class, or, in the alternative, Progress State Subclasses, against Progress; as well as on behalf of Plaintiffs and the Delta Dental Nationwide Class, or, in the alternative, Delta Dental State Subclasses, against Delta Dental Defendants and DDPA (herein, Delta Dental Defendants, DDPA, and Progress referred to collectively as "Defendants"))**

674.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

675.    Plaintiffs bring this Count in the alternative to their breach of implied contract claim against Defendants (Count III).

676.    Plaintiffs and Class Members conferred a monetary benefit on Delta Dental Defendants in connection with obtaining dental insurance, specifically providing them with their Private Information. In exchange, Plaintiffs and Class Members should have received from Delta Dental Defendants the services or benefits that were the subject of the transaction, and should have had their Private Information protected with adequate data security.

677.    Delta Dental Defendants would be unable to engage in their regular course of business without that Private Information and they accepted the monetary benefits Plaintiffs and Class Members provided.

678.    Plaintiffs and Class Members also conferred a monetary benefit on DDPA, both directly and indirectly, and indirectly to Progress, to whom Delta Dental Defendants sent Plaintiffs' and Class Members' Private Information under the terms of Business Associate Agreements. Defendants DDPA and Progress would be unable to engage in their regular course of business without that Private Information and they accepted the monetary benefits from the provision of Plaintiffs' and Class Members' Private Information.

679.    All Defendants knew that Plaintiffs and Class Members conferred a benefit upon them and accepted and retained those benefits by accepting, retaining, and using the Private

Information entrusted to them. Defendants profited from Plaintiffs' retained data and used Plaintiffs' and Class Members' Private Information for business purposes.

680.    Acceptance of the benefit under the facts and circumstances outlined above make it inequitable for Defendants to retain that benefit without payment of the value thereof. Specifically, Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to increase their own profits at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decisions to prioritize their own profits over the requisite data security.

681.    Defendants failed to secure Plaintiffs' and Class Members' Private Information and, therefore, did not fully compensate Plaintiffs or Class Members for the value that their Private Information provided.

682.    Because Defendants failed to implement appropriate data management and security measures, under the principles of equity and good conscience, it would be unjust if Defendants were permitted to retain the monetary benefit belonging to Plaintiffs and Class Members.

683.    Defendants acquired the Private Information through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

684.    If Plaintiffs and Class Members had known that Defendants had not secured their Private Information, they would not have agreed to provide their Private Information to Defendants.

685.     Had Plaintiffs and Class Members known that Defendants did not and would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their Private Information, they would not have entrusted Defendants with their Private Information.

686.     As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered or will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to determine for themselves how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information and diminution of its value; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Private Information in their continued possession; (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; (viii) emotional distress, anxiety, and inconvenience; (ix) irreparable breach of confidence in their insurance providers; (x) loss of benefit of the bargain (price premium damages in the form of overpayment for dental insurance).

687.     As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm. It would be inequitable for the Defendants to retain the benefits without paying fair value for them.

688.     Plaintiffs and Class Members are entitled to restitution and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct, as well as return of their sensitive Private Information and/or confirmation that it is secure. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation.

689.     Plaintiffs and Class Members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT VII**
**INVASION OF PRIVACY (PUBLIC DISCLOSURE OF PRIVATE FACTS)**
**(On Behalf of Plaintiffs and the Progress Nationwide Class, or, in the alternative, Progress State Subclasses, against Progress; as well as on behalf of Plaintiffs and the Delta Dental Nationwide Class, or, in the alternative, Delta Dental State Subclasses, against Delta Dental Defendants and DDPA (herein, Delta Dental Defendants, DDPA, and Progress referred to collectively as "Defendants"))**

690.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

691.     Plaintiffs and Class Members reasonably expected that the highly personal, sensitive Private Information entrusted to Defendants, directly or indirectly, would be kept private, confidential, and secure and would not be disclosed to any unauthorized third party or for any improper purpose.

692.     Defendants unlawfully invaded the privacy rights of Plaintiffs and Class Members by:

A.   Failing to adequately secure their sensitive Private Information from disclosure to unauthorized third parties or for improper purposes;

B.   Enabling the disclosure of personal and sensitive facts and information about them in a manner highly offensive to a reasonable person; and

C.   Enabling the disclosure of their personal and sensitive Private Information without their informed, voluntary, affirmative, and clear consent.

693.   Plaintiffs' and Class Members' Private Information, such as health information and Social Security numbers that was publicized due to the Data Breach, was highly sensitive, private, confidential, and of no general public interest, and a reasonable person would consider its publication highly offensive and egregious.

694.   A reasonable person would find it highly offensive that Defendants, having collected Plaintiffs' and Class Members' sensitive Private Information, directly or indirectly, in a commercial transaction, failed to protect such Private Information from unauthorized disclosure to third parties.

695.   In failing to adequately protect Plaintiffs' and Class Members' sensitive Private Information, Defendants acted in reckless disregard of Plaintiffs' and Class Members' privacy rights. Delta Dental Defendants and DDPA knew or should have known that their ineffective security measures, including the failure to verify and validate the security practices of their vendor, Defendant Progress, and the foreseeable consequences thereof, are highly offensive to a reasonable person in Plaintiffs' and Class Members' position. Defendant Progress knew or should have known of the risks of failing to implement adequate data security practices, too, and the foreseeability and offensiveness of such disclosures.

696. Defendants violated Plaintiffs' and Class Members' right to privacy under common law.

697. Defendants' unlawful invasions of privacy damaged Plaintiffs and Class Members. As a direct and proximate result of Defendants' unlawful invasion of privacy and public disclosure of private facts, Plaintiffs and Class Members' reasonable expectations of privacy were frustrated and defeated. Plaintiffs and Class Members are at a current and ongoing risk of identity theft and sustained compensatory damages including: (a) invasion of privacy; (b) financial "out-of-pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (d) financial "out-of-pocket" costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) loss of time due to increased spam and targeted marketing emails; (g) diminution of value of their Private Information; (h) future costs of identity theft monitoring; (i) anxiety, annoyance and nuisance, and (j) the continued risk to their Private Information, which remains in Defendants' possession, and which is subject to further breaches, so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' Private Information.

698. Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach and these invasions of privacy.

699. Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendants to, *inter alia*: (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to Plaintiffs and Class Members.

147

## COUNT VIII
## BAILMENT
**(On Behalf of Plaintiffs and the Progress Nationwide Class, or, in the alternative, Progress State Subclasses, against Progress; as well as on behalf of Plaintiffs and the Delta Dental Nationwide Class, or, in the alternative, Delta Dental State Subclasses, against Delta Dental Defendants and DDPA (herein, Delta Dental Defendants, DDPA, and Progress referred to collectively as "Defendants"))**

700.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

701.   Plaintiffs and Class Members provided Private Information to Defendants, and Defendants were under a duty to keep that information private and confidential.

702.   Defendants received this information from Plaintiffs and Class Members either directly or through their dental/healthcare providers and their business associates or one of the Delta Dental companies under a Business Associate Agreement.

703.   Plaintiffs' and Class Members' Private Information is personal property, and was conveyed to Defendants for the certain purpose of keeping the information private and confidential.

704.   Plaintiffs' and Class Members' Private Information has value and is highly prized by hackers and criminals. Defendants were aware of the risks they took when accepting the Private Information for safeguarding and assumed the risk voluntarily.

705.   Once Defendants accepted Plaintiffs' and Class Members' Private Information, they were in the exclusive possession of that information, and neither Plaintiffs nor Class Members could control that information once it was within the possession, custody, and control of Defendants.

706.   Defendants did not safeguard Plaintiffs' or Class Members' Private Information when they failed to adopt and enforce adequate security safeguards to prevent the known risk of a cyberattack.

707.     Defendants' failure to safeguard Plaintiffs' and Class Members' Private Information resulted in that information being accessed or obtained by third-party cybercriminals.

708.     As a result of Defendants' failure to keep Plaintiffs' and Class Members' Private Information secure, Plaintiffs and Class Members suffered injury, for which compensation—including nominal damages and compensatory damages—are appropriate.

**COUNT IX**
**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**
**(On Behalf of Plaintiffs and the Progress Nationwide Class, or, in the alternative, Progress State Subclasses, against Progress; as well as on behalf of Plaintiffs and the Delta Dental Nationwide Class, or, in the alternative, Delta Dental State Subclasses, against Delta Dental Defendants)**

709.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

710.     Upon information and belief, Progress entered into contracts with Delta Dental Defendants to provide secure file transfer services to them, servers, and/or related equipment and services that included access to and use of the MOVEit software, data security practices, procedures, and protocols related to the MOVEit software sufficient to safeguard the Plaintiffs and Class Members' Private Information that was entrusted to Delta Dental Defendants.

711.     Upon information and belief, contracts between Progress and the Delta Dental Defendants were virtually identical and were made expressly for the benefit of Delta Dental Defendants' customers, including Plaintiffs and Class Members, as it was their Private Information that Progress agreed to receive, store, utilize, transfer, and protect through their services, so that Delta Dental Defendants could provide them dental insurance services. Thus, the benefit of collection, use, and protection of the Private Information belonging to Plaintiffs and Class Members was the direct and primary objective of the contracting parties, and Plaintiffs and Class Members were direct and express beneficiaries of such contracts.

149

712.     Delta Dental Defendants and Progress knew or should have known that if they were to breach these contracts, Plaintiffs and Class Members would be harmed.

713.     Delta Dental Defendants and Progress breached their contracts by, among other things, failing to adequately secure Plaintiffs' and Class Members' Private Information, and, as a result, Plaintiffs and Class Members were harmed.

714.     As a direct and proximate result of Delta Dental Defendants' and Progress's breach, Plaintiffs and Class Members are at a current and ongoing risk of identity theft, and have already sustained incidental and consequential damages including: (i) financial "out-of-pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (ii) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (iii) financial "out-of-pocket" costs incurred due to actual identity theft; (iv) loss of time incurred due to actual identity theft; (v) loss of time due to increased spam and targeted marketing emails; (vi) diminution of value of their Private Information; (vii) future costs of identity theft monitoring; and (viii) the continued risk to their Private Information, which remains in Delta Dental Defendants' and Progress's control, and which is subject to further breaches, so long as Delta Dental Defendants and Progress fail to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' Private Information.

715.     Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

**COUNT X**
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiffs and the Delta Dental Nationwide Class, or, in the alternative, Delta Dental State Subclasses, against Delta Dental Defendants and DDPA)**

716.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

150

717.    In light of the special relationship between Delta Dental Defendants and DDPA and Plaintiffs and Class Members, Delta Dental Defendants and DDPA became fiduciaries by undertaking a guardianship of the Private Information to act primarily for the benefits of Plaintiffs and Class Members. This duty included their obligations to (1) safeguard Plaintiffs' and Class Members' Private Information, (2) provide timely notification to Plaintiffs and Class Members of a Data Breach and disclosure, and (3) maintain complete and accurate records of what information (and where) Delta Dental Defendants and DDPA do store.

718.    Delta Dental Defendants and DDPA had a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of their relationship with their customers, in particular, to keep their Private Information secure, protected, and confidential.

719.    In order to provide Plaintiffs and Class Members dental insurance services, Delta Dental Defendants required that they provide their Private Information. This information was required to receive dental insurance through any of DDPA's 39 member companies, which transferred Plaintiffs' and Class Members' Private Information to DDPA after it was provided.

720.    Delta Dental Defendants and DDPA knowingly undertook the responsibility and duties related to the possession of Plaintiffs' and Class Members' Private Information.

721.    Delta Dental Defendants and DDPA breached their fiduciary duties owed to Plaintiffs and Class Members by failing to properly protect Plaintiffs' and Class Members' Private Information by ensuring the integrity of the systems where they collected, stored, and transmitted the data. Delta Dental Defendants and DDPA further breached their fiduciary duties owed to Plaintiffs and Class Members by failing to timely detect the Data Breach and notify and/or warn Plaintiffs and Class Members of the Data Breach.

722.    As a direct and proximate result of Delta Dental Defendants' and DDPA's breach of their fiduciary duty, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, publication, release, theft, use, and/or viewing of their Private Information, and corresponding loss of value in their Private Information, and loss of value in their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Delta Dental Defendants' and DDPA's possession and is subject to further unauthorized disclosures so long as Delta Dental Defendants and DDPA fail to undertake appropriate and adequate measures to protect the Private Information in their continued possession, including to ensure that they retain vendors who adequately protect Private Information; (vi) future costs in terms of time, effort, and money that will be expended be expended to prevent, detect, and repair the impact of the Private Information compromised as a direct and traceable result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; (vii) the diminished value of Delta Dental Defendants' services they received; and (viii) nominal damages.

723.    As a direct and proximate result of Delta Dental Defendants' and DDPA's breach of their fiduciary duty, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses. Plaintiffs and Class Members seek actual and nominal damages for these harms.

**COUNT XI**
**DECLARATORY JUDGMENT ACT**
**28 U.S.C. §§ 2201,** *et seq.*
**(On Behalf of Plaintiffs and the Progress Nationwide Class, or, in the alternative, Progress State Subclasses, against Progress; as well as on behalf of Plaintiffs and the Delta Dental Nationwide Class, or, in the alternative, Delta Dental State Subclasses, against Delta Dental Defendants and DDPA (herein, Delta Dental Defendants, DDPA, and Progress referred to collectively as "Defendants"))**

724.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

725.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

726.    Defendants owed a duty of care to Plaintiffs and Class Members, which required them to adequately monitor and safeguard Plaintiffs' and Class Members' Private Information.

727.    Defendants still possess the Private Information belonging to Plaintiffs and Class Members.

728.    Upon information and belief, Defendants' data security measures remain inadequate.

729.    Furthermore, Plaintiffs and Class Members continue to suffer injury as a result of the compromise of their Private Information and the risk remains that further compromises of their Private Information will occur in the future.

730.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

       A.    Defendants owe a legal duty to secure Plaintiffs' and Class Members' Private Information under the common law, HIPAA, the FTCA, the

California Medical Information Act, and other state and federal laws and regulations, as set forth herein;

B.     Defendants' existing data monitoring measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect individuals' Private Information; and

C.     Defendants continue to breach this legal duty by failing to employ reasonable measures to secure Plaintiffs' and Class Members' Private Information.

731.    This Court should also issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with legal and industry standards to protect members' Private Information, as described in the Prayer for Relief.

732.    If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach of Progress's systems, or the systems of Delta Dental Defendants. The risk of another such breach is real, immediate, and substantial. If another breach occurs, Plaintiffs and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable and they will be forced to bring multiple lawsuits to rectify the same conduct.

733.    The hardship to Plaintiffs and Class Members if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued. Among other things, if another massive data breach occurs at Progress, Plaintiffs and Class Members will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendants of complying with an

injunction by employing reasonable prospective data security measures is relatively minimal, and Defendants have a pre-existing legal obligation to employ such measures.

734.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach of Defendants' systems and network, thus preventing future injury to Plaintiffs and Class Members whose Private Information would be further compromised.

**COUNT XII**
**CALIFORNIA CONSUMER PRIVACY ACT ("CCPA")**
**Cal. Civ. Code §§ 1798.100, *et seq.***
**(On Behalf of Plaintiffs Baquero Devis, Duarte, Heller, Herbert, Moralez, and Rhodes and the Progress California Subclass ("California Subclass") against Progress)**

735.    The California Plaintiffs identified above ("Plaintiffs" for purposes of this Count), individually and on behalf of the California Subclass, repeat and reallege the factual allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein.

736.    The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a), creates a private cause of action for violations of the CCPA.

737.    Plaintiffs and California Subclass Members are covered "consumers" under § 1798.140(g) in that they are natural persons who are California residents.

738.    Progress is a "business" under § 1798.140(b) in that it is a corporation organized for profit or financial benefit of its shareholders or other owners, with gross revenue in excess of $25 million.

739.    The Private Information of Plaintiffs and the California Subclass at issue in this lawsuit constitutes "personal information" under § 1798.150(a) and 1798.81.5, in that the information Progress collects and which was impacted by the cybersecurity attack includes "[a]n individual's first name or first initial and the individual's last name in combination with any one or more of the following data elements, when either the name or the data elements are not

155

encrypted or redacted: (i) Social Security number. (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual. (iii) Account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account. (iv) Medical information. (v) Health insurance information." Progress collects consumers' personal information (referred to herein as "Private Information").

740.    Progress violated § 1798.150 of the CCPA by failing to prevent Plaintiffs' and California Subclass Members' nonencrypted Private Information from unauthorized access and exfiltration, theft, or disclosure as a result of Progress's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

741.    Progress had and has a duty to implement and maintain reasonable security procedures and practices to protect Plaintiffs' and California Subclass Members' Private Information. As detailed herein, Progress failed to do so.

742.    As a direct and proximate result of Progress's violation of its duty, some combination of Plaintiffs' and Class Members' names with some combination of the following: addresses, Social Security numbers, driver's license numbers or other state identification numbers, passport numbers, financial account information, tax identification numbers, individual health insurance policy numbers, and/or health information were subjected to unauthorized access and exfiltration, theft, or disclosure.

743.    As a direct and proximate result of Progress's acts, Plaintiffs and the California Subclass were injured and lost money or property, including but not limited to the loss of Plaintiffs' and the California Subclass Members' legally protected interest in the confidentiality and privacy

of their Private Information, diminution of value of their Private Information, stress, fear, and anxiety, nominal damages, and additional losses described above.

744.    § 1798.150(b) specifically provides that "notice [is not] . . . required prior to an individual consumer initiating an action solely for actual pecuniary damages." Accordingly, Plaintiffs and the California Subclass by way of this complaint seek actual pecuniary damages suffered as a result of Progress's violations described herein. Plaintiffs and California Subclass Members also seek injunctive relief pursuant to § 1798.150(a)(1). Plaintiffs have issued a notice of these alleged violations pursuant to § 1798.150(b) and intend to amend this complaint to seek statutory damages upon expiration of the 30-day cure period pursuant to § 1798.150(a)(1)(A)-(B), (a)(2), and (b).

### COUNT XIII
### CALIFORNIA CUSTOMER RECORDS ACT ("CCRA")
### Cal. Civ. Code §§ 1798.80, *et seq.*
### (On Behalf of Plaintiffs Baquero Devis, Duarte, Heller, Herbert, Moralez, and Rhodes and the Delta Dental California Subclass ("California Subclass") against Delta Dental of California ("DDCA")

745.    The California Plaintiffs identified above ("Plaintiffs" for purposes of this Count), individually and on behalf of the California Subclass, repeat and reallege the factual allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein.

746.    "[T]o ensure that personal information about California residents is protected," the California legislature enacted Cal. Civ. Code § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

747.    The Private Information of Plaintiffs and the California Subclass at issue in this lawsuit constitutes "personal information" under § 1798.80(e), hereafter "Private Information."

748.    DDCA is a business that owns, maintains, and licenses personal information within the meaning of Cal. Civ. Code §§ 1798.80(a) and 1798.81.5(b), about Plaintiffs and California Subclass Members.

749.    As alleged herein, DDCA failed to implement and maintain reasonable security procedures and practices appropriate to protect the unauthorized access, use and disclosure of Plaintiffs' and California Subclass Members' Private Information, in violation of § 1798.81.5(b).

750.    Businesses that own or license computerized data that includes Private Information are required to notify California residents when their Private Information has been acquired, "or is reasonably believed to have been[] acquired by an unauthorized person" in a data security breach "in the most expedient time possible and without unreasonable delay." Cal. Civ. Code § 1798.82(a). Among other requirements, the security breach notification must include "the types of personal information that were or are reasonably believed to have been the subject of the breach" pursuant to the model security breach form provided in Cal. Civ. Code § 1798.82(d).

751.    DDCA is a business that owns or licenses computerized data that includes personal information as defined by Cal. Civ. Code § 1798.80 and was thus subject to the disclosure requirements of Cal. Civ. Code § 1798.82.

752.    Because DDCA reasonably believed that Plaintiffs' and California Subclass Members' Private Information was acquired by unauthorized persons during the Data Breach, DDCA had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

753.     DDCA failed to fully disclose material information about the Data Breach in a timely and accurate manner, DDCA violated Cal. Civ. Code § 1798.82.

754.     By waiting over five and a half months—*at minimum*—to notify Plaintiffs and California Subclass Members that its Company data had been compromised, Plaintiffs and California Subclass Members were prevented from taking appropriate, reasonable precautions to mitigate harms caused by the Data Breach.

755.     As a direct and proximate result of DDCA's violations of the Cal. Civ. Code §§ 1798.81.5 and 1798.82, Plaintiffs and California Subclass Members suffered damages, as described above.

756.     Plaintiffs and California Subclass Members seek relief under Cal. Civ. Code § 1798.84, including actual damages and injunctive relief.

**COUNT XIV**
**CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT ("CMIA")**
**Cal. Civ. Code §§ 56, *et seq.***
**(On Behalf of Plaintiffs Baquero Devis, Duarte, Heller, Herbert, Moralez, and Rhodes and the Progress California Subclass against Progress; as well as on behalf of the Delta Dental California Subclass against Delta Dental of California ("DDCA") and DDPA (herein, Progress California Subclass and Delta Dental California Subclass referred to collectively as "California Subclass;" and DDCA, DDPA, and Progress referred to collectively as "Defendants"))**

757.     The California Plaintiffs identified above ("Plaintiffs" for purposes of this Count), individually and on behalf of the California Subclass, repeat and reallege the factual allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein.

758.     California's Confidentiality of Medical Information Act was enacted to protect, among other things, the release of confidential medical information without proper authorization. To that end, the CMIA prohibits entities from negligently disclosing or releasing any person's confidential medical information. *See* Cal. Civ. Code § 56.36.

759.     As described throughout this Complaint, Defendants negligently disclosed and released Plaintiffs' and Class Members' Private Information inasmuch as they did not implement adequate security protocols to prevent unauthorized access to Plaintiffs and California Subclass Members' Private Information, maintain an adequate electronic security system to prevent data breaches, or employ industry standard and commercially available measures to mitigate the risks of any data breach or otherwise comply with HIPAA data security requirements, including ensuring that third-party vendors have implemented adequately safe, secure, and legally compliant policies and practices.

760.     As a direct and proximate result of Defendants' conduct, respectively, Defendants negligently disclosed and released Plaintiffs' and California Subclass Members' Private Information to cybercriminals.

761.     As a direct and proximate result of this unauthorized disclosure, Plaintiffs' and California Subclass Members' unencrypted Private Information was viewed by unauthorized persons.

762.     Plaintiffs and California Subclass Members have suffered from the diminution of value of their Private Information, opportunity costs, among other economic injuries.

763.     Accordingly, Plaintiffs, on behalf of themselves and the California Subclass, seek to recover actual, nominal (including $1,000 nominal damages per disclosure under § 56.36(b)), and statutory damages (including under § 56.36(c)) where applicable, together with reasonable attorneys' fees and costs.

**COUNT XV**
**CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**(On Behalf of Plaintiffs Baquero Devis, Duarte, Heller, Herbert, Moralez, and Rhodes and**
**the Delta Dental Nationwide Class, or in the alternative, the Delta Dental California**
**Subclass against Delta Dental of California ("DDCA"); as well as on behalf of the Delta**
**Dental California Subclass against DDPA; as well as on behalf of the Progress California**
**Subclass against Progress (herein, Delta Dental Nationwide Class, Delta Dental California**
**Subclass, and Progress California Subclass referred to collectively as "Class Members" and**
**DDCA, DDPA, and Progress referred to collectively as "Defendants"))**

764.     Plaintiffs repeat and reallege the factual allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein.

765.     The servers affected by the Data Breach were controlled and managed by DDCA and held all Plaintiffs' and Class Members' Private Information.

766.     Defendants each satisfy the definition of a "person" as defined by Cal. Bus. & Prof. Code § 17201.

767.     Plaintiffs and Class Members each satisfy the definition of a "person" as defined by Cal. Bus. & Prof. Code § 17201.

768.     Cal. Bus. & Prof. Code § 17204 provides that "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition" may file suit.

769.     Defendants violated Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

770.     Defendants' "unfair" acts and practices include:

A.     Failure to implement and maintain reasonable security measures to protect Plaintiffs' and Class Members' Private Information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach, Plaintiffs' and Class Members' Private

Information being compromised, and subsequent harms caused to Plaintiffs and Class Members.

B.    Failure to identify foreseeable security risks, including in their third-party vendor, Progress, remediate identified security risks, and adequately improve security following previous cybersecurity incidents and known coding vulnerabilities in the industry;

C.    Failure to implement and maintain reasonable security measures also was contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45; California's Consumer Records Act, Cal. Civ. Code § 1798.81.5; California's Consumer Privacy Act (Cal. Civ. Code § 1798.150); HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902;

D.    Failure to implement and maintain reasonable security measures also led to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of Defendants' inadequate security practices and policies, consumers could not have reasonably avoided the harms that Defendants caused; and

E.    With respect to DDCA, engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82 disclosure requirements.

771.    DDCA engaged in "unlawful" business practices by violating multiple laws, including California's Customer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification); the FTC Act, 15 U.S.C. § 45; California common law; the California Constitution's Right to Privacy (Art I, § 1); HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902.

772.    DDPA engaged in "unlawful" business practices by violating multiple laws, including the FTC Act, 15 U.S.C. § 45; California common law; the California Constitution's Right to Privacy (Art I, § 1); HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902.

773.    Progress engaged in "unlawful" business practices by violating multiple laws, including the FTC Act, 15 U.S.C. § 45; California common law; the California Constitution's Right to Privacy (Art I, § 1); California's Consumer Privacy Act (Cal. Civ. Code § 1798.150); HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902.

774.    Defendants' unlawful, unfair, and deceptive acts and practices include:

A.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Class Members' Private Information, which was a direct and proximate cause of the Data Breach, Plaintiffs' and Class Members' Private Information being compromised, and subsequent harms caused to Plaintiffs and Class Members;

B.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach, unauthorized disclosure of Plaintiffs' and Class Members' Private Information, and subsequent harms;

C.      Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class Members' Private Information, including duties imposed by the FTC Act, 15 U. S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80 et seq., California's Consumer Privacy Act, Cal. Civ. Code § 1798.150, HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902, which was a direct and proximate cause of the Data Breach, Plaintiffs' and Class Members' Private Information being compromised, and subsequent harms caused to Plaintiffs and Class Members;

D.      Misrepresenting that they would protect the privacy and confidentiality of Plaintiffs' and Class Members' Private Information, including by implementing and maintaining reasonable security measures;

E.      Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80, et seq., California's Consumer Privacy Act, Cal. Civ. Code § 1798.150; HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902;

F.      Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiffs' and Class Members' Private Information; and

G.      Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and

privacy of Plaintiffs' and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80, et seq., California's Consumer Privacy Act, Cal. Civ. Code § 1798.150, HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902.

775.    DDCA's unfair and unlawful acts, e.g., failing to implement adequate security practices, harmed Plaintiffs and the Delta Dental Nationwide Class.

776.    DDCA's and DDPAs' representations and omissions were material because they were likely to deceive reasonable consumers, including the Delta Dental California Subclass, about the adequacy of Defendants' respective data security policies and practices and ability to protect the confidentiality of consumers' Private Information.

777.    Had DDCA and DDPA disclosed to consumers that they were not complying with industry standards or regulations or that their data systems were not secure and, thus, were vulnerable to attack, they would have been unable to continue in business and they would have been forced to adopt reasonable data security measures and comply with the law.

778.    Accordingly, Plaintiffs and Class Members acted reasonably in relying on DDCA's and DDPA's misrepresentations and omissions, the truth of which they could not have discovered.

779.    Defendants were entrusted, either directly or indirectly, with sensitive and valuable Private Information regarding millions of consumers, including that of Plaintiffs and Class Members. Defendants accepted the critical responsibility of protecting the data but kept the inadequate state of their security controls secret from the public.

780.    As a direct and proximate result of Defendants' unfair, unlawful, and/or fraudulent acts and practices, Plaintiffs and Class Members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for DDCA's services; loss of the value of access to their Private Information; and the value of identity and credit protection and repair services made necessary by the Data Breach.

781. Defendants' violations were, and are, willful, deceptive, unfair, and unconscionable.

782. Plaintiffs and Class Members have lost money and property as a result of Defendants' conduct in violation of the UCL, as stated herein and above.

783. By deceptively, unfairly, and unlawfully storing, collecting, and disclosing their Private Information, Defendants have taken money or property from Plaintiffs and Class Members. Defendants acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiffs' and Class Members' rights.

784. Defendants were aware that the healthcare industry was a frequent target of sophisticated cyberattacks due to the high market value of Private Information and on notice of the risks posed to consumers' Private Information that they collected, stored, used, and transferred.

785. DDCA and DDPA were on notice that their security and privacy policies and practices were wholly inadequate, including that of ensuring their vendors were compliant with industry standards and regulations, because of previous data breaches against Delta Dental Companies within the DDPA national network that implement the same data security policies and practices.

786.     Progress knew or should have known that its data security was insufficient to guard against those attacks, particularly, given the size of its database and the sensitivity of the Private Information therein.

787.     Plaintiffs and Class Members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices or use of their Private Information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief, including public injunctive relief.

**COUNT XVI**
**CALIFORNIA CONSTITUTION'S RIGHT TO PRIVACY**
**Cal. Const., Art. I, § I**
**(On Behalf of Plaintiffs Baquero Devis, Duarte, Heller, Herbert, Moralez, and Rhodes and the Progress California Subclass against Progress; as well as on behalf of the Delta Dental California Subclass against Delta Dental of California ("DDCA") and DDPA (herein, Progress California Subclass and Delta Dental California Subclass referred to collectively as "California Subclass;" and DDCA, DDPA, and Progress referred to collectively as "Defendants"))**

788.     The California Plaintiffs identified above ("Plaintiffs" for purposes of this Count), individually and on behalf of the California Subclass, repeat and reallege the factual allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein.

789.     Art. I, § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Art. I, § 1, Cal. Const.

790.     The right to privacy in California's Constitution creates a private right of action against private and government entities.

791.     To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and

167

(3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

792.   Defendants violated Plaintiffs' and California Subclass Members' constitutional right to privacy by collecting, storing, and disclosing, or preventing from unauthorized disclosure, their personal identifying information and protected health information, which includes in which they had a legally protected privacy interest, and for which they had a reasonable expectation of privacy. Disclosure of their Private Information was highly offensive given the highly sensitive nature of the data. Disclosure of their private medical information in particular could cause humiliation to Plaintiffs and Class Members. Accordingly, disclosure of Plaintiffs' and Class Members' Private Information is an egregious violation of social norms.

793.   Defendants intruded upon Plaintiffs' and California Subclass Members' legally protected privacy interests, including interests in precluding the dissemination or misuse of their confidential Private Information.

794.   Plaintiffs and California Subclass Members had a reasonable expectation of privacy in that: (i) their invasion of privacy occurred as a result of Defendants' lax and inadequate security practices with respect to securely collecting, storing, and using data, as well as preventing the unauthorized disclosure of consumers' Private Information; (ii) Plaintiffs and California Subclass Members did not consent or otherwise authorize Defendants to disclose their Private Information to parties responsible for the cyberattack; and (iii) Plaintiffs and California Subclass Members could not reasonably expect Defendants would commit acts in violation of laws protecting their privacy.

795.     As a result of Defendants' actions, Plaintiffs and California Subclass Members have been damaged as a direct and proximate result of Defendants' invasion of their privacy and are entitled to just compensation.

796.     Plaintiffs and Class Members suffered actual and concrete injury as a result of Defendants' violations of their privacy interests. Plaintiffs and Class Members are entitled to appropriate relief, including damages to compensate them for the harms to their privacy interests, loss of valuable rights and protections, heightened stress, fear, anxiety, and risk of future invasions of privacy, and the mental and emotional distress and harm to human dignity interests caused by Defendants' invasions.

797.     Plaintiffs and California Subclass Members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests as well as disgorgement of profits made by Defendants as a result of their intrusions upon Plaintiffs' and California Subclass Members' privacy.

**COUNT XVII**
**CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUTPA")**
**Conn. Gen. Stat. § 42-110B**
**(On Behalf of Plaintiff Boginski and the Progress Connecticut Subclass against Progress; as well as on behalf of the Delta Dental Connecticut Subclass against Delta Dental of New Jersey ("DDNJ") and DDPA (herein, Progress Connecticut Subclass and Delta Dental Connecticut Subclass referred to collectively as "Connecticut Subclass" or "Subclass;" and DDNJ, DDPA, and Progress referred to collectively as "Defendants"))**

798.     The Connecticut Plaintiff identified above ("Plaintiff" for purposes of this Count), individually and on behalf of the Connecticut Subclass, repeats and realleges the factual allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein.

799.     Defendants, Plaintiff, and Connecticut Subclass Members are "persons" within the meaning of Conn. Gen. Stat. § 42- 110a(3).

800.    The Connecticut Unfair Trade Practices provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

801.    DDNJ and DDPA advertised, offered, sold, or distributed services in Connecticut and engaged in "trade" or "commerce" directly or indirectly affecting persons in Connecticut. Conn. Gen. Stat. § 42-110a(4).

802.    Progress advertised, offered, sold, or distributed "property" in Connecticut and engaged in trade or commerce directly or indirectly affecting persons in Connecticut. Conn. Gen. Stat. § 42-110a(4).

803.    CUTPA provides that "[a]ny person who suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages." Conn. Gen. Stat. § 42-110g(a).

804.    Plaintiff and Connecticut Subclass Members have a private right of action under Conn. Gen. Stat. § 42-110g(a).

805.    Defendants engaged in unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b(a) by, among other things:

> A.    Failing to implement and maintain reasonable security measures to protect Plaintiff's and Connecticut Subclass Members' Private Information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach, Plaintiff's and Subclass Members' Private Information being compromised, and subsequent harms caused to Plaintiff and Subclass;

B.    Failing to identify foreseeable security risks, remediate identified security risks, and sufficiently improve security following previous cybersecurity incidents, as alleged herein. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and Connecticut Subclass Members, whose Private Information has been compromised;

C.    Misrepresenting, omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections it had in place to protect the Private Information of Plaintiff and the Connecticut Subclass.

806.    Defendants' failure to implement and maintain reasonable security measures also was contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45. Similarly, policies of the importance of protecting individuals' PHI are reflected in HIPAA, 45 C.F.R. § 164; HITECH Act, 42 U.S.C. § 17902; and Conn. Gen. Stat. § 36A-701B.

807.    CUTPA provides that in its interpretation and application, the courts "shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 USC 45(a)(1)), as from time to time amended." Conn. Gen. Stat. § 42-110b(b). As discussed, *supra*, the FTC treats the failure to employ reasonable data security safeguards as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

808.    Defendants' failure to adequately safeguard Plaintiff and Subclass Members' Private Information, constituting an unfair act under Gen. Stat. § 42-110b, was immoral, unethical, oppressive, and unscrupulous.

809.    Defendants were aware that the healthcare industry was a frequent target of sophisticated cyberattacks. Progress knew or should have known that its data security was insufficient to guard against those attacks, particularly, given the size of its database and the sensitivity of the Private Information therein.

810.    DDNJ and DDPA knew or should have known that their data security policies and practices, including ensuring the integrity and security of their vendors' security practices, were deficient, inadequate, and did not satisfy industry or regulatory standards for the purposes of protecting consumers' Private Information, thus leaving their customers' Private Information vulnerable to attack.

811.    Progress knew or should have known that its data security practices were deficient, inadequate, and did not satisfy industry or regulatory standards for the purposes of protecting consumers' Private Information. Progress knew or should have known that its data security was insufficient to guard against those attacks, particularly, given the size of its database and the sensitivity of the Private Information therein.

812.    Defendants should have taken adequate measures to protect the data. Defendants' above-described conduct was negligent, knowing and willful, and/or wanton and reckless.

813.    Additionally, DDNJ's and DDPA's misrepresentations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of their data security policies and practices and ability to protect the confidentiality of consumers' Private Information and thus were immoral, unethical, oppressive, and unscrupulous.

814.    DDNJ's and DDPA's acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

815.     As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and the Connecticut Subclass Members suffered ascertainable losses, including the loss of their legally protected interest in the confidentiality and privacy of their Private Information, diminution in value of their Private Information, loss of time and opportunity costs, among others alleged herein.

816.     Additionally, as alleged, *infra*, DDNJ's and DDPA's actions in violation of the CUTPA include, but are not limited to their failure to disclose the Data Breach in a timely and accurate manner as required by C.G.S.A. § 36a-701b(b) and (c).

817.     Specifically, DDNJ and DDPA unreasonably delayed issuing their first public notice to Plaintiff and Connecticut Subclass Members by issuing it over five months after allegedly discovering the Data Breach that affected their company data, while also failing to accurately disclose information accurately, by vaguely referring to the incident in the delayed notice.

818.     DDNJ's and DDPA's failure to disclose the Data Breach in a timely and accurate manner was misleading to Plaintiff and the Connecticut Subclass as they reasonably believed their Private Information and other private and confidential information was secured by Delta Dental Defendants and DDPA due to the sensitive nature of the data and special relationship they held, and promises of data security and privacy contained in multiple privacy policies and documents, among other reasons.

819.     DDNJ's and DDPA's failure to disclose was material since it affected Plaintiff and Connecticut Subclass Members' decisions, including but not limited to:

A.     whether to continue to provide Private Information or other private and confidential information to DDNJ or DDPA;

173

B.      whether to pay for services to attempt to secure Private Information compromised by the data breach;

C.      whether to seek the advice of counsel and/or seek legal representation; and

D.      whether to continue to use DDPA or DDNJ's services.

820.    DDNJ's and DDPA's failure to disclose in a timely and accurate manner was immoral, unethical, oppressive, or unscrupulous since it deprived Plaintiff and Connecticut Subclass Members of important knowledge about their compromised Private Information and delayed any ability they had to try and secure their Private Information and other private and confidential information.

821.    Furthermore, DDNJ's and DDPA's failure to disclose in a timely and accurate manner has caused substantial injury to Plaintiff and Connecticut Subclass Members since they were deprived of the knowledge their Private Information was compromised, and lost a substantial amount of time in which they could have acted to secure their Private Information in avoidance of the imminent, impending threats of identity theft, fraud, scams; loss of value of their stolen Private Information; illegal sales of the compromised Private Information on the black market; other misuses of their Private Information; monetary loss and economic harm; the need to pay for mitigation expenses and spend time spent monitoring credit; identity theft insurance costs; credit freezes/unfreezes, time spent initiating fraud alerts and contacting third parties; decreased credit scores; lost work time; mental anguish; and other injuries due to the Data Breach.

822.    DDNJ's and DDPA's failure to disclose the Data Breach in a timely and accurate fashion as described above constitutes an unfair or deceptive act or practice in violation of CUTPA, C.G.S.A. § 42-110b.

823.     As a result of DDNJ's and DDPA's failure to disclose the Data Breach in a timely and accurate fashion, Plaintiff and Connecticut Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages including but not limited to fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent and impending threat of fraud and identity theft, loss of value of their Private Information; overpayment for DDNJ's services (which operates and administers dental insurance in Connecticut and New Jersey); loss of the value of access to their Private Information; and the value of identity and credit protection and repair services made necessary by the Data Breach.

824.     Plaintiff and the Connecticut Subclass seek relief under Conn. Gen. Stat. § 42-110g, including actual damages, punitive damages, injunctive relief, and attorneys' fees, expenses, and costs.

### COUNT XVIII
### BREACH OF SECURITY REGARDING COMPUTERIZED DATA
### Conn. Gen. Stat. § 36A-701B
**(On Behalf of Plaintiff Boginski and the Delta Dental Connecticut Subclass ("Connecticut Subclass") against Delta Dental of New Jersey ("DDNJ"), Delta Dental of California ("DDCA"), and DDPA)**

825.     The Connecticut Plaintiff identified above ("Plaintiff" for purposes of this Count), individually and on behalf of the Connecticut Subclass, repeats and realleges the factual allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein.

826.     § 36a-701b(b)(1) provides that "[a]ny person who owns, licenses or maintains computerized data that includes personal information, shall provide notice of any breach of security following the discovery of the breach to any resident of this state whose personal information was breached or is reasonably believed to have been breached."

827.    DDNJ, DDCA, and DDPA own, license, and maintain computerized data including Private Information of Plaintiff and Connecticut Subclass. Conn. Gen. Stat. § 36a-701b(b).

828.    Plaintiff's and Connecticut Subclass Members' Private Information includes "Personal information" as covered under Conn. Gen. Stat. § 36a-701b(a)(2).

829.    DDNJ, DDCA, and DDPA are required to accurately notify Plaintiff and Connecticut Subclass Members if they become aware of any breach of their data security systems, such as this Data Breach, in the most expedient time possible and without unreasonable delay, not to exceed sixty days after the discovery of the breach pursuant to Conn. Gen. Stat. § 36a-701b(b).

830.    Since DDNJ, DDCA, and DDPA discovered a breach of their security system, they had an obligation to disclose the Data Breach in a timely and accurate fashion in accordance with Conn. Gen. Stat. §§ 36a-701b(b)(1) and (2).

831.    DDNJ, DDCA, and DDPA unreasonably delayed issuing their first public notice to Plaintiff and Connecticut Subclass Members by issuing it over a month after allegedly discovering the Data Breach.

832.    DDNJ, DDCA, and DDPA did not accurately disclose the Data Breach since they used vague language to describe it. The notice provided that "On June 1, 2023, the [Delta Dental of California and its affiliates] learned unauthorized actors exploited a vulnerability affecting the MOVEit file transfer software application[,]" used by DDNJ, DDCA, and the other Delta Dental companies in the DDPA network.

833.    DDNJ, DDCA, and DDPA failed to disclose the Data Breach in an accurate and timely manner, thereby failing to comply with C.G.S.A. §§ 36a-701b(b).

834.    DDNJ's, DDCA's, and DDPA's failure to comply is an unfair trade practice under the Connecticut Unfair Trade Practices Act, C.G.S.A. §§ 42-110a, *et seq*., as alleged herein.

835.     As a direct and proximate result of DDNJ's, DDCA's, and DDPA's violations of Conn. Gen. Stat. §§ 36a- 701b(b), Plaintiff and Connecticut Subclass Members suffered damages, as described herein, including but not limited to loss of time to act in response to the Data Breach to secure their Private Information in avoidance of: the imminent, impending threats of identity theft crimes, fraud, scams; loss of value of privacy and confidentiality of the stolen Private Information; illegal sales of the compromised Private Information on the black market; other misuses of their Private Information; monetary loss and economic harm, including overpayment of Delta Dental of New Jersey (which operates and administers dental plans in Connecticut) services; the need to pay for mitigation expenses and spend time spent monitoring credit; identity theft insurance costs; credit freezes/unfreezes, time spent initiating fraud alerts and contacting third parties; decreased credit scores; lost work time; mental anguish and other injuries due to the Data Breach.

836.     Based on the harm Plaintiff and Connecticut Subclass Members suffered as a result of DDNJ's, DDCA's, and DDPA's violations of Conn. Gen. Stat. §§ 36a-701b(b), Plaintiff and Connecticut Subclass Members seek actual damages and equitable relief pursuant to Conn. Gen. Stat. § 42-110g.

## COUNT XIX
### GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT ("GUDTPA")
### Ga. Code Ann. §§ 10-1-370, *et seq*.
### (On Behalf of Plaintiff Cadet and the Delta Dental Georgia Subclass ("Georgia Subclass" or "Subclass") against Delta Dental Insurance Company ("DDIC") and DDPA)

837.     The Georgia Plaintiff identified above ("Plaintiff" for purposes of this Count), individually and on behalf of the Georgia Subclass, repeats and realleges the factual allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein.

838.     DDIC, DDPA, Plaintiff, and Georgia Subclass Members are "persons" within the meaning of Ga. Code Ann. § 10-1-371(5).

839.     DDIC and DDPA engaged in deceptive trade practices in the conduct of their businesses, in violation of Ga. Code Ann. § 10-1-372(a), including:

    A.    Representing that goods or services have characteristics that they do not have;

    B.    Representing that goods or services are of a particular standard, quality, or grade if they are of another;

    C.    Advertising goods or services with the intent not to sell them as advertised;

    D.    Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

840.     DDIC's and DDPA's deceptive acts and practices include:

    A.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach, their Private Information being compromised in the Data Breach and subsequent harms;

    B.    Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach, their Private Information being compromised in the Data Breach and subsequent harms;

    C.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902, which was

a direct and proximate cause of the Data Breach, their Private Information being compromised in the Data Breach and subsequent harms;

D.   Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

E.   Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; and HIPAA, 45 C.F.R. § 164;

F.   Omitting, suppressing, and concealing the material fact that they did not properly secure Plaintiff's and Subclass Members' Private Information; and

G.   Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902.

841.   DDIC's and DDPA's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of their data security policies and practices and ability to protect the confidentiality of consumers' Private Information.

842.   In the course of their business, DDIC and DDPA engaged in activities with a tendency or capacity to deceive.

843.   DDIC and DDPA acted intentionally, knowingly, and maliciously to violate Georgia's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiff's and

Georgia Subclass Members' rights. The various breaches of Delta Dental Companies within DDPA's network put DDPA and the other Delta Dental Companies, including DDIC, on notice that their security and privacy protections were inadequate.

844.    Had DDIC and DDPA disclosed to consumers that they were not complying with industry standards or regulations or that their data systems were not secure and, thus, were vulnerable to attack, they would have been unable to continue in business and they would have been forced to adopt reasonable data security measures and comply with the law.

845.    Instead, DDIC and DDPA were entrusted, either directly or indirectly, with sensitive and valuable Private Information regarding millions of consumers, including Plaintiff and Georgia Subclass Members. DDIC and DDPA accepted the critical responsibility of protecting the data but kept the inadequate state of their security controls secret from the public. Accordingly, Plaintiff and Georgia Subclass Members acted reasonably in relying on DDIC's and DDPA's misrepresentations and omissions, the truth of which they could not have discovered.

846.    As a direct and proximate result of DDIC's and DDPA's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Georgia Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for DDIC's services; loss of the value of access to their Private Information; diminution of value of Private Information; value of identity and credit protection and repair services made necessary by the Data Breach; and they face ongoing risks of future harms insofar as DDIC and DDPA have

yet to implement the necessary policies, practices, and measures to adequately safeguard their Private Information in compliance with laws and industry standards.

847.     Plaintiff and Georgia Subclass Members seek all relief allowed by law, including injunctive relief, which is necessary to prospectively protect against future data breaches, and reasonable attorneys' fees and costs, under Ga. Code Ann. § 10-1-373.

**COUNT XX**
**MASSACHUSETTS GENERAL LAWS CHAPTER 93A**
**M.G.L. ch. 93A §§ 2 and 9**
**(On Behalf of Plaintiffs and the Progress Nationwide Class against Progress)**

848.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

849.     M.G.L. ch. 93A § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L. ch. 93A § 9 permits any consumer injured by a violation of M.G.L. ch. 93A § 2 to bring a civil action, including a class action, for damages and injunctive relief.

850.     Plaintiffs allege Progress committed unfair business acts and/or practices in violation of M.G.L. ch. 93A §§ 2 and 9.

851.     Progress knew or should have known of the inherent risks in experiencing a data breach if it failed to maintain adequate systems and processes for keeping Plaintiffs' and Class Members' Private Information safe and secure. Only Progress was in a position to ensure that its systems were sufficient to protect against harms to Plaintiffs and the Class resulting from a data security incident such as the Data Breach; instead, it failed to implement such safeguards.

852.     Progress's own conduct also created a foreseeable risk of harm to Plaintiffs and Class Members and their Private Information. Progress's misconduct included failing to adopt,

implement, and maintain the systems, policies, and procedures necessary to prevent the Data Breach.

853.    Progress acknowledges its conduct created actual harm to Plaintiffs and Class Members because Progress instructed them to monitor their accounts for fraudulent conduct and identity theft.

854.    Progress knew, or should have known, of the risks inherent in disclosing, collecting, storing, accessing, and transmitting Private Information and the importance of adequate security because of, *inter alia*, the prevalence of data breaches.

855.    Progress failed to adopt, implement, and maintain fair, reasonable, or adequate security measures to safeguard Plaintiffs' and Class Members' Private Information, failed to recognize in a timely manner the Data Breach, and failed to notify Plaintiffs and Class Members in a timely manner that their Private Information was accessed in the Data Breach.

856.    These acts and practices are unfair in material respects, offend public policy, are immoral, unethical, oppressive and unscrupulous and violate 201 CMR 17.00 and M.G.L. ch. 93A § 2.

857.    As a direct and proximate result of Progress's unfair acts and practices, Plaintiffs and Class Members have suffered injury and/or will suffer injury and damages, including but not limited to: (i) the loss of the opportunity to determine for themselves how their Private Information is used; (ii) the publication and/or fraudulent use of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of Progress's Data Breach, including but not limited to efforts spent researching how to prevent,

detect, contest and recover from unemployment and/or tax fraud and identity theft; (v) costs associated with placing freezes on credit reports; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private Information, which remains in Progress's possession (and/or to which Progress continues to have access) and is subject to further unauthorized disclosures so long as Progress fails to undertake appropriate and adequate measures to protect the Private Information in their continued possession; and, (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of disclosed Private Information.

858.    Neither Plaintiffs nor the other Class Members contributed to Progress's Data Breach.

859.    Plaintiffs sent a demand for relief, in writing, to Progress on June 4, 2024, prior to filing this complaint. Multiple Plaintiffs in consolidated actions have sent[69]—or alleged in their complaints that they would send[70]—similar demand letters as required by M.G.L. c. 93A § 9.

---

[69] *See, e.g.*, *Ghalem, et al. v. Progress Software Corp., et al.*, 23-cv-12300 (D. Mass.), at ECF No. 1, ¶ 213 ("A demand identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered was mailed or delivered to Defendants at least thirty days prior to the filing of a pleading alleging this claim for relief").

[70] In all of the following cases (among others), plaintiffs indicated that they were going to send similar demand letters: *Allen, et al. v. Progress Software Corp*., 23-cv-11984 (D. Mass.); *Anastasio v. Progress Software Corp., et al*., 23-cv-11442 (D. Mass.); *Arden v. Progress Software Corp., et al*., 23-cv-12015 (D. Mass.); *Boaden v. Progress Software Corp., et al*., 23-cv-12192 (D. Mass.); *Brida v. Progress Software Corp., et al*., 23-cv-12202 (D. Mass.); *Casey v. Progress Software Corp., et al*., 23-cv-11864 (D. Mass.); *Constantine v. Progress Software Corp., et al*., 23-cv-12836 (D. Mass.); *Daniels v. Progress Software Corp., et al*., 23-cv-12010 (D. Mass.); *Doe v. Progress Software Corp., et al*., 23-cv-1933 (D. Md.); *Ghalem, et al. v. Progress Software Corp., et al*., 23-cv-12300 (D. Mass.); *Kennedy v. Progress Software Corp., et al*., 23-cv-12275 (D. Mass.); *Kurtz v. Progress Software Corp., et al*., 23-cv-12156 (D. Mass.); *McDaniel, et al. v. Progress Software Corp., et al*., 23-cv-11939 (D. Mass.); *Pilotti-Iulo v. Progress Software Corp., et al*., 23-cv-12157 (D. Mass.); *Pulignani v. Progress Software Corp., et al*. , 23-cv-1912 (D. Md.); *Siflinger, et al. v. Progress Software Corp., et al*., 23-cv-11782 (D. Mass.); *Tenner v. Progress Software Corp*., 23-cv-11412 (D. Mass.); *Truesdale v. Progress Software Corp., et al*., 23-cv-1913 (D. Md.).

Plaintiffs have not received a written tender of settlement that is reasonable in relation to the injury actually suffered by Plaintiffs and the Class.

860.    Based on the foregoing, Plaintiffs and the other members of the Class are entitled to all remedies available pursuant to M.G.L ch. 93A, including, but not limited to, refunds, actual damages, or statutory damages in the amount of twenty-five dollars per violation, whichever is greater, double or treble damages, attorneys' fees and other reasonable costs.

861.    Pursuant to M.G.L. ch. 231, § 6B, Plaintiffs and other members of the Class are further entitled to pre-judgment interest as a direct and proximate result of Progress's wrongful conduct. The amount of damages suffered as a result is a sum certain and capable of calculation, and Plaintiffs and Class Members are entitled to interest in an amount according to proof.

**COUNT XXI**
**NEW YORK DECEPTIVE TRADE PRACTICES ACT ("GBL")**
**N.Y. Gen. Bus. Law. § 349**
**(On Behalf of Plaintiffs Carter, Danella, Gonsalves and Kavanagh and the Progress New York Subclass against Progress; as well as on behalf of Delta Dental New York Subclass against Delta Dental of New York ("DDNY") and DDPA (herein, Progress New York Subclass and Delta Dental New York Subclass referred to collectively as "New York Subclass" or "Subclass;" and DDNY, DDPA, and Progress referred to collectively as "Defendants"))**

862.    The New York Plaintiffs identified above ("Plaintiffs" for purposes of this Count), individually and on behalf of the New York Subclass, repeat and reallege the factual allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein.

863.    Defendants engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, including:

>    A.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and New York Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach,

Plaintiffs' and Subclass Members' Private Information being compromised, and subsequent harms caused to Plaintiffs and Subclass;

B.      Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach, Plaintiffs' and Subclass Members' Private Information being compromised, and subsequent harms caused to Plaintiffs and Subclass;

C.      Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and New York Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902 which was a direct and proximate cause of the Data Breach, Plaintiffs' and Subclass Members' Private Information being compromised, and subsequent harms caused to Plaintiffs and Subclass;

D.      Misrepresenting that they would protect the privacy and confidentiality of Plaintiffs' and New York Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

E.      Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and New York Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902;

F.      Omitting, suppressing, and concealing the material fact that they did not properly secure Plaintiffs' and New York Subclass Members' Private Information; and

G.      Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and New York Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902.

864.   DDNY's and DDPA's representations and omissions were material because they were likely to deceive reasonable consumers and clients about the adequacy of their respective data security policies and practices and ability to protect the confidentiality of consumers' Private Information.

865.   Accordingly, Plaintiffs and New York Subclass Members acted reasonably in relying on DDNY's and DDPA's misrepresentations and omissions, the truth of which they could not have discovered.

866.   Defendants acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded Plaintiffs and New York Subclass Members' rights.

867.   As a direct and proximate result of Defendants' unfair, unlawful, and/or fraudulent acts and practices, Plaintiffs and New York Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud

186

and identity theft; loss of value of their Private Information; overpayment for DDNY's services; loss of the value of access to their Private Information; value of identity and credit protection and repair services made necessary by the Data Breach; and they face ongoing risks of future harms insofar as they have yet to implement the necessary policies, practices, and measures to adequately safeguard their Private Information in compliance with laws and industry standards.

868.    Defendants' deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the many New Yorkers affected by the Data Breach.

869.    The above deceptive and unlawful practices and acts by Defendants caused substantial injury to Plaintiffs and New York Subclass Members that they could not reasonably avoid.

870.    Plaintiffs and New York Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, and attorneys' fees and costs.

**COUNT XXII**
**PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION**
**LAW ("UTPCPL")**
**73 Pa. Cons. Stat §§ 201-1,** *et seq*.
**(On Behalf of Plaintiff Dovberg and the Delta Dental Pennsylvania Subclass**
**("Pennsylvania Subclass") against Delta Dental of Pennsylvania ("DDPenn.") and DDPA**

871.    The Pennsylvania Plaintiff identified above ("Plaintiff" for purposes of this Count), individually and on behalf of the Pennsylvania Subclass, repeats and realleges the factual allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein.

872.    DDPenn. and DDPA satisfy the definition of a "person," as meant by 73 Pa. Cons. Stat. § 201-2(2).

873.     Plaintiff and Pennsylvania Subclass Members purchased services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes as required by Pa. Cons. Stat. Ann. § 201-9.2(a).

874.     Plaintiff and Pennsylvania Subclass Members have a private right of action under Pa. Cons. Stat. Ann. § 201-9.2(a).

875.     DDPenn. and DDPA engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. Ann. § 201-3, including the following:

> A.     Representing that their goods and services have approval, characteristics, uses, or benefits that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v));

> B.     Representing that their goods and services are of a particular standard or quality if they are another (73 Pa. Stat. Ann. § 201- 2(4)(vii));

> C.     Advertising their goods and services with intent not to sell them as advertised (73 Pa. Stat. Ann. § 201-2(4)(ix)).

876.     DDPenn.'s and DDPA's unfair or deceptive acts and practices include:

> A.     Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Pennsylvania Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach, Plaintiff's and Subclass Members' Private Information being compromised in the Data Breach and subsequent harms;

> B.     Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of

Plaintiff's and Subclass Members' Private Information being compromised in the Data Breach and subsequent harms;

C.      Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Pennsylvania Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902, which was a direct and proximate cause of the Data Breach, Delta Dental Defendants' customers' Private Information being compromised and subsequent harms in the Data Breach;

D.      Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and Pennsylvania Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

E.      Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Pennsylvania Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902;

F.      Omitting, suppressing, and concealing the material fact that they did not properly secure Plaintiff's and Pennsylvania Subclass Members' Private Information; and

G.      Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Pennsylvania Subclass Members' Private

Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902.

877.    DDPenn.'s and DDPA's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of their data security and ability to protect the confidentiality of consumers' Private Information.

878.    DDPenn. and DDPA intended to mislead Plaintiff and Pennsylvania Subclass Members and induce them to rely on its misrepresentations and omissions.

879.    Had DDPenn. and DDPA disclosed to consumers that they were not complying with industry standards or regulations or that their data systems were not secure and, thus, were vulnerable to attack, they would have been unable to continue in business and would have been forced to adopt reasonable data security measures and comply with the law.

880.    DDPenn. and DDPA were trusted with sensitive and valuable Private Information regarding millions of consumers, including Plaintiff and Pennsylvania Subclass Members. DDPenn. and DDPA accepted the responsibility of protecting the data while keeping the inadequate state of their security controls secret from the public. Accordingly, Plaintiff and Pennsylvania Subclass Members acted reasonably in relying on DDPenn.'s and DDPA's misrepresentations and omissions, the truth of which they could not have discovered.

881.    DDPenn. and DDPA acted intentionally, knowingly, and maliciously to violate Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and recklessly disregarded Plaintiff's and Pennsylvania Subclass Members' rights.

882.    As a direct and proximate result of DDPenn.'s and DDPA's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Pennsylvania Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-

monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Delta Dental of Pennsylvania's services; loss of the value of access to their Private Information; and the value of identity and credit protection and repair services made necessary by the Data Breach.

883.    Plaintiff and Pennsylvania Subclass Members seek all monetary and non-monetary relief allowed by law, including, pursuant to 73 Pa. Stat. Ann. § 201-9.2, actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and any additional relief the Court deems necessary or proper.

**COUNT XXIII**
**SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT ("SCUTPA")**
**S.C. Code Ann. §§ 39-5-10, *et seq*.**
**(On Behalf of Plaintiff Tillman and the Delta Dental South Carolina Subclass ("South Carolina Subclass") against Delta Dental of Missouri ("DDMI") and DDPA)**

884.    The South Carolina Plaintiff identified above ("Plaintiff" for purposes of this Count), individually and on behalf of the South Carolina Subclass, repeats and realleges the factual allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein.

885.    DDMI is a "person," as defined by S.C. Code Ann. § 39-5-10(a).

886.    DDPA is a "person," as defined by S.C. Code Ann. § 39-5-10(a).

887.    South Carolina's Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20.

888.    DDMI and DDPA advertised, offered, sold, or distributed goods or services in South Carolina and engaged in trade or commerce directly or indirectly affecting the people of South Carolina, as defined by S.C. Code Ann. § 39-5-10(b).

889.     Under S.C. Code Ann. § 39-5-20(a), "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

890.     DDMI and DDPA engaged in unfair and deceptive acts and practices, including:

A.     Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and South Carolina Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach, Plaintiff's and South Carolina Subclass Members' Private Information being compromised, and subsequent harms caused to Plaintiff and South Carolina Subclass Members;

B.     Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach, Plaintiff's and South Carolina Subclass Members' Private Information being compromised, and subsequent harms caused to Plaintiff and South Carolina Subclass Members;

C.     Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and South Carolina Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; HITECH Act, and 42 U.S.C. § 17902; which was a direct and proximate cause of the Data Breach, Plaintiff's and South Carolina Subclass' Private Information being compromised, and subsequent harms caused to Plaintiff and South Carolina Subclass Members;

D.      Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and South Carolina Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

E.      Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and South Carolina Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902;

F.      Omitting, suppressing, and concealing the material fact that they did not properly secure Plaintiff's and South Carolina Subclass Members' Private Information; and

G.      Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and South Carolina Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902.

891.    S.C. Code Ann. § 39-5-20(b) provides that "[i]t is the intent of the legislature that in construing paragraph (a) of this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to Section 5(a) (1) of the Federal Trade Commission Act." As discussed, *supra*, the FTC treats the failure to employ reasonable data security safeguards as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

892.    DDMI's and DDPA's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of DDMI's and DDPA's data security and ability to protect the confidentiality of consumers' Private Information and prevent a data breach. DDMI's and DDPA's acts and practices had, and continue to have, the tendency or capacity to deceive.

893.    Had DDMI and DDPA disclosed to consumers that they were not complying with industry standards or regulations or that their data systems were not secure and, thus, were vulnerable to attack, they would have been unable to continue in business and would have been forced to adopt reasonable data security measures and comply with the law.

894.    DDMI and DDPA had a duty to disclose the above-described facts due to the circumstances of this case, the sensitivity and extensivity of the Private Information in their possession that Plaintiff and the South Carolina Subclass entrusted to them, and the generally accepted professional standards. Such a duty is also implied by law due to the nature of the special relationship between Plaintiff and the South Carolina Subclass and DDMI, and DDPA, respectively, because consumers are unable to fully protect their interests with regard to the Private Information in DDMI's and DDPA's possession, and placed trust and confidence in DDMI and DDPA when they disclosed their Private Information. This duty to disclose also arose from their:

    A.    Possession of exclusive knowledge regarding the security of the data in their systems;

    B.    Active concealment and/or incomplete representations about the security and integrity of DDMI's and DDPA's computer and data systems, and prior data breaches of Delta Dental Defendants within the DDPA network with which DDPA shares data, purposefully withholding material facts from

Plaintiff and the South Carolina Subclass that contradicted their representations about the adequacy of their data security practices.

895.     DDMI's and DDPA's business acts and practices offend an established public policy, or are immoral, unethical, or oppressive. DDMI's and DDPA's acts and practices offend established public policies that seek to protect consumers' Private Information and ensure that entities entrusted with Private Information use appropriate security measures. These public policies are reflected in laws such as the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; HITECH Act, 42 U.S.C. § 17902; and the South Carolina Data Breach Security Act, S.C. Code § 39-1-90, *et seq.*

896.     DDMI and DDPA were aware that the healthcare industry was a frequent target of sophisticated cyberattacks.

897.     The various breaches of Delta Dental Companies within DDPA's network put Defendants on notice that their security and privacy protections were inadequate.

898.     DDMI's and DDPA's failure to implement and maintain reasonable security measures was immoral, unethical, or oppressive in light of these attacks, including previous data breaches of Delta Dental Companies within DDPA's national network, the sensitivity and value of customer Private Information that it collected, possessed, stored, maintained, and transferred; and its admitted duty and legal obligations to safeguard and protect Private Information.

899.     DDMI's and DDPA's unfair and deceptive acts or practices adversely affected the public interest because such acts or practices have the potential for repetition; DDMI and DDPA engaged in such acts or practices as a general rule; and such acts or practices impact the public at large, including many South Carolinians impacted by the Data Breach, nearly half the state's population.

900.    DDMI's and DDPA's unfair and deceptive acts or practices have the potential for repetition because the same kinds of actions occurred in the past and the frequency of cyberattacks targeting the healthcare industry due to the high value of PHI in addition to PII, thus making it likely that these acts or practices will continue to occur if left undeterred. Additionally, DDMI's and DDPA's policies and procedures, such as their security practices, create the potential for recurrence of the complained-of business acts and practices.

901.    DDMI's and DDPA's violations present a continuing risk to Plaintiff and South Carolina Subclass Members as well as to the general public.

902.    DDMI and DDPA acted intentionally, knowingly, and maliciously to violate South Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiff's and South Carolina Subclass Members' rights.

903.    In light of this conduct, punitive damages would serve the interest of society in punishing and warning others not to engage in such conduct, and would deter DDMI and DDPA and others from committing similar conduct in the future.

904.    As a direct and proximate result of DDMI's and DDPA's unfair, unlawful, and deceptive acts or practices, Plaintiff and South Carolina Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Delta Dental of Missouri (which operates and administers plans in South Carolina)'s services; loss of the value of access to their Private Information; and the value of identity and credit protection and repair services made necessary by the Data Breach.

905.    Plaintiff and South Carolina Subclass Members seek all monetary and non-monetary relief allowed by law, including damages for their economic losses; treble damages; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

**COUNT XXIV**
**SOUTH CAROLINA DATA BREACH SECURITY ACT**
**S.C. Code Ann. §§ 39-1-90,** *et seq.*
**(On Behalf of Plaintiff Tillman and the Delta Dental South Carolina Subclass ("South Carolina Subclass") against Delta Dental of Missouri ("DDMI") and Delta Dental of California ("DDCA") (collectively, "Defendants"))**

906.    The South Carolina Plaintiff identified above ("Plaintiff" for purposes of this Count), individually and on behalf of the South Carolina Subclass, repeats and realleges the factual allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein.

907.    DDMI is a business that owns or licenses computerized data or other data that includes "personal identifying information" (PII and PHI), as defined by S.C. Code Ann. § 39-1-90(A).

908.    DDCA is a business that owns or licenses computerized data or other data that includes "personal identifying information" (PII and PHI), as defined by S.C. Code Ann. § 39-1-90(A).

909.    Plaintiff's and South Carolina Subclass Members' Private Information includes "personal identifying information" as covered under S.C. Code Ann. § 39-1- 90(D)(3) (for the purpose of this count, "Private Information").

910.    Defendants are required to accurately notify Plaintiff and South Carolina Subclass Members following discovery or notification of a breach of their data security systems if Private Information that was not rendered unusable through encryption, redaction, or other methods was, or was reasonably believed to have been, acquired by an unauthorized person, creating a material

risk of harm, in the "most expedient time possible and without unreasonable delay" under S.C. Code Ann. § 39-1-90(A) and (B).

911.    Because Defendants discovered a breach of their data security system in which Private Information that was not rendered unusable through encryption, redaction, or other methods, was, or was reasonably believed to have been, acquired by an unauthorized person, creating a material risk of harm, Defendants had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by S.C. Code Ann. § 39-1-90(A) and (B).

912.    By failing to disclose the Data Breach in a timely and accurate manner, Defendants violated S.C. Code Ann. § 39-1-90(A) and (B).

913.    As a direct and proximate result of Defendants' violations of S.C. Code Ann. § 39-1-90(A), Plaintiff and South Carolina Subclass Members suffered damages, as described above.

914.    Plaintiff and South Carolina Subclass Members seek relief under S.C. Code Ann. § 39-1-90(G), including actual damages, injunctive relief, and attorneys' fees.

**COUNT XXV**
**TENNESSEE CONSUMER PROTECTION ACT ("TCPA")**
**Tenn. Code Ann. §§ 47-18-101,** *et seq.*
**(On Behalf of Plaintiff Polikowsky and the Delta Dental Tennessee Subclass ("Tennessee Subclass") against Delta Dental of Tennessee ("DDTN") and DDPA (collectively, "Defendants"))**

915.    The Tennessee Plaintiff identified above ("Plaintiff" for purposes of this Count), individually and on behalf of the Tennessee Subclass, repeats and realleges the factual allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein.

916.    DDTN is a "person," as defined by Tenn. Code § 47-18-103(18).

917.    DDPA is a "person," as defined by Tenn. Code § 47-18-103(18).

918.    Plaintiff and Tennessee Subclass Members are "consumers," as meant by Tenn. Code § 47-18-103(6).

919.     Defendants advertised or offered for sale services in "consumer transaction[s]," as defined by Tenn. Code §§ 47-18-103(23) & (24).

920.     Defendants advertised, offered, or sold services in Tennessee and engaged in "trade" or "commerce" directly or indirectly affecting the people of Tennessee, as defined by Tenn. Code §§ 47-18-103(24). And Defendants' acts or practices affected the conduct of trade or commerce, under Tenn. Code § 47-18-104.

921.     Tenn. Code § 47-18-104 provides that "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages."

922.     Defendants' unfair and deceptive acts and practices include:

A.     Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Tennessee Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach, Plaintiff's and Tennessee Subclass Members' Private Information being compromised, and subsequent harms caused to Plaintiff and Tennessee Subclass Members;

B.     Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach, Plaintiff's and Tennessee Subclass Members' Private

Information being compromised, and subsequent harms caused to Plaintiff and Tennessee Subclass Members;

C.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Tennessee Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902, which was a direct and proximate cause of the Data Breach, Plaintiff's and Tennessee Subclass Members' Private Information being compromised, and subsequent harms caused to Plaintiff and Tennessee Subclass Members;

D.   Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and Tennessee Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

E.   Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Tennessee Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902;

F.   Omitting, suppressing, and concealing the material fact that they did not properly secure Plaintiff's' and Tennessee Subclass Members' Private Information; and

G.   Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Tennessee Subclass Members' Private

Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902.

923.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of their data security and ability to protect the confidentiality of consumers' Private Information.

924.    Had Defendants' disclosed to Plaintiff and Tennessee Subclass Members that they were not complying with industry standards or regulations or that their data systems were not secure and, thus, vulnerable to attack, Defendants would have been unable to continue in business and they would have been forced to adopt reasonable data security measures and comply with the law. Defendants were trusted with sensitive and valuable Private Information regarding millions of consumers, including Plaintiff and Tennessee Subclass Members. Defendants accepted the responsibility of protecting the data while keeping the inadequate state of their security controls secret from the public. Accordingly, Plaintiff and Tennessee Subclass Members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

925.    Defendants had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extensivity of the Private Information in its possession, and the generally accepted professional standards. In addition, such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiff and Tennessee Subclass Members, and because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendants. This duty to disclose also arose from their:

A.    Possession of exclusive knowledge regarding the security of the data in their systems;

B.      Active concealment and/or incomplete representations about the security and integrity of their computer and data systems and prior data breaches of Delta Dental Companies within the DDPA network with which DDPA shares data, purposefully withholding material facts from Plaintiff and the Tennessee Subclass Members that contradicted their representations about the adequacy of their data security practices.

926.    Defendants' unfair and deceptive acts and practices caused or were likely to cause substantial injury to consumers, which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

927.    The injury to consumers was and is substantial because it was non-trivial and non-speculative, and involved a monetary injury and/or an unwarranted risk to the safety of their Private Information or the security of their identity or credit. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

928.    Consumers could not have reasonably avoided injury because Defendants' business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the inadequacy of their data security, Defendants created an asymmetry of information between them and consumers that precluded consumers from taking action to avoid or mitigate injury.

929.    Defendants' inadequate data security had no countervailing benefit to consumers or to competition.

930.    By misrepresenting and omitting material facts about their data security and failing to comply with its common law and statutory duties pertaining to data security (including its duties

under the FTC Act, HIPAA, and HITECH), Defendants violated the following express provisions of Tenn. Code § 47-18- 104(b):

> A.   Representing that goods or services have approval, characteristics, ingredients, uses, benefits or quantities that they do not;
>
> B.   Representing that goods or services are of a particular standard, quality or grade, if they are of another;
>
> C.   Advertising goods or services with intent not to sell them as advertised; and
>
> D.   Representing that a consumer transaction confers or involves rights, remedies, or obligations that it does not have or involve.

931.   Defendants acted intentionally, knowingly, and maliciously to violate Tennessee's Consumer Protection Act, and recklessly disregarded Plaintiff and Tennessee Subclass Members' rights.

932.   Defendants were aware that the healthcare industry was a frequent target of sophisticated cyberattacks and on notice of the risks to the consumers' Private Information that they collected, stored, used, and transferred.

933.   Defendants were on notice that their security and privacy policies and practices were wholly inadequate, including that of ensuring their vendors were compliant with industry standards and regulations, because of previous data breaches against Delta Dental Companies within the DDPA national network that implement the same data security policies and practices.

934.   As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff and Tennessee Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to

monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for DDTN's services; loss of the value of their Private Information; and the value of identity and credit protection and repair services made necessary by the Data Breach.

935.     Defendants' violations present a continuing risk to Plaintiff and Tennessee Subclass Members as well as to the general public.

936.     Plaintiff and Tennessee Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief, actual damages, treble damages for each willful or knowing violation, attorneys' fees and costs, and any other relief that is necessary and proper.

## COUNT XXVI
## TEXAS DECEPTIVE TRADE PRACTICES–CONSUMER PROTECTION ACT ("DTPA")
### Texas Bus. & Com. Code §§ 17.41, *et seq.*
### (On Behalf of Plaintiffs Mendoza and Sullivan and the Delta Dental Texas Subclass ("Texas Subclass" or "Subclass") against Delta Dental Insurance Company ("DDIC") and Delta Dental Plans Association ("DDPA"))

937.     The Texas Plaintiffs identified above ("Plaintiffs" for purposes of this Count), individually and on behalf of the Texas Subclass, repeat and reallege the factual allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein.

938.     DDIC and DDPA satisfy the definition of a "person" under the DTPA, Tex. Bus. & Com. Code § 17.45(3).

939.     Plaintiffs and the Texas Subclass Members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

940.     DDIC and DDPA advertised, offered, sold, or distributed goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(1), (2) & (6).

941.    DDIC and DDPA engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including:

A.      Representing that goods or services have approval, characteristics, uses, or benefits that they do not have;

B.      Representing that goods or services are of a particular standard, quality or grade, if they are of another; and

C.      Advertising goods or services with intent not to sell them as advertised;

D.      Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

942.    DDIC's and DDPA's false, misleading, and deceptive acts and practices include:

A.      Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Texas Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach, Plaintiffs' and Subclass Members' Private Information being compromised, and subsequent harms caused to Plaintiffs sand Subclass;

B.      Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach, Plaintiffs' and Subclass Members' Private Information being compromised, and subsequent harms caused to Plaintiffs and Subclass;

C.      Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Texas Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; HITECH Act, 42 U.S.C. § 17902, and Texas' data security statute, Tex. Bus. & Com. Code § 521.052, which was a direct and proximate cause of the Data Breach, Plaintiffs' and Subclass Members' Private Information being compromised, and subsequent harms caused to Plaintiffs and Subclass;

D.      Misrepresenting that they would protect the privacy and confidentiality of Plaintiffs' and Texas Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

E.      Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Texas Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; HITECH Act, 42 U.S.C. § 17902, and Texas' data security statute, Tex. Bus. & Com. Code § 521.052;

F.      Omitting, suppressing, and concealing the material fact that they did not properly secure Plaintiffs' and Texas Subclass Members' Private Information; and

G.      Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Texas Subclass Members' Private Information,

including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45
C.F.R. § 164; HITECH Act, 42 U.S.C. § 17902, and Texas' data security
statute, Tex. Bus. & Com. Code § 521.052.

943.    DDIC's and DDPA's representations and omissions were material because they
were likely to deceive reasonable consumers about the adequacy of their data security policies and
practices and their ability to protect the confidentiality of consumers' Private Information.

944.    Had DDIC and DDPA disclosed to Plaintiffs and Texas Subclass Members that
their data systems were not secure and, thus, vulnerable to attack, DDIC and DDPA would have
been unable to continue in business and would have been forced to adopt reasonable data security
measures and comply with the law. DDIC and DDPA were trusted with sensitive and valuable
Private Information regarding millions of consumers, including Plaintiffs and Texas Subclass
Members. DDIC and DDPA accepted the responsibility of protecting the data while keeping the
inadequate state of their security controls secret from the public. Accordingly, Plaintiffs and Texas
Subclass Members acted reasonably in relying on DDIC and DDPA's misrepresentations and
omissions, the truth of which they could not have discovered.

945.    DDIC and DDPA had a duty to disclose the above-described facts due to the
circumstances of this case, the sensitivity and extensivity of the Private Information in their
possession that Plaintiffs and Texas Subclass Members entrusted to them, and the generally
accepted professional standards. Such a duty is also implied by law due to the nature of the special
relationship between Plaintiffs and the Texas Subclass and DDIC and DDPA, respectively,
because consumers are unable to fully protect their interests with regard to the Private Information
in DDIC's and DDPA's possession, and because they reasonably placed trust and confidence in
them. This duty to disclose also arose from their:

A.      Possession of exclusive knowledge regarding the security of the data in their systems;

B.      Active concealment and/or incomplete representations about the security and integrity of their computer and data systems, and prior data breaches of Delta Dental Defendants within the DDPA network with which DDPA shares data, purposefully withholding material facts from Plaintiffs and Texas Subclass Members that contradicted their representations about the adequacy of their data security practices.

946.    DDIC and DDPA engaged in unconscionable actions or courses of conduct, as defined by Tex. Bus. & Com. Code Ann. § 17.45(5), in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). DDIC and DDPA engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

947.    Consumers lacked knowledge about deficiencies in DDIC's and DDPA's data security because this information was known exclusively by DDIC and DDPA. Consumers also lacked the ability, experience, or capacity to secure the Private Information in DDIC's and DDPA's possession or to fully protect their interests with regard to their data. Plaintiffs and Texas Subclass Members lack expertise in information security matters and do not have access to DDIC's and DDPA's systems in order to evaluate their security controls. DDIC and DDPA took advantage of their special skills and access to Private Information to hide their inability to protect the security and confidentiality of Plaintiffs' and Texas Subclass Members' Private Information.

948.    DDIC and DDPA intended to take advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness

that would result. The unfairness resulting from DDIC's and DDPA's conduct is glaringly noticeable, flagrant, complete, and unmitigated. The Data Breach, which resulted from DDIC's and DDPA's unconscionable business acts and practices, exposed Plaintiffs and Texas Subclass Members to a wholly unwarranted risk to the safety of their Private Information and the security of their identity or credit, and placed a substantial hardship on a significant and unprecedented number of consumers. Plaintiffs and Texas Subclass Members cannot mitigate this unfairness because they cannot undo the Data Breach.

949.    DDIC and DDPA acted intentionally, knowingly, and maliciously to violate Texas' Deceptive Trade Practices-Consumer Protection Act, and recklessly disregarded Plaintiffs and Texas Subclass Members' rights.

950.    As a direct and proximate result of DDIC's and DDPA's unconscionable, unfair, unlawful, and deceptive acts or practices, Plaintiffs and Texas Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, non-monetary damages, as alleged herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for DDIC's services; loss of the value of access to their Private Information; and the value of identity protection and credit services or repair made necessary by the Data Breach. DDIC's and DDPA's unconscionable and deceptive acts or practices were a producing cause of Plaintiffs' and Texas Subclass Members' injuries, ascertainable losses, economic damages, and non- economic damages, including their mental anguish.

951.    DDIC's and DDPA's violations present a continuing risk to Plaintiffs and Texas Subclass Members, as well as to the general public.

952.     Plaintiffs have issued and/or will issue a notice of these alleged violations pursuant to § 17.505 and intend to amend this complaint to seek damages, including economic damages, damages for mental anguish, statutory damages in the amount of three times the economic and mental anguish damages, as DDIC's and DDPA's acts were committed intentionally or knowingly, injunctive relief, other equitable relief the Court deems proper, costs, and reasonable and necessary attorneys' fees.

### COUNT XXVII
### WASHINGTON CONSUMER PROTECTION ACT ("WCPA")
### Wash. Rev. Code §§ 19.86.020, *et seq*.
**(On Behalf of Plaintiff Lewis and the Progress Washington Subclass against Progress; as well as on behalf of the Delta Dental Washington Subclass against Delta Dental of Washington ("DDWA") and DDPA (herein, Progress Washington Subclass and Delta Dental Washington Subclass referred to collectively as "Washington Subclass;" and DDWA, DDPA, and Progress referred to collectively as "Defendants"))**

953.     The Washington Plaintiff identified above ("Plaintiff" for purposes of this Count), individually and on behalf of the Washington Subclass, repeats and realleges the factual allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein.

954.     Defendants are "persons" as defined by § 19.86.010(1).

955.     Wash. Rev. Code § 19.86.020 *et seq*. prohibits any "unfair or deceptive acts or practices" in the conduct of any trade or commerce.

956.     Defendants engage in "trade" and "commerce" of "assets" or "services" as described in by § 19.86.010(2) & (3).

957.     Defendants engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code § 19.86.020, including:

      A.     Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Washington Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach,

Plaintiff's and Washington Subclass Members' Private Information being compromised, and subsequent harms caused to Plaintiff and Washington Subclass Members;

B. Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach, Plaintiff's and Washington Subclass Members' Private Information being compromised, and subsequent harms caused to Plaintiff and Washington Subclass;

C. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Washington Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; HITECH Act, 42 U.S.C. § 17902; and Wash. Rev. Code §§ 19.255.010, which was a direct and proximate cause of the Data Breach, Plaintiff's and Washington Subclass Members' Private Information being compromised, and subsequent harms caused to Plaintiff and Washington Subclass;

D. Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and Washington Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

E. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Washington Subclass Members' Private Information, including duties imposed by the

211

FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; and HITECH Act, 42 U.S.C. § 17902;

F.   Omitting, suppressing, and concealing the material fact that they did not properly secure Plaintiff's and Washington Subclass Members' Private Information; and

G.   Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Washington Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45; HIPAA, 45 C.F.R. § 164; HITECH Act, 42 U.S.C. § 17902.

958.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of their data security and ability to protect the confidentiality of consumers' Private Information and constitute unfair and deceptive practices under Wash. Rev. Code § 19.86.020.

959.   Defendants' respective failures to secure Plaintiff and Washington Subclass Members' Private Information constitute unfair acts in violation of Wash. Rev. Code § 19.86.020.

1311. Defendants acted intentionally, knowingly, and maliciously to violate Washington's Consumer Protection Act, and recklessly disregarded Plaintiff's and Washington Subclass Members' rights.

960.   Defendants were aware that the healthcare industry was a frequent target of sophisticated cyberattacks and on notice of the risks to the consumers' Private Information that they collected, stored, used, and transferred.

961.    Progress knew or should have known that its data security was insufficient to guard against those attacks, particularly, given the size of its database and the sensitivity of the Private Information therein, such that it was a prime target given its vast client base in the healthcare industry.

962.    Defendants were on notice that their security and privacy policies and practices, and that of their business associates, were wholly inadequate, including that of ensuring their vendors were compliant with industry standards and regulations, because of previous data breaches against Delta Dental Companies within the DDPA national network that implement the same data security policies and practices.

963.    Defendants' unfair and deceptive acts or practices have the potential for repetition because the same kinds of actions occurred in the past and the frequency of cyberattacks targeting the healthcare industry due to the high value of PHI in addition to PII, thus making it likely that these acts or practices will continue to occur if left undeterred. Additionally, Defendants engaged in such acts or practices as a general rule and Defendants' respective lax and inadequate data security policies and practices create the potential for recurrence of the complained-of business acts and practices.

964.    Defendants' conduct is injurious and unfair to the public interest because it violates Wash. Rev. Code Ann. § 19.86.020, violates a statute that contains a specific legislative declaration of public interest impact, and/or injured persons and has the capacity to injure persons. Further, its conduct affected the public interest, including the many Washingtonians affected by the Data Breach. Defendants' failures are not outweighed by any countervailing benefits to consumers or competitors, and they were not reasonably avoidable by consumers. There were reasonably

available alternatives to further Defendants' legitimate business interests other than engaging in the above-described wrongful conduct.

965.    As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and Washington Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Delta Dental of Washington's services; loss of the value of access to their Private Information; invasion of privacy, and the value of identity and credit protection and repair services made necessary by the Data Breach.

966.    Unless restrained and enjoined, Defendants will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiff, therefore, on behalf of himself and the Class, seeks restitution and an injunction prohibiting Defendants from continuing such wrongful conduct, and requiring Defendants to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures protocols, and software and hardware systems to safeguard and protect the Private Information entrusted to them.

967.    Plaintiff and Washington Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

**COUNT XXVIII**
**WASHINGTON DATA BREACH NOTIFICATION LAW**
**Wash. Rev. Code §§ 19.255.010,** *et seq.*
**(On Behalf of Plaintiff Lewis and the Delta Dental Washington Subclass ("Washington Subclass") against Delta Dental of Washington and Delta Dental of California (collectively, "Defendants"))**

968.    The Washington Plaintiff identified above ("Plaintiff" for purposes of this Count), individually and on behalf of the Washington Subclass, repeats and realleges the factual allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein.

969.    Pursuant to Wash. Rev. Code § 19.255.010(1), "[a]ny person or business that conducts business in this state and that owns or licenses data that includes personal information shall disclose any breach of the security of the system to any resident of this state whose personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the personal information was not secured."

970.    Under Wash. Rev. Code § 19.255.010(1), notice is "required if the breach of the security of the system is not reasonably likely to subject consumers to a risk of harm."

971.    "Notification to affected consumers under this section must be made in the most expedient time possible, without unreasonable delay, and no more than thirty calendar days after the breach was discovered" pursuant to Wash. Rev. Code § 19.255.010(8).

972.    Defendants own, license, and maintain "personal information" as defined by Wash. Rev. Code § 19.255.010(2), which includes Plaintiff's and Washington Subclass Members' Private Information.

973.    Defendants violated Wash. Rev. Code § 19.255.010(1), (2) & (8) by failing to notify its customers immediately, or within 30-days, after they confirmed on July 6, 2023 that Delta Dental Companies' data, which included Plaintiff's and Washington Subclass Members' Private Information, had been accessed by unauthorized actors in the Data Breach, and instead

waited until December 15, 2023 before beginning to send out letters to the individuals whose Private Information had been compromised.

974. Plaintiff and Washington Subclass Members seek relief under Wash. Rev. Code §§ 19.255.040(3)(a) and 19.255.040(3)(b), including actual damages and injunctive relief.

## PRAYER FOR RELIEF

975. Plaintiffs, individually and on behalf of the Classes, respectfully request that the Court grant the following relief:

    A. Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiffs as Class Representatives, respectively, and undersigned counsel as Class Counsel;

    B. Find in favor of Plaintiffs and the Classes on all counts asserted herein;

    C. Award Plaintiffs and the Class Members monetary damages, including actual and statutory, compensatory damages, consequential, nominal, and punitive damages, to the maximum extent as allowed by law;

    D. Award compensatory, consequential, general, and nominal damages in an amount to be proven at trial;

    E. Award restitution and all other forms of equitable monetary relief;

    F. Award equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein regarding to the misuse or disclosure of the Private Information of Plaintiffs and Class Members, and from refusing to issue prompt, complete, and accurate disclosure to Plaintiffs and Class Members;

G.     Award injunctive relief as permitted by law or equity to assure that Class Members have an effective remedy, and to protect the interests of Plaintiffs and Class Members, including but not limited to an order:

    i.     requiring Defendants to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

    ii.    requiring Defendants to delete, destroy, and purge the personal identifying information of Plaintiffs and Class Members unless Defendants can provide to the Court a reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

    iii.   requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiffs and Class Members;

    iv.   prohibiting Defendants from maintaining the Private Information of Plaintiffs and Class Members on a cloud-based database;

    v.    requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering

Defendants to promptly correct any problems or issues detected by such third-party security auditors;

vi.     requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

vii.    requiring Defendants to audit, test, and train their security personnel regarding any new or modified procedures;

viii.   requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

ix.     requiring Defendants to conduct regular database scanning and securing checks;

x.      requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate;

xi.     requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii.    requiring Defendants to implement a system of tests to assess their respective employees' knowledge of the education programs

discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

xiii.   requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xiv.   requiring Defendants to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xv.   requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers;

xvi.   requiring, for a period of 10 years, the appointment of a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

xvii.   requiring Defendants to implement multi-factor authentication requirements, if not already implemented;

xviii.   requiring Defendants' employees to change their passwords on a timely and regular basis, consistent with best practices.

H.      Award disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts;

I.      Award a mandatory injunction requiring that Defendants provide notice to each member of the Classes relating to the full nature and extent of the Data Breach and the disclosure of Private Information to unauthorized persons;

J.      Order Defendants to purchase or provide funds for lifetime credit monitoring and identify theft insurance to Plaintiffs and Class Members;

K.      Order Defendants to pay the costs in notifying Class Members about the judgment and administering the claims process.

L.      Award Plaintiffs and Class Members pre-judgment and post-judgment interest to the maximum extent allowed by law;

M.      Grant Plaintiffs and Class Members leave to amend this complaint to conform to the evidence produced at trial;

N.      Award Plaintiffs and Class Members reasonable attorneys' fees, costs, and expenses, as allowable;

O.      Distribute any monies recovered on behalf of Class Members or the general public via fluid recovery or *cy pres* recovery where necessary and as applicable to prevent Defendants from retaining benefits of their wrongful conduct;

P.      Award Plaintiffs and Class Members such other favorable relief as allowable under law or at equity; and

Q.      Award such other and further relief as may be just and proper.

**JURY TRIAL DEMANDED**

976.    Plaintiffs and Class Members hereby demand a trial by jury on all issues so triable.


Dated: June 12, 2024                              Respectfully submitted,

                                                  */s/ Kristen A. Johnson*
                                                  Kristen A. Johnson (BBO# 667261)
                                                  HAGENS BERMAN SOBOL SHAPIRO LLP
                                                  1 Faneuil Hall Square, 5th Fl.
                                                  Boston, MA 02109
                                                  Tel: (617) 482-3700
                                                  Fax: (617) 482-3003
                                                  kristenj@hbsslaw.com

                                                  *Plaintiffs' Liaison & Coordinating Counsel*

                                                  E. Michelle Drake
                                                  BERGER MONTAGUE, PC
                                                  1229 Tyler St., NE, Ste. 205
                                                  Minneapolis, MN 55413
                                                  Tel: (612) 594-5933
                                                  Fax: (612) 584-4470
                                                  emdrake@bm.net

                                                  Gary F. Lynch
                                                  LYNCH CARPENTER, LLP
                                                  1133 Penn Ave., 5th Fl.
                                                  Pittsburgh, PA 15222
                                                  Tel: (412) 322-9243
                                                  Fax: (412) 231-0246
                                                  Gary@lcllp.com

                                                  Douglas J. McNamara
                                                  COHEN MILSTEIN SELLERS & TOLL PLLC
                                                  1100 New York Ave. NW, 5th Fl.
                                                  Washington, DC  20005
                                                  Tel: (202) 408-4600
                                                  dmcnamara@cohenmilstein.com

                                                  Karen H. Riebel
                                                  LOCKRIDGE GRINDAL NAUEN PLLP
                                                  100 Washington Ave. S., Ste. 2200
                                                  Minneapolis, MN  55401
                                                  Tel: (612) 339-6900
                                                  Fax: (612) 612-339-0981

khriebel@locklaw.com

Charles E. Schaffer
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Ste. 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cshaffer@lfsblaw.com

*Plaintiffs' Lead Counsel*

Andrea Gold
TYCKO & ZAVAREEI LLP
2000 Pennsylvania Avenue NW #1010
Washington, DC 20006
Phone: (202) 973-0900
Fax: (202) 973-0950
agold@tzlegal.com

Emily Feder Cooper
TYCKO & ZAVAREEI LLP
1970 Broadway Suite 1070
Oakland, CA 94612
Phone: (202) 973-0900
Fax: (202) 973-0950
ecooper@tzlegal.com

Gary M. Klinger
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN LLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

Joseph M. Lyon
THE LYON FIRM
2754 Erie Ave.
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
jlyon@thelyonfirm.com

*Plaintiffs' Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, the foregoing document was served by filing it on the Court's CM/ECF system, which will automatically send a notification of such filing to all counsel of record via electronic mail.

Dated: June 12, 2024                    _/s/ Kristen Johnson_____
                                         Kristen Johnson